**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

CHARLOTTE NEWMAN,

                Plaintiff,

      - against -

AMAZON.COM, INC., AMAZON WEB
SERVICES, INC., ANDRES MAZ, STEVEN
BLOCK, and SHANNON KELLOGG, in
their individual and professional capacities,

                Defendants.

Case No. 1:21-cv-00531 (DLF)

**THE AMAZON DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO PARTIALLY DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT........................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND................................................................4

LEGAL STANDARD....................................................................................................................7

ARGUMENT...................................................................................................................................8

    A.    PLAINTIFF'S SECOND AMENDED COMPLAINT IS PROCEDURALLY IMPROPER, AND IT SHOULD BE DISREGARDED....................................................8

    B.    PLAINTIFF'S SECTION 1981, TITLE VII, AND DCHRA CLAIMS BASED ON HER HIRE AS A LEVEL 6 MANAGER ARE TIME-BARRED ..........................11

    C.    PLAINTIFF HAS NOT ADEQUATELY PLEADED AN EQUAL PAY CLAIM UNDER THE EQUAL PAY ACT, SECTION 1981, Title VII, OR THE DCHRA .......14

    D.    PLAINTIFF'S SECTION 1981 CLAIM FAILS FOR THE INDEPENDENT REASON THAT SHE HAS NOT ALLEGED THAT BUT-FOR HER RACE, SHE WOULD NOT HAVE SUFFERED DISCRIMINATION....................................18

CONCLUSION.............................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adetoro v. King Abdullah Acad.*,
  2020 WL 7122858 (D.D.C. Dec. 4, 2020) ........................................................................... 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 7, 8, 14, 18

*Battle v. Master Sec. Co., LLC*,
  298 F. Supp. 3d 250 (D.D.C. 2018) .................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 8, 14

*Betz v. First Credit Servs., Inc.*,
  139 F. Supp. 3d 451 (D.D.C. 2015) ...................................................................................... 8

*Blake v. Bronx Lebanon Hosp. Ctr.*,
  2003 WL 21910867 (S.D.N.Y. Aug. 11, 2003) .................................................................. 13

*Chisolm v. 7-Eleven, Inc.*,
  383 F. Supp. 3d 1032 (S.D. Cal. 2019) .............................................................................. 12

*City of Hialeah, Fla. v. Rojas*,
  311 F.3d 1096 (11th Cir. 2002) .......................................................................................... 12

*Comcast Corp. v. Nat'l. Assn. of Afr. Am. Owned Media*,
  140 S. Ct. 1009 (2020) ................................................................................................. 15, 18

*Crosby v. Computer Sci. Corp.*,
  470 F. App'x 307 (5th Cir. 2012) ....................................................................................... 16

*Davis v. S.C. Dep't of Health & Env't Control*,
  2015 WL 5616237 (D.S.C. Sept. 24, 2015) ....................................................................... 14

*Durand v. Excelsior Care Grp. LLC*,
  2020 WL 7246437 (E.D.N.Y. Dec. 9, 2020) ...................................................................... 17

*George Washington Univ. v. Violand*,
  940 A.2d 965 (D.C. 2008) .................................................................................................. 14

*Gov't of Guam v. Am. President Lines*,
  28 F.3d 142 (D.C. Cir. 1994) ............................................................................................... 9

*Greer v. Bd. of Trs. of Univ. of D.C.*,
  113 F. Supp. 3d 297 (D.D.C. 2015) .................................................................................... 17

*Harris v. Allstate Ins. Co.*,
    300 F.3d 1183 (10th Cir. 2002) ........................................................................ 13

*Hawley v. Blackboard, Inc.*,
    2005 WL 513496 (D.D.C. Mar. 3, 2005) ........................................................ 14

*Ikedilo v. Statter*,
    2020 WL 5849049 (S.D.N.Y. Sept. 30, 2020) ................................................ 19

*Jones v. R.R. Donnelley & Sons Co.*,
    541 U.S. 369 (2004) ........................................................................................ 11

*Kargbo v. Nat'l R.R. Passenger Corp.*,
    243 F. Supp. 3d 6 (D.D.C. 2017) .................................................................... 11

*Kornegay v. Burlington Indus., Inc.*,
    803 F.2d 787 (4th Cir. 1986) .......................................................................... 13

*Lewis v. Bayh*,
    577 F. Supp. 2d 47 (D.D.C. 2008) .................................................................... 8

*United States ex rel. Mathews v. HealthSouth Corp.*,
    332 F.3d 293 (5th Cir. 2003) .......................................................................... 10

*McCarron v. British Telecom*,
    2002 WL 1832843 (E.D. Pa. Aug. 7, 2002) .................................................... 13

*McNair v. D.C.*,
    213 F. Supp. 3d 81 (D.D.C. 2016) .................................................................. 15

*Mizell v. SunTrust Bank*,
    26 F. Supp. 3d 80 (D.D.C. 2014) ...................................................................... 8

*Moore v. United States Dep't of State*,
    351 F. Supp. 3d 76 (D.D.C. 2019) .................................................................. 18

*Nahum v. Spear*,
    2021 WL 1158854 (W.D. Wash. Mar. 26, 2021) ............................................ 19

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) ........................................................................................ 12

*Neuren v. Adduci, Mastriani, Meeks & Schill*,
    43 F.3d 1507 (D.C. Cir. 1995) ........................................................................ 16

*Nurriddin v. Goldin*,
    382 F. Supp. 2d 79 (D.D.C. 2005) .................................................................. 12

*Patterson v. Johnson*,
    391 F. Supp. 2d 140 (D.D.C. 2005) ................................................................ 12

*Perez v. D.C. Dept. of Emp. Servs.*,
    305 F. Supp. 3d 51 (D.D.C. 2018)................................................................................. 14

*E.E.O.C. v. Port Auth. of New York & New Jersey*,
    768 F.3d 247 (2d Cir. 2014)......................................................................................... 17

