IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**CHARLOTTE NEWMAN**

    *Plaintiff,*

       v.

**AMAZON.COM, INC.,** *et al.*

    *Defendants*.

**Civil Action No. 1:21-cv-00531 DLF**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANDRES MAZ'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## I.    Introduction.

Plaintiff's Second Amended Complaint focuses, in great detail, on her allegations of alleged discriminatory hiring and promotion policies of Amazon. Notably absent from Plaintiff's Amended Complaint are *any* facts suggesting that Mr. Maz hired her, actually influenced in any way the position to which she was hired, or actually negatively influenced Amazon's failure to promote her as quickly as she believed she was entitled. Instead, as to her claims for employment discrimination, Plaintiff attempts to lump Mr. Maz in with the rest of the Amazon Defendants by association. Plaintiff fails to allege any facts displaying that Mr. Maz harbored any discriminatory animus against her. Indeed, the allegations are clear that he thought she was "great." Even if Plaintiff had stated a cause of action against Mr. Maz for her employment claims, they are largely barred by the statute of limitations.

Plaintiff also attempts to allege that Mr. Maz assaulted her in 2018 and 2019 by allegedly touching her thigh on one occasion, allegedly putting his arm around her on another, and allegedly pulling her hair on another. However, these allegations are barred by the statute of limitation.

Because Plaintiff fails to state a claim against Mr. Maz, the claims against him should be dismissed.

## II.    Factual Background.[1]

In November 2016, Plaintiff applied to Amazon for a Senior Manager role, which is an "L7" position.  ECF No. 23, 2d. Am. Compl. ¶ 91.  However, in January 2017, Amazon hired Plaintiff as a Public Policy Manager, which is an "L6" position.  2d. Am. Compl. ¶ 87.  While the pay disparity between L6 and L7 employees exceeds $150,000 annually, Amazon explicitly informed Plaintiff the L6 position level and salary amount offered were non-negotiable.  2d. Am. Compl. ¶¶ 91-93, 254.  Nevertheless, Plaintiff accepted the position.  Importantly, Plaintiff makes no allegation that Mr. Maz had any involvement in any aspect of Plaintiff's hiring.  *See generally* 2d. Am. Compl. ¶¶ 78-156.  Nor could she because, although not stated in the First or Second Amended Complaints, Mr. Maz's start date with Amazon was months *after* Plaintiff was hired – on or about March 20, 2017.  Plaintiff acknowledges that that she did not starting working with Mr. Maz until the second quarter of 2017.  2d. Am. Compl. ¶ 124.

Plaintiff alleges that soon after her hire, Mr. Maz gifted Plaintiff a notebook decorated with stickers by Mr. Maz's daughter, which Plaintiff perceived as "unusual."  2d. Am. Compl. ¶ 125.  Plaintiff alleges that in October 2017, she traveled with Mr. Maz to Chile on business.  2d. Am. Compl. ¶ 126.  During dinner at a restaurant one evening, Mr. Maz allegedly "hit on" Plaintiff by calling her "beautiful."  *Id.*  Plaintiff states that she "brushed the comment off" and did not report it.  2d. Am. Compl. ¶ 127.

Plaintiff claims that on or around January 18, 2018, she attended a dinner with Mr. Maz and a new colleague they were welcoming to Amazon.  2d. Am. Compl. ¶¶ 47, 133.  During

---

[1] Mr. Maz vigorously disputes Plaintiff's claims and allegations.  However, her factual allegations are set forth here solely for the purposes of this motion to dismiss.

dinner, Mr. Maz allegedly was "lavishly praising" Plaintiff, which she states made her uncomfortable, and he said she is "so great," "I really like this girl," and asking their new colleague "[d]on't you think she is great?" 2d. Am. Compl. ¶ 134.  At one point, according to Plaintiff, Mr. Maz and plaintiff were going to "high-five" but Mr. Maz allegedly interlaced his fingers with Plaintiff's. 2d. Am. Compl. ¶ 135.  Later in the evening, Plaintiff claims Mr. Maz got up from dinner, moved away from the third person, sat next to Plaintiff, and then "put his left hand under the table and pressed on Ms. Newman's lap, in proximity to her genitalia, then grabbed and groped the upper thigh of her right leg." Am. Compl. ¶¶ 121-22. Plaintiff now amends her complaint to state that Mr. Maz also touched her "on her inner thigh." 2d. Am. Compl. ¶ 47; 137, a fact never previously alleged. Plaintiff says she had "the instinct to stand up and blurt out that she needed to use the restroom." 2d. Am. Compl. ¶ 138.  Following dinner, while she was waiting for an Uber, Plaintiff alleges Mr. Maz propositioned Plaintiff to "go home with him to have sex," and that Mr. Maz initially "ignored her objections," but states that she left in her rideshare. 2d. Am. Compl. ¶¶ 141-45.

The second event Plaintiff attributes to Mr. Maz is that on or about September 19, 2019, during a "team off-site" in Seattle, Plaintiff alleges she was getting ready to leave a rooftop hotel bar she was at with Mr. Maz and other colleagues. 2d. Am. Compl. ¶¶166-67.  Plaintiff claims Mr. Maz "yanked" on Plaintiff's hair by pulling it and laughingly stated "you can leave this behind." 2d. Am. Compl. ¶¶ 167-68.  Plaintiff concludes that this was a "mockery" of her "hair as a Black woman," and she was upset and mortified. 2d. Am. Compl. ¶¶ 168-69.  Nevertheless, she agreed to stay with the group, get food and drinks at a pizza restaurant with her colleagues including Mr. Maz, and receive a belated toast for her birthday. 2d. Am. Compl. ¶ 170.  The same evening, at the restaurant with the group, Plaintiff alleges Mr. Maz stated, "Let's pretend

we are boyfriend and girlfriend," and put his arm around Plaintiff.  2d. Am. Compl. ¶¶ 172-74.