*Powell v. Am. Red Cross*,
    518 F. Supp. 2d 24 (D.D.C. 2007)................................................................................ 12

*Rollins v. Wackenhut Servs., Inc.*,
    703 F.3d 122 (D.C. Cir. 2012)...................................................................................... 10

*Sai v. Dep't of Homeland Sec.*,
    99 F. Supp. 3d 50 (D.D.C. 2015).................................................................................. 20

*Scott v. J.P. Morgan Chase & Co.*,
    296 F. Supp. 3d 98 (D.D.C. 2017)............................................................................. 5, 6

*Slate v. Pub. Def. Serv. for the D.C.*,
    31 F. Supp. 3d 277 (D.D.C. 2014)................................................................................ 11

*Tademe v. Saint Cloud State Univ.*,
    328 F.3d 982 (8th Cir. 2003)........................................................................................ 12

*Turner v. Copart, Inc.*,
    744 F. App'x 836-37 (4th Cir. 2018)............................................................................ 15

*Wagner v. Daewoo Heavy Indus. Am. Corp.*,
    314 F.3d 541 (11th Cir. 2002) (en banc)..................................................................... 10

*Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*,
    323 F. Supp. 3d 501 (S.D.N.Y. 2018).......................................................................... 14

*Whitaker v. City of Hopewell, Virginia*,
    2020 WL 7246593 (E.D. Va. Dec. 9, 2020)................................................................. 19

*Williams v. Ellerbe*,
    317 F. Supp. 3d 144 (D.D.C. 2018).............................................................................. 10

*Wood v. Sophie Davis Sch.*,
    2003 WL 22966288 (S.D.N.Y. Dec. 15, 2003)............................................................ 16

**Statutes**

42 U.S.C. § 1981.............................................................................................................. *passim*

D.C. Code § 2-1403.16 ..................................................................................................... *passim*

Equal Pay Act ................................................................................................................... 1, 14

**Rules**

Fed. R. Civ. P. 12 ................................................................................................ 1, 7, 8, 9

Fed. R. Civ. P. 15 ................................................................................................ 8, 9, 10

Defendants Amazon.com Inc., Amazon Web Services, Inc. ("AWS") (Amazon.com Inc. and AWS collectively, "Amazon" or the "Company"), Steven Block, and Shannon Kellogg (collectively, the "Amazon Defendants") move under Fed. R. Civ. P. 12(b)(6), for an order dismissing certain of Plaintiff Charlotte Newman's ("Plaintiff") claims in her Second Amended Complaint ("SAC" or "Second Amended Complaint") under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act ("Title VII"), the Equal Pay Act, and the D.C. Human Rights Act, D.C. Code § 2-1403.16 ("DCHRA").  For the reasons set forth below, those claims should be dismissed.

## PRELIMINARY STATEMENT

Plaintiff joined Amazon over four years ago and swiftly rose through its ranks.  In November 2016, she accepted a Level 6 role as Public Policy Manager on the Public Policy team supporting AWS.  Although she now claims Amazon should have hired her into a Level 7 role, she undeniably lacked the ten years of experience that the job posting specified the Level 7 role required.  She also lacked other experience that the job posting said was important, like experience in the financial services or information technology sectors.  But Amazon was drawn to Plaintiff's experience, which included three years working on Capitol Hill.  So Amazon did not simply reject her because she lacked core requirements for the Level 7 position.  It instead interviewed Plaintiff and ultimately redesigned the position for her, changing it to a Level 6 position to be able to hire her for the role.  Plaintiff performed well and earned new responsibilities, including international public policy issues.  As she gained experience in a broadening role, Amazon promoted her.  In mid-2019, she started a Level 7 role as Head of Public Policy Americas, with responsibility over public policy issues throughout North, Central, and South America – and compensation that increased accordingly.  She continued to thrive, and

in late 2020, applied for and secured the position she holds now, Head of Underrepresented Founder Startup Business Development in AWS.  Until Summer and Fall 2020, Plaintiff voiced no concerns along any of the lines alleged in any of the three Complaints she has filed with this Court.

Despite her years of increasing opportunities and advancement at Amazon, Plaintiff now claims that Amazon discriminated against her because she is an African-American woman.  But Plaintiff fails to allege any facts to back up that incendiary allegation.  Nothing in the SAC suggests that Amazon chose not to offer her a higher level starting position – or ever took any adverse action against her – because of her race or gender.  Plaintiff cannot allege such facts because the complained-of decisions rested solely on her lack of qualifications and experience at the time.

As the SAC acknowledges, Amazon has firmly committed itself to diversity, equity, and inclusion.  It fights to eliminate bias and discrimination and to increase diversity, equity, and inclusion at all levels of its business.  That is the Company that Plaintiff joined and where she has flourished for over four years and not the company that she tries to mis-portray in her lawsuit.  Relying solely on conclusory, sensationalized, and often irrelevant allegations, the improper and untimely SAC (even if considered by this Court) *still* provides no factual support for the notion that, *but for* her race or gender, Plaintiff would have been hired or compensated at a higher level, promoted earlier, or experienced any other sort of more favorable treatment.

Clearly disregarding this Court's procedural requirements, Plaintiff again filed a belated and improper SAC to (unsuccessfully) attempt to plead around the deficiencies previously identified by the Amazon Defendants in their two earlier motions to partially dismiss.  Because Plaintiff's SAC does nothing to save her de-leveling claims, equal pay claims, and Section 1981

2

claims, this Motion should be granted. Indeed, even if this Court decides to consider Plaintiff's untimely amendment, Plaintiff cannot clear the time-bar hurdle for her de-leveling claims, nor can she remedy the pleading deficiencies for her equal pay and Section 1981 claims.