Plaintiff suggests that she "believes" that, "as a Black woman, she likely was perceived as less

influential and a more vulnerable target for sexual harassment by Mr. Maz."  2d. Am. Compl. ¶

182.

      Plaintiff did not report any of these alleged interactions until June 19, 2020, when she

filed an internal written complaint with Amazon.  2d. Am. Compl. ¶ 54.  Plaintiff filed a

complaint with the DC Office of Human Rights ("DC OHR") "in September 2020."  2d. Am.

Compl. ¶ 305.  Plaintiff alleges she entered into tolling agreements with all defendants other than

Mr. Maz, which tolled limitations for those defendants only from December 21, 2020 through

February 24, 2021.  2d. Am. Compl. ¶ 322.  Plaintiff filed this action on March 1, 2021.  ECF

No. 1.  Plaintiff filed a charge of discrimination with the EEOC alleging Title VII violations on

March 8, 2021 and received her Notice of Right to Sue on April 12, 2021.  2d. Am. Compl. ¶¶

65-66.

## III.    Legal Standard.

      On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

12(b)(6), a complaint must be dismissed if it fails to "contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,

677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Shinabargar v.

Bd. of Trustees of Univ. of Dist. of Columbia*, 164 F. Supp. 3d 1, 13 (D.D.C. 2016).  "A claim is

facially plausible when the plaintiff pleads factual content that 'allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'"  *Shinabargar*, 164

F. Supp. 3d at 13 (quoting *Iqbal*, 556 U.S. at 678).

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 175 (D.D.C. 2012) (quoting *Iqbal*, 556 U.S. at 678). An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Iqbal*, 556 U.S. at 679.   "Absent factual matter permitting the court to infer more than the mere possibility of misconduct, the complaint must be dismissed." *Id.* (quoting *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011); *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009)) (internal quotation marks omitted).

A complaint "must offer more than labels and conclusions or formulaic recitation of the elements of a cause of action to provide grounds of entitlement to relief." *Shinabargar*, 164 F. Supp. 3d at 13 (quoting *Twombly*, 550 U.S. at 555).   As further provided in *Twombly*, "factual allegations must be enough to raise a right to relief above the speculative level."   550 U.S. at 555.   *See also Coburn v. Evercore Tr. Co., N.A.*, 844 F.3d 965, 968 (D.C. Cir. 2016); *Hinson v. Merritt Educ. Ctr.*, 521 F. Supp. 2d 22, 27 (D.D.C. 2007).   While the Court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor," conclusory allegations are not entitled to the assumption of truth.   *Sissel v. U.S. Dep't of Health & Hum. Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014); *Twombly*, 550 U.S. at 555.   Thus, the Court need not accept as true either a "legal conclusion couched as a factual allegation" or an inference drawn by the plaintiff if such inference is unsupported by the facts set out in the complaint. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations and internal quotation marks omitted). The Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference

in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).

## IV.  Analysis.

### a.  Pursuant to the Amazon Defendants' Motion to Dismiss, this action should be dismissed against Mr. Maz as well.

Defendants Amazon.com Inc., Amazon Web Services, Inc., Steven Block, and Shannon Kellogg (collectively, the "Amazon Defendants"), have argued that the Amended Complaint and Second Amended Complaint should be dismissed, including that Plaintiff's Section 1981 and DCHRA claims are time barred, are not adequately pleaded, and that the Amended and Second Complaints fail to sufficiently allege but-for causation.  Amazon Defendants' Mot. to Dismiss, ECF No. 25-1, at 11-19; Amazon Defendants' Mot. To Dismiss Second Amended Complaint, ECF 34.  Defendant Maz adopts and incorporates by reference the legal arguments therein.  In the event that motion is granted, for those same reasons, Counts Two, Four, and Five should be dismissed against Mr. Maz as well.  *See* 2 MOORE'S FEDERAL PRACTICE - CIVIL § 10.04 (2021) (noting that "courts have allowed motion papers to adopt, by reference, arguments and statements made in connection with earlier motions").[2]

### b.  Count Two of the Amended Complaint fails to state a claim of discrimination under § 1981 against Mr. Maz.

Section 1981 of the Civil Rights Act provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

---

[2] *See also, e.g.*, *Fam v. Bank of Am. NA (USA)*, 236 F. Supp. 3d 397, 404 (D.D.C. 2017) ("With regard to the plaintiff's TILA, breach of the implied covenant of good faith and fair dealing, and breach of contract claims, BANA "adopt[ed] and incorporate[d] . . . by reference the arguments offered by [Ditech]" in its motion to dismiss." (alterations in original)); *Smith v. Ogden Allied Servs.*, 842 F. Supp. 571, 571 (1994) ("Defendants Gerald D. Hines ("Hines") and Hines Consolidated Investments, Inc. ("HCI"), jointly filed a motion to dismiss, which adopts and incorporates by reference Ogden's motion for summary judgment. For the reasons explained below, both motions are granted.).