*First*, Plaintiff's claims based on her hire as a Level 6 employee are time-barred under Section 1981, Title VII, and the DCHRA. Plaintiff received her job offer and accepted the position more than four years before she filed her lawsuit or a charge of discrimination. Because the limitations periods for these claims are three years, 300 days, and one year, respectively, Plaintiff's de-leveling claims under all three statutes are untimely.

*Second*, Plaintiff's equal pay claims under the Equal Pay Act, Title VII, and the DCHRA, and all of her claims under Section 1981, warrant dismissal for the independent reason that she again fails adequately to plead them. For her equal pay claims, Plaintiff fails to name any comparators, and her silence speaks volumes: to the extent she alleges in the SAC that any such alleged comparators are her supervisors they cannot, by definition, be comparators to Plaintiff for purposes of her equal pay claims. Further, Plaintiff's references to unnamed white and/or male colleagues in unnamed positions across three different levels (Levels 6, 7, and 8) within the Americas and AWS Public Policy teams still fail to identify any comparators within a discrete and focused group who allegedly received better wages than Plaintiff for similar work.

*Finally*, for her Section 1981 claim, Plaintiff parrots back the "but for" legal standard in the SAC while claiming elsewhere that her sex and gender also contributed to the alleged discrimination—thus failing to plausibly plead that race was the "but-for" cause of any allegedly adverse action by the Amazon Defendants. For these reasons and for those articulated in more detail below, the Amazon Defendants' Motion should be granted and Plaintiff's de-leveling, equal pay, and Section 1981 claims should be dismissed, with prejudice.

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[1]

Amazon is committed to fighting against systemic racism and injustice.  SAC

¶ 13.  Toward that end, Amazon and its leaders are resolute in their support for the Black

community and have called for an end to the "inequitable and brutal treatment of Black people in

our country."  *Id.*  In addition to speaking out about its support of the Black community, Amazon

has taken affirmative steps to ensure its Black and female employees are treated fairly.  SAC ¶

35.  As Plaintiff acknowledges, in 2019, "women earned 99.3 cents for every dollar that men

earned for performing the same jobs, and minorities earned 99.1 cents for every dollar that white

employees earned for performing the same jobs."  *Id.*  In 2020, those statistics have only

improved, and women now earn 100.0 cents for every dollar that men earn performing the same

jobs and minorities earn 99.2 cents for every dollar that whites earn performing the same jobs.[2]

Amazon and its leaders "continue to be active participants in dismantling systemic racism,

oppression and inequality."  SAC ¶ 62.  That Amazon has an entire business segment dedicated

to Underrepresented Founder Startup Businesses, with Plaintiff as its Head of Business

Development, only further shows Amazon's commitment to dismantling systemic racism,

oppression, and inequality.  SAC ¶¶ 72, 317.

Plaintiff first joined Amazon after applying for a role as a "Senior Manager, Financial

Services, Public Policy, AWS."  SAC ¶¶ 2, 92.  Amazon posted a job requisition for this position

---

[1] For purposes of this Motion only, the Amazon Defendants rely, as they must, on the factual allegations in the SAC.  The Amazon Defendants deny the allegations that they discriminated against Plaintiff and aver that, should this case proceed to discovery, the facts will paint a very different picture than the one sensationalized by Plaintiff's counsel in the SAC and will show that the Amazon Defendants at all times treated Plaintiff fairly.

[2] Amazon.com, *Our Workforce Data, available at* https://tinyurl.com/mwn4zf5y (last accessed July 8, 2021).

in July 2016.  *See* Job Requisition attached as Exhibit ("Ex.") A to the Declaration of Shereen

Sawyer ("Sawyer Decl.").[3]  Specifically, Amazon was looking for someone with over 10 years

of experience with federal lobbying and/or commensurate corporate, legislative, or executive

experience to work on its public policy team, which was focused on increasing the adoption of

the utility cloud computing model in the financial sector throughout the Americas (associations,

regulators, federal departments, and other government decision makers).  *Id.*  As the job

requisition makes clear, Amazon expected that a candidate for the Level 7 position of Senior

Manager would not only have a background in the financial sector, but would also have a

background in public policy development pertaining to information technology issues,

particularly cloud computing, so that AWS could advance its public policy and business

objectives in the financial sector and federal government.  *Id.*  Preferably, the candidate would

have a Bachelor's Degree in Political Science, Public Policy, or Engineering.  *Id.*

In October 2016, Plaintiff started interviewing for the Senior Manager position, despite

only having approximately 3 years of experience as an Economic Policy Advisor to Senator

Booker, and no experience pertaining to IT or cloud computing.  SAC ¶¶ 78, 88.  After meeting

with Mr. Block, Plaintiff had a formal interview "loop" with several individuals.  *Id.* ¶ 90.  In

November 2016, based on her qualifications and experience, Amazon offered Plaintiff the Level

6 role of Public Policy Manager, which Plaintiff accepted.  *Id.* ¶ 91.  Although Plaintiff alleges

that she was "dismayed" and "concerned" to be offered a Level 6 role (*id.* ¶ 94), and that she

---

[3] While Plaintiff selectively cites to the job requisition (*see* ¶ 92), she has failed to attach it to her
SAC.  Defendants do so now, and because the terms of the job requisition have been explicitly
referenced in the SAC, the Court can consider this document for purposes of the instant motion
to dismiss.  *See Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 105 (D.D.C. 2017)
(where documents and terms of document are "expressly referenced" in the complaint, the court
may consider them on a motion to dismiss without converting to summary judgment).