42 U.S.C.A. § 1981(a).  To state a claim for racial discrimination under Section 1981, a plaintiff

must allege: "(1) the plaintiff is a member of a racial minority; (2) the defendant intended to

discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned an

activity enumerated in Section 1981."  *Middlebrooks v. Godwin Corp.,* 722 F. Supp. 2d 82, 88

(D.D.C. 2010), *aff'd,* 424 F. App'x 10 (D.C. Cir. 2011).  The Amended Complaint fails to state a

claim against Mr. Maz for at least two reasons: 1) Plaintiff fails to show any discriminatory

animus by Mr. Maz; and 2) Plaintiff fails to show that Mr. Maz was personally involved in any

alleged discriminatory activity.

      Dismissal of a Section 1981 discrimination claim is appropriate where the plaintiff

merely asserts the defendant took actions against her on the basis of race and color without

providing any specific factual allegations that support an inference of discrimination on those

bases.  *Id.* at 88.  As the *Middlebrooks* Court made clear, to state a claim under Section 1981,

"[P]laintiff cannot merely invoke [her] race in the course of a claim's narrative and automatically

be entitled to pursue relief."  *Id.*  Rather, "[P]laintiff must allege some *facts* that demonstrate that

race was the reason for defendant's actions."  (emphasis added) (citations omitted).  *Alexander v.*

*Washington Gas Light Co.*, 481 F. Supp. 2d 16, 31 (D.D.C. 2006), *aff'd*, No. 06-7040, 2006 U.S.

App. LEXIS 22060, 2006 WL 3798858 (D.C. Cir. Aug. 24, 2006) (citing *Bray v. RHT, Inc.*, 748

F. Supp. 3, 5 (D.D.C.1990)).

      While Plaintiff asserts numerous complaints against the Amazon Defendants, she fails to

plead any facts necessary to show an entitlement to relief under Section 1981 against Mr. Maz.

As an initial matter, Plaintiff does not allege that Mr. Maz had any involvement in her hiring or

leveling.  (Nor could she because Mr. Maz's start date with Amazon was not until on or about

March 20, 2017 – months *after* Plaintiff was hired.)  Further, as to her ongoing employment,

while Plaintiff pleads she is a member of a racial minority, she does not plead any facts or make any showing that Mr. Maz harbored a discriminatory animus against her.

In fact, contrary to Plaintiff's legal conclusions, the Complaint's factual allegations make clear that Mr. Maz "lavishly prais[ed] Plaintiff and thought she was "great." 2d. Am. Compl. ¶ 134. Moreover, the only allegations related to Mr. Maz that even vaguely reference race are Plaintiff's claim that Mr. Maz "yanked" on Plaintiff's hair pulling it and laughingly stated "you can leave this behind." 2d. Am. Compl. ¶¶ 167-68. Plaintiff concludes this was a "mockery" of her "hair as a Black woman" and was upset and mortified - after which she went out to pizza and drinks with the group. 2d. Am. Compl. ¶¶ 168-70. The remaining race-related allegations relate solely to the other Defendants and *not* to Mr. Maz. Even in the light most favorable to Plaintiff, she does not sufficiently state discrimination on the basis of race. Plaintiff barely makes a threadbare reference to the elements and certainly alleges no facts displaying Mr. Maz harbored a discriminatory animus against her. At best she offers a mere conclusion, with no facts showing that Mr. Maz acted with prejudice based on race. Now, Plaintiff's Second Amended Complaint adds a vague reference to a time when Mr. Maz allegedly criticized a Black female AWS employee for "recommend[ing] an approach that differed from [Mr. Maz's] recommendations," which Plaintiff alleges that Mr. Maz did not do to White or Latina female employees. 2d. Am. Compl. ¶ 156. However, these threadbare facts about anonymous employees and Mr. Maz's alleged dispute with an employee about business recommendations do not make Plaintiff's allegations rise to the level of "*facts* that demonstrate that race was the reason for defendant's actions." *See Alexander,* 481 F. Supp. 2d at 31 (D.D.C. 2006). Under the most generous reading, Plaintiff's allegations are mere conclusions, without factual enhancement, that that do not push the claim from "possibility" to "plausibility." *Peters v. District of Columbia*, 873 F. Supp. 2d

158, 175 (D.D.C. 2012) (quoting *Iqbal*, 129 S. Ct. at 1949).  As such, Plaintiff fails to state a claim pursuant to 42 U.S.C. § 1981, and Count I should be dismissed.

Further, the complaint against Mr. Maz should be dismissed for the additional reason that Plaintiff completely failed to show that Mr. Maz was personally involved in any alleged discriminatory activity engaged in by the Amazon Defendants.  This Court has repeatedly emphasized that "[t]o establish individual liability under Section 1981, a plaintiff must demonstrate that the individual defendant was personally involved in the alleged discriminatory activity." *Telesford v. Md. Provo-I Med. Servs., P.C.*, 204 F. Supp. 3d 120, 132 (D.D.C. 2016) (citing *Brown v. Children's Nat. Med. Ctr.*, 773 F. Supp. 2d 125, 136 (D.D.C. 2011).  *See also Rae v. Children's Nat'l Med. Ctr.*, No. 15-cv-0736 (KBJ), 2020 U.S. Dist. LEXIS 242523, at *37 (D.D.C. Dec. 28, 2020) (quoting *Brown* stating "'a claim for individual liability under [s]ection 1981 requires an affirmative showing linking the individual defendant with the discriminatory action'"); *Uzoukwu v. Metro. Wash. Council of Gov'ts*, No. 11-cv-00391 (CRC), 2016 U.S. Dist. LEXIS 14850, at *4-6 (D.D.C. Feb. 8, 2016) (same).