"accepted after a call with the recruiter voicing her objections and hesitation" (*id.* ¶ 91), there is noticeably no indication in the SAC that Plaintiff suggested, at the time of the offer or start of her employment, that her hire as a Level 6 employee (instead of a Level 7 employee) was due to her race or her gender.[4]   *See generally id.*   Also conspicuously absent from the SAC are any allegations that would suggest Plaintiff was hired at a Level 6 employee because of her race or gender and not because she simply did not have the qualifications outlined in the Level 7 job requisition (i.e., "10+ years of experience with federal lobbying and/or commensurate corporate, legislative, or executive branch" to advance AWS' business objectives in the financial sector and federal government).   *See generally id.*

Plaintiff ultimately began employment with Amazon in January 2017 in the Level 6 role. SAC ¶¶ 10, 33, 87.  Plaintiff was promoted to a Level 7 role effective November 2019, and then was named Head of Underrepresented Founder Startup Business Development in November 2020.  *Id.* ¶¶ 72, 101, 317.

On March 1, 2021, Plaintiff filed this action, alleging, *inter alia,* that her hire as a Level 6 employee instead of a Level 7 employee violated Section 1981, the Equal Pay Act, and the DCHRA.  *Id.* ¶¶ 2-4, 7-11, 40.  Plaintiff also asserts that the Amazon Defendants took various allegedly discriminatory actions against her due to her gender and race, such as failing to promote her (even though she has been promoted) and "denying her the opportunity to work in an employment setting free of unlawful discrimination."  SAC ¶¶ 311, 324. Absent from the SAC, however, are any *factual* allegations to support that any actions taken against Plaintiff

---

[4] Indeed, even in the written complaint she submitted to Amazon on June 19, 2020 (which is explicitly referred to in the SAC and therefore incorporated by reference, *see Scott,* 296 F. Supp. 3d at 105), Plaintiff specifically noted that she was hired as Level 6 employee and yet made no suggestion that her employment offer was discriminatory.

would not have been taken "but-for" her race. *See generally id.* Although Plaintiff peppers her SAC with conclusory allegations that Black employees and female employees were paid less than their white, male counterparts (*id.* ¶¶ 36, 40, 229-32, 317-18), Plaintiff does not identify any white or male comparator who was performing similar duties to her and yet was paid more.

On May 3, 2021, the Amazon Defendants moved to dismiss some of Plaintiff's claims. Dkt. 18. On May 12, in response to a request by Plaintiff for an extension of time to amend the Complaint as of right or extend the deadline to respond, the Court directed Plaintiff to "respond to the [Amazon D]efendants' Motion to Partially Dismiss the Complaint on or before May 26, 2021." *See* 5/12/2021 docket entry. Plaintiff did not file an Amended Complaint by the deadline to do so as a matter of right – May 24, 2021 – nor did she seek consent or leave from the Amazon Defendants or the Court, respectively. *See* Dkt. *generally*. Instead, Plaintiff unilaterally filed an untimely and procedurally defective Amended Complaint on May 26. Dkt. 23. On June 9, 2021, Amazon Defendants moved to partially dismiss Plaintiff's Amended Complaint (Dkt. 25), and on June 10, 2021 Defendant Andres Maz ("Maz") filed his Motion to Dismiss. On June 24, 2021, Plaintiff filed the SAC (Dkt. 30), which is also improper and untimely because Plaintiff's ability to amend as a matter of right as to the Amazon Defendants expired almost a month earlier, and Plaintiff did not obtain the Amazon Defendants' consent or the Court's approval to amend her allegations as to the Amazon Defendants.

## LEGAL STANDARD

When presented with a motion to dismiss for failure to state a claim, the court is required to ask whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also* Fed. R. Civ. P. 12(b)(6). In assessing a motion under Rule 12(b)(6), although

"a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Although a defense based on the statute of limitations is an affirmative defense, "it is clear that" the defense may be raised via a Rule 12(b)(6) motion "when the facts that give rise to the defense are clear from the face of the complaint." *Mizell v. SunTrust Bank,* 26 F. Supp. 3d 80, 85 (D.D.C. 2014) (quoting *Derringer v. Emerson,* 729 F. Supp. 2d 286, 289 (D.D.C. 2010); *aff'd,* 435 F. Appx. 4 (D.C. Cir. 2011)); *see also Lewis v. Bayh,* 577 F. Supp. 2d 47, 51 (D.D.C. 2008).[5]

## **ARGUMENT**

### A.   **PLAINTIFF'S SECOND AMENDED COMPLAINT IS PROCEDURALLY IMPROPER, AND IT SHOULD BE DISREGARDED.**

Preliminarily, Plaintiff's SAC – like her Amended Complaint - should be rejected as procedurally improper, because Plaintiff filed it after the time to do so as a matter of right expired and without consent from Defendants or leave from the Court. *See* Fed. R. Civ. P. 15(a).

---

[5] The Amazon Defendants respectfully submit that because they are moving to dismiss some of Plaintiff's claims, their time to respond to the other claims in the SAC is suspended until a decision has been reached on this Motion. *Betz v. First Credit Servs., Inc.*, 139 F. Supp. 3d 451, 456 n.4 (D.D.C. 2015) ("The Court adopts the majority view and finds that First Credit's partial motion to dismiss, which the Court deems to have been timely filed, suspends the time by which it must respond to the entirety of the Complaint pursuant to Rule 12(a) of the Federal Rules of Civil Procedure.") .

As detailed on page 7, *supra*, while Plaintiff moved the Court for an extension of time to amend the Complaint or respond to the Amazon Defendants' initial motion to partially dismiss (*see* Dkt. 21), the Court only extended the deadline to respond to such motion.  *See* 5/12/2021 docket entry (granting Plaintiff's motion for extension "in part" and directing that "[P]laintiff shall respond to the [Amazon D]efendants' Motion to Partially Dismiss the Complaint on or before May 26, 2021.").