In *Telesford*, the plaintiff alleged the individual defendant "provided resumes and performance data to Brown and recommended two PAs for the position, one white (Madsen) and one African-American (Chandon-Cooke)." *Telesford*, 204 F. Supp. 3d, at 132.  The Court concluded this was insufficient evidence of "personal involvement." *Id.*  In *Uzoukwu*, the Court cited favorably to the Seventh Circuit's decision in *Smith v. Bray*, 681 F.3d 888 (7th Cir. 2012). This Court summarized the facts, which were insufficient to display personal involvement and animus:

> In *Smith*, the Court held that the plaintiff failed to establish individual liability because, although he demonstrated that the human resources manager participated in the decision to terminate his employment, he failed to show that she was personally motivated by retaliatory animus. The human resources manager had

9

received complaints of harassment from the plaintiff without investigating them,
had occasionally refused to speak with the plaintiff, had met with the deciding
official in the lead-up to the plaintiff's termination, and had prepared the plaintiff's
termination report. *See Smith*, 681 F.3d at 893, 895, 900. Against those facts, the
Court determined that her participation in the termination decision was
sufficiently established, but that, without more evidence that her
*"personal* motives included retaliation," the plaintiff had failed to demonstrate
retaliatory animus. *Id.* at 901.

*Uzoukwu*, No. 11-cv-00391 (CRC), 2016 U.S. Dist. LEXIS 14850, at *5-6. Here, as displayed

above, there is no evidence of discriminatory animus by Mr. Maz. Moreover, there are no

allegations displaying that Mr. Maz actually participated in any decisions with respect to

Plaintiff's employment. The Complaint suggests that Mr. Block was Plaintiff's supervisor. 2d.

Am. Compl., at ¶ 60. The best Plaintiff can muster, without any factual support, is that she

believes "Mr. Kellogg relied upon Mr. Maz almost entirely for his impressions and feedback on

Ms. Newman, giving Mr. Maz substantial influence over Ms. Newman's possible promotions,

compensation, and other terms and conditions of employment." 2d. Am. Compl., at ¶ 154.

Plaintiff now amends her Complaint to add the allegation that "[u]pon information and belief, the

promotion process at Amazon is consultative and subjective, requiring an employee's

supervisors to recommend and debate the candidacy early in the year and follow up on the

candidacy once more towards the end of the year. All of Ms. Newman's supervisors (including

Mr. Maz) would have participated in this process and would have had influence over its ultimate

outcome." 2d. Am. Compl., at ¶ 250. However, again, there is no factual allegation that Mr. Maz

actually participated in any employment decisions in any way, nor that he was Plaintiff's

supervisors who reviewed her performance in a supervisory capacity. Furthermore, Plaintiff's

Second Amended Complaint makes vague reference to Mr. Maz allegedly assigning Plaintiff

projects, involving Latin America, *see* 2d. Am. Compl. ¶155, but sets forth no facts to support

the contention that this constituted a significant amount of Plaintiff's work assignments to make

Mr. Maz her supervisor. *See, e.g. Vance v. Ball State University*, 133 S. Ct. 2434 (2013). And even more critically, each of the negative comments suggested by Plaintiff were all by individuals other than Mr. Maz.  Indeed, the pleadings make clear that Mr. Maz praised Plaintiff and thought she was "great." Plaintiff alleges that Defendant Maz filled out a Forte review for Plaintiff, *see* 2d. Am. Compl. ¶155, however, Plaintiff does not allege that Defendant Maz gave her a negative review on Forte, just merely that he reviewed her. *Id.* Quite simply, there are no allegations that Mr. Maz made a negative comment or uttered a single negative word about Plaintiff in any way.

Plaintiff's failure to even make such allegations or make any factual showing are all the more telling given the way she has pleaded her claims.  Plaintiff has filed a Complaint, followed by an Amended Complaint, and now a Second Amended Complaint which contains 368 numbered paragraphs, spans 80 pages, contains at least 41 citations to websites and articles, 22 footnotes, and asserts 8 causes of action.  ECF No. 30.  Her failure to make any such allegations of factual showing against Mr. Maz speaks volumes.

Because there are no allegations that Mr. Maz harbored a discriminatory animus against Plaintiff her claim should be dismissed.  Further, because Plaintiff fails to make a sufficient factual showing that Mr. Maz actually participated in discriminatory decisions, he cannot be held personally liable under the allegations here.

    **c.    Counts Four and Five, Discrimination and Aiding and Abetting under the DCHRA, should be dismissed.**

        **i.    Discrimination.**

The DCHRA makes it illegal for an employer to discriminate based on protected characteristics, including include race, color, and sex.  D.C. Code § 2–1402.11.  A DCHRA claim must be filed in a court of competent jurisdiction or the D.C. Office of Human Rights

("DC OHR") within one year of the alleged unlawful discriminatory act. *Clay v. Howard Univ.*, 82 F. Supp. 3d 426, 434 (D.D.C. 2015) (citing D.C. Code §§ 2-1430.04, 2-1403.16(a)); *Frett v. Howard Univ.*, 24 F. Supp. 3d 76, 83 (D.D.C. 2014). The statute of limitations is tolled while the action is pending in the DC OHR. *Id. See also Frett*, 24 F. Supp. 3d at 83. Plaintiff's Amended Complaint should be dismissed because: 1) Plaintiff does not allege she named Mr. Maz as a respondent in her DC OHR charge; 2) even assuming, *arguendo*, that Mr. Maz was named as a respondent, although there is no allegation he was, the claims are barred by limitations; and 3) there is no claim that Mr. Maz actually participated in any discriminatory actions against Plaintiff.