Plaintiff did not respond to the Amazon Defendants' initial motion on May 26, 2021; instead, she filed an Amended Complaint (Dkt. 23).  But Plaintiff's ability to amend the Complaint (Dkt. 1) as a matter of right expired on May 24, 2021—21 days after the service of the Amazon Defendants' Motion on May 3.  Fed. R. Civ. P. 15(a)(1)(B) ("[a] party may amend its pleading once as a matter of course . . .  21 days after service of a motion under Rule 12(b), (e), or (f) . . .").  Thus, Plaintiff could only amend after May 24 with the Amazon Defendants' written consent or the Court's leave, and in accordance with this Court's local rules and standard orders.  Fed. R. Civ. P. 15(a)(2); LCvR 7(i) (stating that "[a] motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended"); Dkt. 6 at 3(b) ("Any amended pleadings shall be accompanied by a redline comparison of the original and amended pleading."); *see Gov't of Guam v. Am. President Lines*, 28 F.3d 142, 150 (D.C. Cir. 1994) (stating that "[t]he normal procedure for requesting an amendment to the complaint in federal court is to file a [Rule 15] motion to amend together with the proposed amendment or new pleading") (internal quotation marks and citation omitted).

The SAC is also procedurally improper as to the Amazon Defendants.  Contrary to Plaintiff's representation to this Court and counsel for the Amazon Defendants that an amendment was necessary to respond to Defendant Maz's Motion to Dismiss, the SAC asserts

multiple new allegations related to claims against the Amazon Defendants only (*see, e.g.,* SAC ¶¶ 108, 112-122, 203, 211, 213-218, 221, 246).  Again, Plaintiff did not seek consent from the Amazon Defendants, and she did not receive leave from the Court to file an amended complaint as to the Amazon Defendants after May 24.  *See* Dkt. *generally.*  Therefore, Plaintiff's SAC, like her Amended Complaint, is procedurally deficient as to the Amazon Defendants and should be disregarded.  *See, e.g.*, *United States ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003) ("The failure to obtain leave results in an amended complaint having no legal effect.").

While the standard for motions for leave to amend is generous, the standard "does not mean that a motion for leave to amend must be granted as a matter of course."  *Williams v. Ellerbe*, 317 F. Supp. 3d 144, 147 (D.D.C. 2018) (quotation and citation omitted); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130-31 (D.C. Cir. 2012) (affirming the trial court's denial of the plaintiff's request for leave to amend where the plaintiff failed to file a motion pursuant to Rule 15(a) or comply with this Court's Local Rules); *see e.g.*, *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002) (en banc) ("[A] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").  In any event, because, as demonstrated below, Plaintiff's de-leveling, equal pay, and Section 1981 claims in the SAC cannot survive this Motion, any proposed amendment should be denied as futile.  *Id.*

**B.     PLAINTIFF'S SECTION 1981, TITLE VII, AND DCHRA CLAIMS BASED ON HER HIRE AS A LEVEL 6 MANAGER ARE TIME-BARRED.**

The limitations period for "contract formation claims" under Section 1981 is three years.[6]

*See Kargbo v. Nat'l R.R. Passenger Corp.*, 243 F. Supp. 3d 6, 11 (D.D.C. 2017) (claims that

"challenge [] non-selection for various positions" "go to the very existence and nature of the

employment contract" and thus are subject to a three-year statute of limitations (internal

quotation mark, citation and alterations omitted)).  The limitations periods for Title VII and

DCHRA claims are even shorter:  300 days and one year from the date of the allegedly

discriminatory act, respectively.  *Slate v. Pub. Def. Serv. for the D.C.*, 31 F. Supp. 3d 277, 295

(D.D.C. 2014) (explaining that the filing period for an EEOC charge is generally 300 days); D.C.

Code § 2-1403.16.

Here, Plaintiff alleges that her purported "de-leveling," which occurred when she was

offered a Level 6 (and not a Level 7) job at Amazon in November 2016, was a discriminatory

act.  SAC ¶¶ 4, 9, 91.  That act occurred *over four years* before Plaintiff filed her Complaint on

March 1, 2021.  *See* Dkt. 1.  The challenged act therefore falls well outside the statute of

limitations for Plaintiff's Section 1981, Title VII, and DCHRA claims.  Accordingly, the Court

should dismiss those claims as untimely.

The Amazon Defendants anticipate that Plaintiff will attempt to argue that her alleged

"de-leveling" was simply one decision in a series of discriminatory actions, and that she is

therefore permitted to proceed on those claims pursuant to the "continuing violation" doctrine.

Such an argument would fail.  The alleged "de-leveling" occurred in November 2016 when

---

[6] To the extent Plaintiff argues that her Section 1981 claims concern post-contract formation conduct, entitling her to a statute of limitations of four years, *see Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 371 (2004), her claim would still be untimely for the reasons set forth below.

Plaintiff was offered the Level 6 job.  Offering employment – like terminating employment – is a discrete act, not subject to the "continuing violation" doctrine.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" and plaintiffs "can only file a charge to cover discrete acts that occurred within the appropriate time period"); *Nurriddin v. Goldin*, 382 F. Supp. 2d 79 (D.D.C. 2005) (holding that multiple claims, including being hired two grade levels below other employees and being assigned responsibilities not previously assigned to people in his level, were discrete acts of discrimination); *Powell v. Am. Red Cross*, 518 F. Supp. 2d 24, 32 (D.D.C. 2007) ("[R]efusal of the Red Cross to offer her a higher salary for the Staff Health Nurse position" is a discrete act and statute of limitations runs when plaintiff is informed of decision, "even if one of the effects of the decision . . . does not occur until later."); *Patterson v. Johnson*, 391 F. Supp. 2d 140, 146 (D.D.C. 2005), *aff'd,* 505 F.3d 1296 (D.C. Cir. 2007) (holding that "various incidents," including non-selection for promotion, were time-barred as the incidents were "discrete acts, and not 'part of the same unlawful employment practice.'") (citation omitted).