Plaintiff merely alleges she "filed a complaint" with the DC OHR, Am. Compl. ¶ 277, but does not allege she named Mr. Maz as a respondent or that he had actual notice of her DC OHR charge. Now Plaintiff's Second Amended Complaint contains the specious allegation that because "Mr. Maz's termination was carried out around two weeks after the filing of Ms. Newman's DC OHR Complaint. Therefore, upon information and belief, it *appears likely* that Mr. Maz's termination was connected to Ms. Newman's filing of the DC OHR complaint and the allegations therein, of which Amazon would have informed Mr. Maz in connection with its findings and the termination of his employment." 2d. Am. Compl ¶ 308. (emphasis added). Plaintiff provides no support for her assumption that Amazon would have informed Mr. Maz about a DC OHR complaint filed (and in fact Mr. Maz received no such notice from Amazon). This, again, is telling because Plaintiff has now filed a Complaint, followed by an Amended Complaint, followed by a Second Amended Complaint, which is 80 pages long, contains 368 numbered paragraphs, at least 41 citations to website and articles, 22 footnotes, and asserts 8 causes of action. ECF No. 30. Its failure to make the allegation could not have been accidental.

As detailed below, Plaintiff's lengthy Second Amended Complaint is still "devoid of any facts regarding when, where, or how the non-[employer] defendants received actual notice" of claims against them in a DC OHR charge, *see Frett*, 24 F. Supp. 3d at 85, as required under the law, and therefore the claims against Mr. Maz should be dismissed.

Where an individual is not identified as a respondent in a DC OHR charge, the DCHRA claim against that person must be dismissed. *Clay*, 82 F. Supp. 3d at 434 (dismissing as time barred DCHRA claim against defendant not named as respondent in EEOC charge, cross-filed with Office of Human Rights, even though Plaintiff referenced the defendant in the body of the EEOC charge); *Frett*, 24 F. Supp. 3d at 84 (EEOC charges against employer did not toll DCHRA statute of limitations between her termination and filing of her complaint against university's former chief human resources officer, and thus DCHRA claim was time-barred). Moreover, the Court in *Clay* explained that "[i]n this District, the general rule 'is that individuals not named in the EEOC charge may not be sued in a subsequent civil action unless they have been given actual notice of the EEOC proceeding or have an identity of interest with the party or parties sued before the EEOC.'" *Clay*, 82 F. Supp. 3d at 433-34. Further, it is Plaintiff's duty to plausibly allege she named Mr. Maz and that he had actual knowledge of the DC OHR matter. *Clay*, 82 F. Supp. 3d at 434 (Plaintiff has not alleged any facts to plausibly suggest Jones had notice of her EEOC charge… ."). As this Court said in *Frett*, "Plaintiff's complaint and briefs are devoid of any facts regarding when, where, or how the non-University Howard defendants received actual notice, which means that her entire argument turns the legal proposition that Howard's knowledge of the EEOC charge can be imputed to the other defendants. Unfortunately for plaintiff, that is not the law." *Frett*, 24 F. Supp. 3d at 85. Under the circumstances, the DCHRA claim against Plaintiff should be dismissed.

Additionally, even assuming, *arguendo*, that Plaintiff did name Mr. Maz as a respondent in the DC OHR charge, although there is no allegation she did, Plaintiff's claims against Mr. Maz should be dismissed because the claim expired in September 2020.  Despite the length and wide scope of allegations in the Amended Complaint, Plaintiff only vaguely alleges she filed her DCOHR complaint in "September 2020," but she does not allege the specific date of filing or the dates she withdrew her OHR complaint.  Am. Compl. ¶ 277-78; 2d. Am. Compl. ¶ 305.

It is undisputed that Mr. Maz was not involved in the hiring or leveling of Plaintiff's employment at the time of her hiring in January 2017.  Moreover, that claim has clearly been barred for years, at least as far back as January 2018.  Similarly, Plaintiff alleges Mr. Maz grabbed the top of her thigh in January 18, 2018 so that allegation long-ago expired on January 18, 2019.  The second allegation against Mr. Maz, that he allegedly grabbed her hair on September 19, 2019, likewise appears to be barred because there is no proof that Plaintiff filed her DC OHR charge before September 19, 2020.[3]  It is only in the Second Amended Complaint that Plaintiff alleges that she filed her DC OHR Complaint on September 17, 2020, *see* 2d. Am. Compl. ¶ 67 yet provides no documentation about this crucial information relevant to the timeliness of her claims.

Finally, Plaintiff pleads no facts, and fails to make any showing, that Mr. Maz harbored a discriminatory animus against her on any basis.  In fact, the Complaint makes clear that Mr. Maz "lavishly prais[ed] Plaintiff and thought she was "great."  2d. Am. Compl. ¶ 134.  Moreover, the only allegations related to Mr. Maz that even vaguely reference race is Plaintiff's claim that Mr. Maz "yanked" on Plaintiff's hair pulling it and laughingly stated "you can leave this behind."  2d. Am. Compl. ¶¶ 167-68.  Plaintiff concludes this was a "mockery" of her "hair as a Black

---

[3] Further, as noted above, the DCHRA action should be dismissed against Mr. Maz in any event because there is no allegation he was named as a respondent in the charge.

woman" and was upset and mortified - after which she went out to pizza and drinks with the group.  2d. Am. Compl. ¶¶ 168-70.  The remaining race-related allegations relate solely to the other Defendants and *not* to Mr. Maz.  Even in the light most favorable to the Plaintiff, she does not sufficiently state a claim of discrimination on the basis of race.  Plaintiff barely makes a threadbare reference to the elements and certainly alleges no facts displaying Mr. Maz harbored a discriminatory animus against her.