Other courts confirm that employment actions such as "de-leveling" are discrete acts. *See, e.g.*, *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 988 (8th Cir. 2003) (claims of discrimination in tenure and promotion were discrete acts that constituted separate employment practices); *City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1102-03 (11th Cir. 2002) (reduced retirement compensation and lesser longevity pay that Hispanic employees received under prior policy of periodically terminating and rehiring Hispanic employees to avoid classifying them as permanent employees was merely present consequence prior discrete acts); *Chisolm v. 7-Eleven, Inc.*, 383 F. Supp. 3d 1032, 1060 (S.D. Cal. 2019), *aff'd,* 814 F. App'x 194 (9th Cir. 2020)

("Plaintiff's non-selection for positions in 2011 and 2013 were isolated employment decisions.");

*Blake v. Bronx Lebanon Hosp. Ctr.*, 2003 WL 21910867, at *7 (S.D.N.Y. Aug. 11, 2003)

("[P]laintiff's promotion and salary claims brought after May 20, 1999 are time-barred.");

*McCarron v. British Telecom*, 2002 WL 1832843 (E.D. Pa. Aug. 7, 2002) (transfer and

placement in lower level positions that prevented plaintiff from pursuing larger accounts and

reduced opportunities for achievement were discrete acts).[7]

In sum, even construing the SAC generously, Plaintiff had (1) three years from the date

she received the Level 6 offer, or until November 2019,[8] to bring a Section 1981 claim based on

her alleged "de-leveling"; (2) 300 days, or until September 2017, to file a charge under Title VII

with the Equal Employment Opportunity Commission ("EEOC"); and (3) one year, or until

November 2017, to bring a claim under the DCHRA.  Because Plaintiff did not file her

---

[7] Notably, some circuits hold that the "continuing violation" doctrine does not apply to Section 1981 claims *at all.  See, e.g.*, *Kornegay v. Burlington Indus., Inc.,* 803 F.2d 787, 788 (4th Cir. 1986) ("Comparison of Title VII with § 1981 discloses the problem with Kornegay's reliance on the concept of a continuing violation….The difficulty with the district court's reasoning is that it analogized the 180-day period for filing a charge under Title VII to the three-year statute of limitations applicable to § 1981.  The correct analogy is between the two-year cap of § 2000e– 5(g) and the three-year period of limitation borrowed from state law.  Section 1981 has neither a provision for filing charges before bringing suit nor an express cap on back pay similar to that imposed by § 2000e–5(g)….The concept of a continuing violation serves no purpose in a § 1981 discriminatory wage claim."); *Harris v. Allstate Ins. Co.*, 300 F.3d 1183 (10th Cir. 2002) (holding that the continuing violation theory is not applicable to claims arising under federal civil rights statute guaranteeing right to make and enforce contracts).

[8] The tolling agreement referenced by Plaintiff tolled the statute of limitations period for only 66 days, which still does not remedy the untimeliness of Plaintiff's de-leveling claims under any of the three statutes.  SAC ¶ 322.  To the extent Plaintiff claims that a four-year statute of limitations period applies to her Section 1981 claims (*see* fn. 6, *supra*), such a limitations period expired in November 2020—months before Plaintiff filed her Complaint on March 1, 2021 and before the execution of the December 21, 2020 tolling agreement.  Further, the tolling agreement specifically provides that any defenses that may have accrued before the tolling agreement's effective date of December 21, 2020 – *i.e.*, the expiration of the four-year limitations period in November 2020 – would not be waived.  *See* Declaration of Grace E. Speights ("Speights Decl.") at ¶ 3.

Complaint until March 1, 2021, her EEOC Charge until March 8, 2021, or her DC Office of

Human Rights Complaint until September 17, 2020, her claims are time-barred and should be

dismissed with prejudice.

### C. PLAINTIFF HAS NOT ADEQUATELY PLEADED AN EQUAL PAY CLAIM UNDER THE EQUAL PAY ACT, SECTION 1981, TITLE VII, OR THE DCHRA.

Plaintiff's claims premised on her alleged receipt of unequal pay based on her race and

gender are deficiently pleaded and must be dismissed.  SAC ¶¶ 316-20; *Iqbal*, 556 U.S. at 678;

*Twombly*, 550 U.S. at 555.

To state a claim under the Equal Pay Act, Plaintiff must allege that (1) she receives lower

pay than a male co-employee (2) for work substantially equal in skill, effort, and responsibility

under similar working conditions.  *See Perez v. D.C. Dept. of Emp. Servs.*, 305 F. Supp. 3d 51,

56-57 (D.D.C. 2018) (granting motion to dismiss Equal Pay Act claim on the ground that

allegations regarding pay disparity related to plaintiff's race, not gender).[9]  Likewise, "[c]laims

of unequal pay under the DCHRA are governed by the standards of the Equal Pay Act." *Hawley

v. Blackboard, Inc.*, 2005 WL 513496, at *8 n.1 (D.D.C. Mar. 3, 2005); *George Washington

Univ. v. Violand*, 940 A.2d 965, 979 (D.C. 2008) (requiring proof of "equal work" requiring

"equal skill, effort, and responsibility" under similar conditions for a DCHRA pay discrimination

claim).  To state a prima facie case of wage discrimination under Title VII, Plaintiff must allege

that she is a member of a protected class, that she was paid less than an employee outside the

class, and that the higher paid employee was performing a substantially similar job.  *Davis v.*

---

[9] Other circuits have characterized the Equal Pay Act pleading standard as "demanding."  *See, e.g., Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 519 (S.D.N.Y. 2018), *adhered to on denial of reconsideration sub nom. Weinreb v. Xerox Bus. Servs.*, No. 16-CV-6823-JGK, 2020 WL 4288376 (S.D.N.Y. July 27, 2020) (dismissing Equal Pay Act claim for failure to plead any facts relating to "actual job content or working conditions").