Likewise, as noted above, Plaintiff makes now showing that Mr. Maz actually made any negative employment decisions in any way or ever made a negative comment about her employment.  Rather, the pleadings make clear that Mr. Maz praised Plaintiff and thought she was "great."  Quite simply, there are no allegations that Mr. Maz made a negative comment or uttered a single negative word about Plaintiff in any way.  As such, Plaintiff fails to state a claim under the DCHRA.

Because Plaintiff: 1) fails to allege that Mr. Maz was a respondent in her charge before the DC OHR; 2) the claims are barred by the statute of limitations; and 3) otherwise fail to adequately allege discrimination against Mr. Maz, Count Four of the Amended Complaint should be dismissed.

### ii.     Aiding and Abetting under the DCHRA

Under the DCHRA, it is "an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of this chapter or to attempt to do so."  D.C. Code § 2-1402.62.  First, as with Plaintiff's discrimination claim brought under the DCHRA, as discussed above, Plaintiff failed to name him as a respondent in her charge of discrimination and the claims are barred by the one-year statute of limitations.  *See supra.*  For this reason alone the claim fails.

Second, this Court has noted that a co-employee is not subject to aiding and abetting –
only a plaintiff's supervisor. *Richardson v. Petasis*, 160 F. Supp. 3d 88, 138 (D.D.C. 2015). The
Court in *Richardson* observed "that, to the Court's knowledge, the provision has never been
applied to any individual employees except for supervisors and upper management" – such as the
president, chief operating officer, controlling shareholder, director of the employing entity,
partners of a law firm, and chairman of the board. *Id.*, at 142-43 (collecting cases). The
complaint suggests that Mr. Block was Plaintiff's supervisor. Am. Compl., at ¶ 60. Plaintiff's
mere *conclusion*, without facts, that Mr. Maz *could have* influenced Mr. Kellogg's decisions,
Am. Compl., at ¶ 138, does not make Mr. Maz her supervisor.

In addition to Mr. Maz not being Plaintiff's supervisor, as discussed below, there are no
allegations that Mr. Maz actually uttered a single negative word about Plaintiff or her
employment to Mr. Kellogg or Mr. Block. This Court has summarized that aiding and abetting
under the DCHRA requires that the individual: 1) associate with the unlawful venture; 2)
participate in it as something he or she wishes to bring about; and 3) by action make it succeed:

> The leading case concerning the aiding and abetting provision is *Wallace v.
> Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873 (D.C. 1998). In *Wallace*,
> the D.C. Court of Appeals held that partners of a law firm could be held
> individually liable under the DCHRA for both direct violations of the statute as
> "employers" and for aiding and abetting the law firm's discrimination by
> "carr[ying] out the allegedly discriminatory acts." *Id.* at 888. Looking to the
> standards for aiding and abetting in the criminal context, the Court stated that
> "[a]n aider and abettor is one who 'in some sort associates himself with the
> venture, participates in it as something he wishes to bring about, and seeks by his
> action to make it succeed.'" *Id.* at 888 (quoting *Roy v. United States*, 652 A.2d
> 1098, 1104 (D.C. 1995) (internal punctuation omitted)). The Court explained that
> even if "the individual partners are not employers, and thus not principals in the
> alleged discrimination," they could be liable under the aiding and abetting
> provision if they "participated in the discrimination and sought to make it
> succeed." *Id.*

*Richardson v. Petasis*, 160 F. Supp. 3d 88, 138 (D.D.C. 2015).

16

Moreover, in addition to these fatal flaws, Plaintiff fails to allege any facts to make a plausible showing that Mr. Maz aided and abetted in Amazon's alleged discriminatory conduct. The Second Amended Complaint merely offers the *conclusion* that "Defendants Maz, Block, and Kellogg knowingly and maliciously aided and abetted the unlawful employment practices, discrimination, harassment, and retaliation against Plaintiff in violation of the DCHRA." 2d. Am. Compl. ¶ 347.  As noted above, Mr. Maz had nothing to do with Plaintiff's hiring or leveling and Plaintiff does not allege that he did.  Just as importantly, Plaintiff offers no *facts* that Mr. Maz associated with an unlawful venture, participated in it as something he wished to bring about, and by action made it succeed.  Indeed, there are no *facts* displaying that Mr. Maz actually participated in any decisions with respect to Plaintiff's employment.

The best Plaintiff can muster, without any factual support, is that she believes "Mr. Kellogg relied upon Mr. Maz almost entirely for his impressions and feedback on Ms. Newman, giving Mr. Maz substantial influence over Ms. Newman's possible promotions, compensation, and other terms and conditions of employment."  Am. Compl., at ¶ 138.  Plaintiff's Second Amended Complaint adds that this included Mr. Maz "directing [Plaintiff] to conduct or participate in presentations and perform specific tasks…" 2d. Am. Compl., at ¶ 154. However, there is no factual showing that Mr. Maz actually participated in any employment decisions in any way and certainly no allegations he made any negative comments or actually caused her to not be promoted or receive less pay. The Second Amended Complaint does not add facts sufficient to show that Mr. Maz exercised sufficient or frequent enough control over Plaintiff's work to make him her supervisor under the DCHRA.