*S.C. Dep't of Health & Env't Control*, 2015 WL 5616237, at *3 (D.S.C. Sept. 24, 2015).  To state a claim for race discrimination in pay under Section 1981, Plaintiff must allege that she is "a member of a protected class, and that the job [s]he occupied was similar to higher paying jobs occupied by [employees outside her protected class]." *Turner v. Copart, Inc.*, 744 F. App'x 836-37 (4th Cir. 2018) (quotation and citation omitted)).  And as explained below, under *Comcast Corp. v. Nat'l. Assn. of Afr. Am. Owned Media*, 140 S. Ct. 1009 (2020), race must be the "but-for" cause of the discriminatory pay decision to sustain a Section 1981 claim.

Despite the pleading deficiencies identified in the Amazon Defendants' previous two Motions, Plaintiff *still* continues to fail to identify even a single alleged "comparator" throughout her SAC, relying instead solely on conclusory allegations that white and/or male employees generally were paid more than black and/or female employees and citing unnamed male and, and, now female, employees in unspecified Level 6, Level 7, and Level 8 positions within the AWS and Americas Public Policy teams at Amazon.  *See, e.g.*, SAC ¶¶ 77, 102, 104-05, 108, 116-22.  Plaintiff's silence on these unnamed alleged comparators speaks volumes.

Crucially, Plaintiff's allegations that both male *and* female employees were paid more than her necessarily defeat her unequal pay claims on the basis of gender.  Through her SAC, by alleging that allegedly similarly situated female employees received higher compensation, Plaintiff has completely foreclosed the ability to succeed on an unequal pay claim based on gender.  *See, e.g., Battle v. Master Sec. Co., LLC*, 298 F. Supp. 3d 250, 253-54 (D.D.C. 2018) (granting motion to dismiss where complaint did not mention a discrepancy in pay based on plaintiff's sex); *McNair v. D.C.*, 213 F. Supp. 3d 81, 88 (D.D.C. 2016) (same, where complaint alleged that plaintiff "'began employment at a lower grade and pay scale tha[n] other similarly situated employees,' but

fail[ed] to allege that those similarly situated employees were 'members of the opposite sex' as required under even the liberal pleading standard applicable here") (citation omitted).

Notwithstanding Plaintiff's self-sabotage of her unequal pay claim on the basis of gender, her unequal pay claims still fail. To the extent that Plaintiff's allegations refer to Mr. Block or Defendant Maz, her own SAC – which we must accept as true at this stage – alleges that both were her supervisors (SAC ¶¶ 44, 75, 76, 125, 224), foreclosing any claim that they are proper comparators for purposes of her pay claims. *See, e.g.*, *Wood v. Sophie Davis Sch.*, 2003 WL 22966288, at *6 (S.D.N.Y. Dec. 15, 2003) (plaintiff's purported comparators were not similarly situated because they were "actually all her supervisors," making comparisons between them inapposite); *Crosby v. Computer Sci. Corp.*, 470 F. App'x 307, 309 (5th Cir. 2012) (a plaintiff's supervisor is not a "valid comparator"). If Plaintiff is, in fact, referring to Messrs. Block and Maz, this Court should not reward her gamesmanship by allowing her equal pay claims to survive simply because she did not name them.

In any event, Plaintiff's equal pay claims falter even though Plaintiff attempts to hide behind generalized, conclusory allegations in the SAC. Indeed, Plaintiff fails to identify any such white/male coworkers or the alleged roles these unidentified white and/or male employees occupied (beyond generalized allegations as to their Level). *See generally* SAC.[10] Moreover, Plaintiff's conclusory new allegations about the supposed unidentified comparators fails to carry her burden. *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (explaining that "similarly situated" means that all of the relevant aspects of one's employment situation were "nearly identical" to the supposed comparator) (quotation and citation omitted).

---

[10] Further revealing the weaknesses in her equal pay claims, Plaintiff admits that a "white male employee," who was hired at Level 8 in the same year as Plaintiff, had more years of experience than her. SAC ¶ 103.

16

Besides making conclusory assertions that others were "similarly situated" to her (*e.g.*, SAC ¶¶ 112, 113), Plaintiff's SAC says a lot without saying anything.  For example, Plaintiff's generalized and broad descriptions of her responsibilities, upon which she relies as a basis for identifying the supposed comparators, includes acts such as "securing meetings," "managing relationships," "meeting and collaborating," and "drafting and negotiating."  SAC ¶ 114.  According to Plaintiff, any such acts – which many employees at different levels across different departments (and even industries) routinely perform – could ostensibly render any person within the AWS and Americas Public Policy teams her comparator.  But that is not the law, and courts routinely dismiss pay claims with similar pleading deficiencies.  *Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 310-11 (D.D.C. 2015) (citation omitted) (noting that the "unavailability of details"— including whether positions went to others outside the protected class—"does not excuse Plaintiff from alleging, on information and belief if necessary, the general sequence of events and basic facts."); *see e.g.*, *E.E.O.C. v. Port Auth. of New York & New Jersey,* 768 F.3d 247, 256 (2d Cir. 2014) (allegation that "Port Authority paid its female nonsupervisory attorneys less than its male nonsupervisory attorneys for substantially equal work, that the[] attorneys had the same job code, and that the disparity in pay [could] not be attributed to factors other than sex" constituted a "bald recitation of the elements of an EPA claim" that was "plainly insufficient to support a claim") (quotation and citation omitted); *Durand v. Excelsior Care Grp. LLC*, 2020 WL 7246437, at *4 (E.D.N.Y. Dec. 9, 2020) (failure to plead facts describing the alleged comparators' "job duties, responsibilities, the skill and effort required to execute the…positions, or the conditions under which the work was performed" is a fundamental pleading deficiency that warrants dismissal).  The same result is appropriate here.

17

In short, Plaintiff's Equal Pay Act, Section 1981, Title VII, and DCHRA pay claims lack any factual support indicating that she and any white and/or male comparators were employed in roles with similar job content, that they worked in similar working conditions, or that they had comparable skill, effort, and experience levels, yet were paid more than her.  Accordingly, these claims must be dismissed.