In sum, Plaintiff's claims are barred by the one-year DCHRA statute of limitations, she fails to allege facts showing Mr. Maz was her supervisor, and she failed to make any factual

showing that Mr. Maz actually associated with an unlawful venture, participated in it as something he wished to bring about, and by action made it succeed.  Count Five of the Amended Complaint should be dismissed.

> **d.**      **Count Six, for Bias-Related Crimes, should be dismissed.**

Under District of Columbia law, a "bias-related crime" is defined under the Bias-Related Crime Act as follows:

> a designated act that demonstrates an accused's prejudice based on the actual or perceived race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibility, homelessness, physical disability, matriculation, or political affiliation of a victim of the subject designated act.

D.C. Code § 22-3701(1).  A "designated act" has been extended to apply to any criminal act recognized under D.C. law.  *Aboye v. United States*, 121 A.3d 1245, 1250 (D.C. 2015).  The Act requires but-for causation; in other words, Plaintiff must state (and ultimately prove) that Mr. Maz would not have committed the underlying criminal act but-for his prejudice against Plaintiff based on her protected characteristic.  *Lucas v. United States*, 240 A.3d 328, 340 (D.C. 2020).

The District of Columbia enacted the Bias-Related Crime Act to collect data about bias-related crimes, provide enhanced penalties for those who commit bias-related crimes, and to provide appropriate civil relief to victims of bias-related crimes.  *Uzoukwu v. Metro. Washington Council of Gov'ts*, 983 F. Supp. 2d 67, 91 (D.D.C. 2013) (citing D.C. Legis. Serv. 8-121 (Act 8-130) (1990)).  The Act was intended to "curb the proliferation" of hate crimes of all kinds, including assaultive and non-assaultive behavior.  Examples of acts that demonstrate bias or sufficient allegations of bias within the meaning of the statute include:

- "[B]urning a cross in front of a black family's home." *Aboye v. United States*, 121 A.3d 1245, 1250 (D.C. 2015);

- "[P]ainting a swastika on a synagogue."  Aboye, 121 A.3d at 1250.

- "[H]eatedly yell[ing] menacing and homophobic slurs" and "threatening to kill [victims] with his dog Tarzan." *Aboye*, 121 A.3d at 1251-52.

- During protest by Kurdish community, Defendants yelled "anti-Kurdish slurs," urged to "take them out...[or] I will take," crowd shouted additional ethnic slurs, tore up their signs, stomped on a flag, and other actions leading to two attacks on the protesters. *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 58-59 (D.D.C. 2019).

- "[U]nprovoked assault on two women," including a hit to the chest, punch to the temple, and punch to the arm accompanied by numerous homophobic slurs and obscenities displaying discriminatory animus. *Shepherd v. United States*, 905 A.2d 260, 261 (D.C. 2006).

In this context, it is obvious that Plaintiff fails to make even a remotely plausible showing that Mr. Maz harbored any discriminatory animus or prejudice against Plaintiff. Indeed, Plaintiff's allegations barely even touch the elements and are clearly devoid of factual enhancement. Plaintiff vaguely asserts that the "intentional assaults" and "sexual abuse" she claims Mr. Maz committed constitute "'bias-related crimes' and/or 'designated acts'" under the Bias-Related Crime Act. 2d. Am. Compl. ¶ 352. She further asserts, without factual support, that "[Mr.] Maz committed a 'bias-related' [sic] against Plaintiff because she is a woman and/or a Black woman, at least in part, because he has an animus towards women and/or Black persons." 2d. Am. Compl. ¶ 353. But Plaintiff offers no facts in support other than her general allegations of "sexual harassment and assault." However, allegedly touching the top of Plaintiff's thigh does not display a bias-related crime and in no way displays discriminatory animus "towards women and/or Black persons" as Plaintiff concludes. *Id.* In fact, under Plaintiff's theory any time one is accused of an assault on "women and/or Black persons," according to Plaintiff that would be a bias-related crime merely because they are "women and/or Black persons." There is no such automatic rule and it is wholly inconsistent with the statute and cases noted above.

The only other allegation that Plaintiff suggests is that Mr. Maz allegedly "yanked hard on her hair," while stating, "[y]ou can leave this behind[.]"  2d. Am. Compl. ¶¶ 167-68.  The Complaint offers only the *conclusion* that touching her hair was "an unmistakable mockery of Ms. Newman's hair as a Black woman" and "particularly offensive and mocking of a Black woman."  2d. Am. Compl. ¶¶ 168-169.  However, as noted above, this is a mere conclusion and is not a fact showing that Mr. Maz acted prejudice based on race or sex.  Under the most generous reading, Plaintiff's allegations are mere conclusions, without factual enhancement, that that do not push alleged bias from "possibility" to "plausibility."  *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 175 (D.D.C. 2012) (quoting *Iqbal*, 129 S. Ct. at 1949).  Indeed, Plaintiff's mere conclusion contrasts sharply with burning crosses in front of a black family's home, painting swastikas on a synagogue, heatedly yelling homophobic slurs and threats to kill with a dog, attacks accompanied by anti-Kurdish and ethnic slurs, and multiple unprovoked assaults on two women accompanied by numerous homophobic slurs and obscenities.

Count Six should be dismissed.