### D.   PLAINTIFF'S SECTION 1981 CLAIM FAILS FOR THE INDEPENDENT REASON THAT SHE HAS NOT ALLEGED THAT BUT-FOR HER RACE, SHE WOULD NOT HAVE SUFFERED DISCRIMINATION.

Finally, any and all claims alleged by Plaintiff under Section 1981, including claims based on alleged "de-leveling," unequal pay or any of the other various acts alleged in the SAC, fail for the independent reason that Plaintiff has not alleged that, but for her race, she would have been offered a Level 7 job, received higher compensation, been promoted more quickly, or experienced a more "comfortable" employment setting.  *See generally* SAC.  As the Supreme Court recently clarified, to bring a Section 1981 claim, Plaintiff "must *initially plead* and ultimately prove that, *but for race*, [she] would not have suffered the loss of a legally protected right," not just that race played "some role" in the decision-making process.  *Comcast*, 140 S. Ct. at 1019 (emphasis added).  While Plaintiff adds the phrase "but-for" in Paragraph 330 of the SAC, Plaintiff cannot satisfy her pleading requirements in this Court by simply parroting the legal standard.  *Moore v. United States Dep't of State*, 351 F. Supp. 3d 76, 87 (D.D.C. 2019) (Friedrich, J.) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim); *Iqbal*, 556 U.S. at 678 (same).

In fact, Plaintiff's own allegations weigh against her claim that her race/color were a "but for" cause of discrimination, because she alleges that her sex and gender also played a role in the complained-of actions, necessitating the dismissal of her Section 1981 claims.

Based on the Supreme Court's holding in *Comcast*, this District recently granted a motion to dismiss a Section 1981 claim where plaintiffs alleged "a buffet of reasons other than race" (including their national origin and religion) "that plausibly caused, or contributed to, their termination." *Adetoro v. King Abdullah Acad.*, 2020 WL 7122858, at *4 (D.D.C. Dec. 4, 2020). Given the complaint's inclusion of alleged reasons for the complained-of conduct other than race, the court held that plaintiffs were unable to meet their burden of proving that "but for not being of 'Arabic Middle Eastern descent'—they would have remained employed at the Academy." *Id.*; *see also Nahum v. Spear,* 2021 WL 1158854, at *3 (W.D. Wash. Mar. 26, 2021) (granting motion to dismiss where "Plaintiff, however, provide[d] no facts to support [] his conclusory allegation…that Defendants' alleged actions were because Plaintiff was black"); *Whitaker v. City of Hopewell, Virginia,* 2020 WL 7246593, at *7 (E.D. Va. Dec. 9, 2020) ("Whitaker provides a litany of excuses to explain why he thinks the City should not have fired him for the late CAFRs. He does not, however, provide any evidence that would allow a jury to find that the City fired him because of his race."); *Ikedilo v. Statter*, 2020 WL 5849049, at *9 (S.D.N.Y. Sept. 30, 2020) ("Plaintiff's allegation that Defendant [] only admitted a few Black residents during her tenure as Program Director is far too attenuated to support an inference that Plaintiff's race was the but-for cause of Defendant['s] delay in sending her program evaluations.").

The same reasoning applies here. Plaintiff alleges throughout that she was "confronted with a systemic pattern of insurmountable discrimination based upon the color of her skin **and her gender**." *See, e.g.,* SAC ¶ 1 (emphasis added). Notably, Plaintiff uses the exact same language in support of her 42 U.S.C. § 1981 claim for race discrimination as her DCHRA claim for race and **gender** discrimination, as well as her Title VII claim for race, color, **sex**, and

**gender** discrimination.  *Compare id.* at ¶ 330 (Section 1981) ("paying her less than her comparable and/or similarly situated colleagues in sufficiently similar and/or equivalent positions, failing to hire and/or promote her to an appropriate job level, and denying her the opportunity to work in an employment setting free of unlawful discrimination"), *with id.* ¶ 341 (DCHRA) (same) *and with id.* ¶ 324 (Title VII) (same).  Therefore, it is impossible for Plaintiff to say, that "but for" her race, she would not have suffered discrimination.  Under *Comcast* and its progeny, Plaintiff has failed to state a claim for discrimination under Section 1981 and all such claims should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the Amazon Defendants respectfully request that the Court dismiss the following claims with prejudice:  (1) Plaintiff's de-leveling claims under Section 1981, Title VII, and DCHRA; (2) Plaintiff's equal pay claims under the Equal Pay Act, Section 1981, Title VII, and DCHRA; and (3) the entirety of Plaintiff's Section 1981 claims.[11]  The Amazon Defendants respectfully request oral argument on this Motion.

Dated:  Washington, D.C.
        July 8, 2021

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:  */s/ Grace E. Speights*
Grace E. Speights
D.C. Bar No. 392091
grace.speights@morganlewis.com
Oluwaseun Familoni
D.C. Bar No. 1617820
shay.familoni@morganlewis.com

---

[11] The Amazon Defendants also respectfully request that the Court stay discovery while this Motion is pending, because if successful, it will dispose of Plaintiff's claims related to de-leveling and equal pay, as well as all of her Section 1981 claims—thus, significantly narrowing the scope of discovery.  *Sai v. Dep't of Homeland Sec.,* 99 F. Supp. 3d 50, 58 (D.D.C. 2015) ("a stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting time and effort of all concerned, and to make the most efficient use of judicial resources") (internal alterations and quotation marks omitted).

1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
+1.202.739.3000

Melissa C. Rodriguez (*admitted pro hac vice*)
melissa.rodriguez@morganlewis.com
Ashley J. Hale (*admitted pro hac vice*)
ashley.hale@morganlewis.com
Hanna E. Martin (*admitted pro hac vice*)
hanna.martin@morganlewis.com
101 Park Avenue
New York, NY 10178
+1.212.309.6000

*Attorneys for the Amazon Defendants*