**e.      Count Seven, for Assault and Battery / Sexual Abuse, should be dismissed.**

Plaintiff's Assault and Battery claims are barred by the statute of limitations. The statute of limitations for assault and battery is one year.  D.C. Code § 12-301(4) ("Actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:…for…assault, battery…1 year").  *Chen v. Monk*, 701 F. Supp. 2d 32, 36 (D.D.C. 2010).  The statute of limitations begins to run "at the time the plaintiff's interest is invaded or at the time the tortious act is committed which causes injury." *Id.*

Plaintiff alleges that Mr. Maz "assaulted and battered [her] on multiple occasions, including acts that were sexual in nature and which constituted sexual abuse." 2d. Am. Compl. ¶ 357.  For purposes of this Motion, Defendant assumes Plaintiff is referring to the alleged incidents on January 18, 2018 and on September 19, 2019.  2d. Am. Compl. ¶¶ 133, 136-37; 166-68.  The statute of limitations began to run at the time each of these alleged tortious acts were committed.  Therefore, limitations ran on January 18, 2019 and September 19, 2020, respectively.  However, Plaintiff's Complaint was not filed until March 1, 2021 – after limitations had clearly expired.  ECF No. 1.  Therefore, Plaintiff's claims for assault and battery are barred and must be dismissed.[4]

### f.   Count Eight, for Battery Under Washington State Law, should be dismissed

The Court should dismiss Plaintiff's claims brought in this Court under Washington State law because this Court has clearly established that these claims are untimely. Because there is no independent basis for federal jurisdiction over plaintiffs' state law infringement claims, those claims are only properly before this Court based on its supplemental jurisdiction under 28 U.S.C. § 1367(a); *see also Gaudreau v. Am. Promotional Events, Inc.,* 511 F. Supp. 2d 152, 157,

---

[4] In regards to the substance of Plaintiff's allegations, Defendant Maz respectfully notes that it only on Plaintiff's third attempt did Plaintiff state facts that state a claim under D.C. law, having previously filed contradictory allegations regarding what Mr. Maz allegedly did to her. Under the D.C. Code, "Sexual act" refers to penetration or contact between the mouth and genitalia.  D.C. Code § 22-3001(8).  "Sexual contact" is defined as the "touching with any…body part or any object, either directly or through the clothing, of the ***genitalia***, anus, groin, breast, ***inner thigh***, or buttocks of any person," along with "an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  D.C. Code § 22-3001(9) (emphasis added).  Plaintiff also fails to alleged a "sexual contact."  Plaintiff fails to allege that Mr. Maz at any time touched Plaintiff's genitalia, anus, groin, breast, inner thigh, or buttocks.  Instead, Plaintiff alleges that in January 2018, Mr. Maz "put his hand under a restaurant table and press[ed] on [Plaintiff]'s lap, ***close to her genitalia***, and grab[bed] and grope[d] her ***upper thigh***." Am. Compl. ¶ 47 (emphasis added). Later in the Amended Complaint a nearly identical allegation appears, again stating Mr. Maz grabbed the "***upper thigh*** of [Plaintiff]'s right leg," "***in proximity to her genitalia.***" Am. Compl. ¶ 122. Now, in her Second Amended Complaint, and after Defendant Maz's prior Motion to Dismiss, Plaintiff now adds the new allegation that Mr. Maz also touched her "***on her inner thigh.***" 2d. Am. Compl. ¶ 47; 137. This new and material allegation has never previously been presented to the Court or to Defendant Maz by Plaintiff and her experienced counsel.

(D.D.C. 2007). The District of Columbia treats statutes of limitations as a procedural issue rather than a substantive issue. *See Canuto v. Mattis,* 273 F. Supp. 3d 127, 143 (D.D.C. 2017) *citing Gaudreau v.* 511 F. Supp. 2d. at 157; *A.I. Trade Fin. v. Petra Int'l Banking Corp*., 62 F.3d 1454, 1458 (U.S. App. D.C. 1995) ("the D.C. choice-of-law rules, we see that they treat statutes of limitations as procedural, and therefore almost always mandate application of the District's own statute of limitations."). Under D.C. law, there is a one-year statute of limitations to bring a claim for battery. *See* D.C. Code § 12-301(4); *see also Canuto v. Mattis,* 273 F. Supp. 3d. at 143. Accordingly, Plaintiff has one year from the alleged assault to file her allegations in this Court. Plaintiff's Second Amended Complaint alleges that "[o]n or around September 19, 2019, Defendant Maz intentionally touched Plaintiff's hair and body." *See* 2d. Am. Compl. ¶ 364. Accordingly, Plaintiff's deadline to file this cause of action was on or around September 19, 2020, one year from the alleged incident. However, Plaintiff first filed this cause of action in her Second Amended Complaint dated June 24, 2021, well past the clearly established statutory deadline. Therefore, Plaintiff's claims for battery under Washington State law are barred and must be dismissed.

## V.        Conclusion.

        Andres Maz respectfully requests that this Court dismiss the Amended Complaint.

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

  /s/  *MICHAL SHINNAR*
Jay P. Holland (Bar No. 422258)
Jholland@jgllaw.com
Michal Shinnar (Bar No. MD0033)
mshinnar@jgllaw.com
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770

301.220.2200 (T)
301.220.1214 (F)
*Attorneys for Andres Maz*

## REQUEST FOR HEARING

Defendant respectfully requests a hearing in this matter.

\_\_/S/ MICHAL SHINNAR_____
Michal Shinnar (Bar No. MD0033)