**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

-----------------------------------------------------------------------X

CHARLOTTE NEWMAN, :
 :
 Plaintiff, : Case No.: 21-cv-00531 (DLF)
 :
 v. :
 :
AMAZON.COM, INC., AMAZON WEB :
SERVICES, INC., ANDRES MAZ, STEVEN :
BLOCK, and SHANNON KELLOGG, in their :
individual and professional capacities, :
 :
 Defendants. :

-----------------------------------------------------------------------X


**PLAINTIFF CHARLOTTE NEWMAN'S MEMORANDUM OF LAW IN OPPOSITION
TO THE AMAZON DEFENDANTS' MOTION TO PARTIALLY DISMISS THE
<u>SECOND AMENDED COMPLAINT</u>**

**WIGDOR LLP**

Douglas H. Wigdor
Lawrence M. Pearson
John S. Crain
Alfredo J. Pelicci

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
lpearson@wigdorlaw.com
jcrain@wigdorlaw.com
apelicci@wigdorlaw.com

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND LEGAL BACKGROUND ............................................................................. 4

LEGAL STANDARD ................................................................................................................. 11

ARGUMENT ................................................................................................................................ 12

I.      PLAINTIFF'S CLAIMS UNDER TITLE VII, SECTION 1981, AND THE DCHRA
        ARE TIMELY .................................................................................................................. 12

        A.      The Lilly Ledbetter Act of 2009 Applies to Plaintiff's Title VII Claims and
                Provides a Remedy for Every Discriminatory Paycheck ...................................... 12

        B.      Ms. Newman Entered into Her Employment Contract Within the Statute of
                Limitations under Section 1981 ............................................................................ 14

        C.      Under the DCHRA, any Paycheck Paid One Year Prior to the Date of the
                Filing of the DCHRA Charge Is Preserved ........................................................... 16

        D.      Plaintiff's Section 1981, Title VII, and DCHRA Claims Also Include Other
                Timely Discriminatory Acts, in Addition to Plaintiff's Down-Leveling .............. 17

II.     PLAINTIFF ADEQUATELY PLEADS EQUAL PAY CLAIMS UNDER THE
        EQUAL PAY ACT, SECTION 1981, TITLE VII, AND THE DCHRA,
        PRESENTING MANY COMPARATORS AND REASON TO BELIEVE
        EMPLOYEES ASSISGNED TO HIGHER "LEVELS" WERE PAID MORE FOR
        THE SAME OR SIMILAR WORK ................................................................................. 18

        A.      Plaintiff's Gender-Based Equal Pay Claims Are Amply Supported .................... 24

        B.      Plaintiff's Race Discrimination Pay Claims Also Are Amply Supported ............ 25

III.    PLAINTIFF'S MANY SPECIFIC FACTUAL ALLEGATIONS REGARDING
        RACIAL ANIMUS AND DISPARATE TREATMENT, AS WELL AS OTHER
        EMPLOYEES' COMPLAINTS REGARDING SAME, AMPLY ALLEGE "BUT-
        FOR" CAUSATION IN SUPPORT OF HER SECTION 1981 CLAIMS,
        PARTICULARLY FOR PURPOSES OF A MOTION ON THE PLEADINGS ............... 25

IV.    PLAINTIFF'S AMENDED COMPLAINT AND SECOND AMENDED
       COMPLAINT ARE NOT PROCEDURALLY DEFICIENT, AND SHOULD
       REMAIN OPERABLE PLEADINGS ................................................................................28

CONCLUSION .........................................................................................................................33

# TABLE OF AUTHORITIES

## Cases

*Adetoro v. King Abdullah Acad.*
   1:19 Civ. 01918 (TNM), 2020 WL 7122858 (D.D.C. Dec. 4, 2020).......................................26

*Ali v. D.C. Gov't*,
   697 F.Supp.2d 88 ....................................................................................................................24

*Battle v. Master Sec. Co.*, LLC,
   298 F. Supp. 3d 250 (D.D.C. 2018) ........................................................................................18

*Beach TV Properties, Inc. v. Solomon*,
   254 F.Supp.3d 118 (D.D.C. 2017) ..........................................................................................31

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................................12

*Bible Way Church of Our Lord Jesus Christ of Apostolic Faith of Washington, D.C. v. Beards*,
   680 A.2d 419 (D.C. 1996) .......................................................................................................14

*Brooks v. Clinton*,
   841 F.Supp.2d 287 (D.D.C.2012) ...........................................................................................32

*Chisolm v. 7-Eleven, Inc.*,
   383 F. Supp. 3d 1032 (S.D. Cal. 2019)....................................................................................14

*Clay v. Howard Univ.*,
   128 F. Supp. 3d 22 (D.D.C. 2015) ..........................................................................................19

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
   140 S. Ct. 1009 (2020).............................................................................................................27

*Cornish v. D.C.*,
   67 F. Supp. 3d 345 (D.D.C. 2014) ..........................................................................................19

*Coward v. ADT Sec. Sys., Inc.*,
   140 F.3d 271 (D.C. Cir. 1998).........................................................................................20, 24

*Daniels v. Chugach Gov't Servs., Inc.*,
   149 F. Supp. 3d 183 (D.D.C. 2016) ..................................................................................14, 15

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005).................................................................................................................12

*E.E.O.C. v. Port Auth. of New York & New Jersey,*
   768 F.3d 247 (2d Cir. 2014) ................................................................................... 23

*Foman v. Davis*,
   371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) .................................................. 31

*George Washington Univ. v. Violand*,
   940 A.2d 965 (D.C. 2008) ...................................................................................... 19

*Gilman & Bedigian, LLC v. Sackett*,
   337 F.R.D. 113 (D. Md. 2020) ............................................................................... 28

*Greer v. Bd. of Trustees of Univ. of D.C.*,
   113 F. Supp. 3d 297 (D.D.C. 2015) ........................................................................ 23

*Greggs v. Autism Speaks, Inc.*,
   987 F. Supp. 2d 51 (D.D.C. 2014) .......................................................................... 32

*Hamilton v. D.C.*,
   852 F. Supp. 2d 139 (D.D.C. 2012) ........................................................................ 15

*Hammel v. Marsh USA Inc.*,
   206 F. Supp. 3d 219 (D.D.C. 2016) ........................................................................ 13

*Ikedilo v. Statter*,
   No. 19 Civ. 9967 (RA), 2020 WL 5849049 (S.D.N.Y. Sept. 30, 2020) ................... 26

*Johnson v. D.C.*,
   632 F. Supp. 2d 20 (D.D.C. 2009) .......................................................................... 12

*Johnson v. Fed. Exp. Corp.*,
   996 F. Supp. 2d 302 (M.D. Pa. 2014) ..................................................................... 16

*Jones v. R.R. Donnelley & Sons Co.*,
   541 U.S. 369 (2004) .......................................................................................... 15, 16

*Kargbo v. Nat'l R.R. Passenger Corp.*,
   243 F. Supp. 3d 6 (D.D.C. 2017) ............................................................................ 15

*Kilgore v. FedEx Freight*,
   458 F. Supp. 3d 973 (N.D. Ill. 2020) ...................................................................... 27

*Lenzi v. Systemax, Inc.*,
   No. 14 Civ. 7509 (SJF), 2015 WL 6507842 (E.D.N.Y. Oct. 26, 2015) ................... 19

*McCarron v. Brit. Telecom*,
  No. Civ.A. 00 Civ 6123, 2002 WL 1832843 (E.D. Pa. Aug. 7, 2002) ................................... 14

*McNair v. D.C.*,
  213 F. Supp. 3d 81 (D.D.C. 2016) ....................................................................................... 18

*Moini v. LeBlanc*,
  456 F. Supp. 3d 34 (D.D.C. 2020) ....................................................................................... 27

*Mosleh v. Howard Univ.*,
  No. 1:19 Civ. 00339 (CJN), 2020 WL 956527 (D.D.C. Feb. 27, 2020)................................. 16

*Nahum v. Spear*,
  No. 2:20 Civ. 1151 (DWC), 2021 WL 1158854 (W.D. Wash. Mar. 26, 2021) ...................... 26

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002)............................................................................................................ 13

*Neuren v. Adduci, Mastriani, Meeks & Schill*,
  43 F.3d 1507 (D.C. Cir. 1995) ............................................................................................. 19

*Nurriddin v. Goldin*,
  382 F. Supp. 2d 79 (D.D.C. 2005) ....................................................................................... 14

*Parks v. Liberty Ins. Corp.*,
  No. Civ. 8:17-0503 (HMH) .................................................................................................. 28

*Patterson v. Johnson*,
  391 F. Supp. 2d 140 (D.D.C. 2005)...................................................................................... 14

*Perez v. D.C. Dep't of Emp. Servs.*,
  305 F. Supp. 3d 51 (D.D.C. 2018) ....................................................................................... 18

*Perry v. Clinton*,
  831 F. Supp. 2d 1 (D.D.C. 2011) ................................................................................... 19, 24

*Pouncil v. Tilton*,
  704 F.3d 568 (9th Cir. 2012) ............................................................................................... 13

*Powell v. Am. Red Cross*,
  518 F. Supp. 2d 24 (D.D.C. 2007)........................................................................................ 14

*Ramirez v. Cty. of San Bernardino,*
    806 F.3d 1002 (9th Cir. 2015) ............................................... 28

*Savignac v. Jones Day,*
    486 F. Supp. 3d 14 (D.D.C. 2020) ......................................... 20

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974) ............................................................ 12

*Schuler v. United States,*
    617 F.2d 605 (D.C. Cir. 1979) ............................................... 12

*Sheppard v. Dickstein, Shapiro, Morin & Oshinsky,*
    59 F. Supp. 2d 27 (D.D.C. 1999) ..................................... 14, 15

*Skinner v. Maritz*, Inc.,
    253 F.3d 337 (8th Cir. 2001) ................................................ 15

*Sparrow v. United Air Lines, Inc.*,
    216 F.3d 1111 (D.C. Cir. 2000) ............................................. 11

*Spriggs v. Diamond Auto Glass,*
    165 F.3d 1015 (4th Cir. 1999) .............................................. 15

*Tademe v. Saint Cloud State Univ.*,
    328 F.3d 982 (8th Cir. 2003) ................................................ 20

*Wade v. Morton Bldgs*., Inc.,
    No. 09-1225, 2010 WL 378508 (C.D. Ill. Jan. 27, 2010) ........ 20

*Whitaker v. City of Hopewell, Virginia,*
    No. 3:19 Civ. 923, 2020 WL 7246593 (E.D. Va. Dec. 9, 2020) ............ 26

*Zuurbier v. Medstar Health, Inc.,*
    895 A.2d 905 (D.C. 2006) .................................................... 16

## <u>Other Authorities</u>

29 U.S.C. § 206(d) ..................................................................... 1, 19

42 U.S.C. § 1981 ..................................................................... passim

42 U.S.C. § 2000e-5(e)(3)(A) ....................................................... 12

D.C. Code § 2-1403.16 .................................................................. 1

D.C. Code § 2–1402.11(a)(1) ................................................................................................ 24

Fed. R. Civ. P. 12(b)(6)................................................................................................. 11, 12

Fed. R. Civ. P. 15 ................................................................................................... passim

Plaintiff Charlotte Newman ("Plaintiff" or "Ms. Newman") respectfully submits this memorandum of law in opposition to Defendants Amazon.com Inc., Amazon Web Services, Inc. ("AWS") (Amazon.com Inc. and AWS collectively, "Amazon" or the "Company"), Steven Block, and Shannon Kellogg's (collectively, the "Amazon Defendants") motion to partially dismiss Plaintiff's Second Amended Complaint ("SAC" or "Second Amended Complaint") under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act ("Title VII"), the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA") , and the D.C. Human Rights Act, D.C. Code § 2-1403.16 ("DCHRA").  For the reasons set forth below, Defendants' Motion should be denied in its entirety.

## PRELIMINARY STATEMENT

The Amazon Defendants' Motion shows that they are completely unwilling to grapple and engage with allegations of racial and sexual discrimination and harassment at AWS.  It is extraordinary that Amazon's Motion contains no discussion whatsoever of how a senior male employee, Defendant Andres Maz, publicly yanked down on Ms. Newman's hair and mockingly told her, a Black woman, to leave it behind with him at a work event.  Nor does their Motion deal with allegations of offensive stereotyping of Ms. Newman as a Black woman by her managers, being told that she looked "like a gorilla" by a colleague, or her manager's intimation that Washington, DC was to be avoided due to the possibility of violence by Black residents— and yet Amazon expects Plaintiff's claims of racial discrimination under Section 1981 to be dismissed.

The Motion barely discusses the various comparators presented by Ms. Newman who illustrate the Company's disparate pay and down-leveling practices, and the Motion inexcusably fails to account at all for the allegations of Mr. Maz's public sexual assault and harassment against Ms. Newman and the sexist criticism and disregard displayed toward women by her other

managers, Mr. Block (who sized up Ms. Newman's looks and forced her to disclose her age before a Congressional meeting) and Mr. Kellogg. Nor does Amazon contend with plentiful other evidence of racial animus, gender-driven stereotyping, discriminatory practices in hiring, and disparate pay and advancement in AWS's Public Policy section, where Ms. Newman worked from 2017 to 2020. Because Amazon Defendants' Motion relies almost entirely on mere assertions that Plaintiff's allegations are not inadequate, without any substantive discussion, their Motion must fail.

Ms. Newman has timely claims under all of the statutes, including with regard to the effects of her discriminatory "down-leveling" or "de-leveling" at the outset of her employment into a Level 6 position that did not match her qualifications (in keeping with how white employees were assigned) or her job role (which quickly became international in scope and, therefore, equivalent to higher Level 7 jobs, which pay more). Section 1981's statute of limitations for race discrimination claims goes back four years, which covers the start of her at-will employment in January 2017 and the parties' employment relationship when accounting for the Parties' pre-litigation tolling agreement, as acknowledged by Amazon. Plaintiff's claims under other statutes also are timely with regard to disparate pay, harassment, and other unlawful acts and cognizable damages occurring and falling within the limitations period for Title VII and the DCHRA. Amazon cannot avoid these claims merely by invoking the statute of limitations. Discovery and post-discovery motion practice and/or stipulations will determine precisely which claims fall inside and outside the lines.

Ms. Newman's disparate pay claims are supported by detailed and extensive comparator information (whose names it was not necessary for Plaintiff to publish in a high-profile public filing), as well as by her personal experiences and, importantly, complaints and confidences shared by various coworkers about racial and gender disparities and treatment in the Public

Policy group.  These concerns were so widely held that many of the Public Policy group's employees, including Ms. Newman, issued a petition in late 2019 regarding the total lack of representation of under-represented racial groups and under-representation of women in Public Policy's management, and other Public Policy employees' complaints surely exist that Amazon will only be compelled to disclose in discovery.

Amazon also makes the offensive and essentially unsupported argument that an employee cannot plead both gender and race discrimination while bringing a claim under Section 1981. The Company's advocated point of view wholly ignores the reality of discrimination against Black women and other specific people who straddle various under-represented groups, making this view pernicious and completely out of step with the law regarding employment discrimination claims, which commonly acknowledges the possibility of discrimination on more than one basis (if only in the alternative and in different instances).  Plaintiff's Second Amended Complaint also amply pleads racial animus and disparate treatment supporting "but for" causation with regard to discriminatory attitudes and actions by her managers in the Public Policy group.  These fact-intensive and no doubt disputed issues are for consideration on summary judgment and already appear to need resolution at trial.

Amazon is attempting to extricate itself from confronting the realities that its employees face day to day and have presented to the Company in various workplace complaints and in the Complaint in this case, and Amazon cannot do so without disclosing and contending with the factual record and evidence.[1]

---

[1] Nor should Court heed the Amazon Defendants' resort to claiming that Plaintiff's amended complaints were somehow procedurally improper (despite their notice of Plaintiff's intent to amend on both occasions), as the first was amended under 15(a)(2) (as stated in Plaintiff's May 11, 2021 Motion for Extension of Time to Amend the Complaint), and the second under 15(a)(1) (as stated in Plaintiff's June 17, 2021 letter to the Court).

## FACTUAL AND LEGAL BACKGROUND

Ms. Newman is a public policy expert and graduate of Harvard Business School. *See* SAC at ¶ 78. Ms. Newman's impressive career before joining Amazon included over seven years as a policy advisor to various members of Congress. *Id.* at ¶¶ 78, 85. Her experience there included over a year as a policy advisor leading financial services policy for U.S. Congressman (now Senator) Chris Murphy, a member of the House Financial Services Committee, including advising him on the mortgage crisis, financial services, small business, tax, and trade. *Id.* at ¶ 85. She later played a major role in financial services policy development for Congressman David Scott of the House Financial Services Committee, for whom she authored a reauthorization of housing legislation and whom she advised on issues regarding small business, budget, and tax issues. *Id.* After an additional year as a Senior Legislative Aide to Congressman Dan Kildee of Michigan, Ms. Newman served as an economic policy advisor to Senator Cory Booker (from 2013 to 2017), whose first bill as a Senator she authored, and whom she advised on banking policy, including joining meetings with Cabinet members and President Barack Obama. *Id.* at ¶¶ 78, 81-82.[2] In January 2017, Ms. Newman was hired and started work on the Americas Public Policy Team of Amazon Web Services as a Public Policy Manager, a Level 6 ("L6") position that is supposed to fall within a certain band of responsibility, duties, and compensation. *Id.* at ¶¶ 78, 87.

Ms. Newman's Second Amended Complaint provides many examples of racial stereotyping and racially offensive conduct by her managers and coworkers at Amazon. Amazon's discriminatory down-leveling (*i.e.*, hiring them at a level lower than their

---

[2]    Amazon deliberately mischaracterizes the Complaint's allegations and Ms. Newman's experience and qualifications when asserting that Ms. Newman's lacked the necessary work experience for a Level 7 role and that her experience "included three years working on Capitol Hill," when in reality she worked as a policy and legislative advisor for more than seven years. *See* Amazon Defendants' Motion to Dismiss brief ("MTD") at ¶ 1.

qualifications and/or job role merit), unequal pay, and failure to promote Black, non-white, and female employees occurred in an environment in which women and minorities were subject to stereotyping and a well-established pattern of unfavorable treatment compared with white and male colleagues. *See id.* at ¶¶ 107-122, 128-31, 165, 176, 183-88, 190-235, 255-91. The languishing and shabby treatment of Black employees in particular, including Ms. Newman, was not surprising given the near-total lack of Black representation at the highest level of Amazon's leadership. *Id.* at ¶¶ 270-72. Indeed, the Public Policy team did not hire any Black employees to the L7 level until December 2018 and did not hire a Black employee to the L8 (Director) level until September 21, 2020. *Id.* at ¶ 10. Various other Public Policy employees also believed that they were subject to discriminatory treatment and that management's animus and practices placed limitations on the advancement of Black and other under-represented persons in the department. Id. at ¶ 50, ¶¶ 218-22. These employees expressed their view that discrimination against minorities existed in the department in a petition issued to Public Policy's management in 2019. *Id.* at ¶¶ 230-35. Of course, without the benefit of discovery Ms. Newman has no way of knowing how many other employees also filed complaints regarding racial and/or sexual discrimination or harassment against relevant persons or in the department.

Ms. Newman faced humiliating discriminatory treatment and disregard in the AWS Public Policy unit, including being told by a coworker she looked like "a gorilla" and being singled out by her manager's assistant to pose with a wine bottle labeled "Jambalaya." *Id.* at ¶¶ 259-62. Ms. Newman's manager, Steven Block and his boss, Shannon Kellogg, repeatedly displayed discriminatory attitudes toward and in the presence of Ms. Newman, including critiquing Ms. Newman and other female and minority employees based upon stereotypes. Mr. Block often used racially charged terms to describe and criticize Ms. Newman, calling her "too direct," "aggressive," "scary," and intimidating. *Id.* at ¶¶ 200–01. On numerous occasions, Mr.

Block pointed out that Mr. Kellogg shared his feelings about her manner.  *Id.* at ¶ 203.  When

Ms. Newman told Mr. Block that she believed his comments were discriminatory and that her

prospects at the Company and in Public Policy were affected by her race and gender, Mr. Block

brushed her off by saying "I don't know about that."  *Id.* at ¶ 207.  However, Mr. Block later, in

September 2017, was forced to admit that her perception of bias at Amazon was "fair."  *Id.* at ¶

209.  At a reception in March 2017, after forcing Ms. Newman to disclose her age after she tried

to deflect several times, Mr. Block expressed great shock and made a point of saying that Ms.

Newman looked young for her age, showing that his perception of her looks as a Black woman

had colored his expectation of her age and, thus, experience level.  *Id.* at ¶ 195.

Likewise, Mr. Kellogg, who led the Public Policy team, was widely perceived by Black

employees as maintaining a workplace that systematically excluded Black people from positions

of power.  *Id.* at ¶¶ 219–21.  Mr. Kellogg, for his part, made comments demonstrating a fear of

the Black population of Washington, D.C. (*id.* at ¶ 212), singled out a Black account manager for

abuse in a way he never would against one of the white employees (*id.* at ¶ 214), discouraged a

Black woman from joining his team without offering any reasoning (*id.* at ¶ 215), and

countenanced the racist comments of another executive without taking any actions to report,

admonish, or discipline the executive.  *See id.* at ¶¶ 216.  As explained in more detail below, a

senior employee with substantial influence over Ms. Newman's employment, Andres Maz, also

mocked Ms. Newman's hair in an unmistakably racial manner while physically yanking on one

of her braids, telling her to leave her hair behind with him if she was going to go back to her

hotel room from a work outing.  *Id.* at ¶ 168.

This litany of racial animus and disadvantage affected her employment from the moment

Ms. Newman started at Amazon.  Although she had originally applied for a role advertised as a

Level 7 ("L7") position (which would pay more than an L6 role by definition), with

responsibilities involving public policy work in the financial sector of multiple countries in the Americas, her eventual supervisor, Steven Block, told her in an in-person interview that the role had been scaled back to cover the United States of America only. *Id.* at ¶¶ 92-93. Significantly, Ms. Newman was not informed that she failed to meet any of the qualifications for the Level 7 role that she sought. *Id.* at ¶ 93. Indeed, Ms. Newman met the criteria and arguably had qualifications greater than those of white and/or male employees in the Public Policy area who had been or were later hired into L7 roles. *See id.* at ¶ 91.

Ms. Newman was disappointed to learn that she would only be brought on as an L6 employee, but she had no way of knowing at the time of her hiring that this was part of a pattern of "down-leveling" at the Company that affected many other women and Black people at Amazon as well. *Id.* at ¶¶ 94-96. Though Mr. Block told her that her L6 role would be US-only and not include responsibility over international projects, Ms. Newman's role was substantially composed of international responsibilities throughout North and South America within months of her starting at Amazon. SAC at ¶¶ 96, 106, 109, 113, 114. Ms. Newman eventually learned that white men and white women who were hired at the L7 level in Public Policy had education and experience levels less than her own. *Id.* at ¶ 104 (two white men were hired to L7, both later promoted to L8, and had comparable or less experience than Ms. Newman), ¶ 117 (a higher paid white male had less education and experience than Ms. Newman), ¶ 118 (a white male was hired to L7 role at the same time as Ms. Newman was hired to an L6 role).

Once Ms. Newman had a chance to talk with her colleagues, it became clear that women and Black persons in Public Policy and elsewhere at Amazon frequently were "de-leveled" or down-leveled when they started at the Company (*i.e.*, slotted into lower levels than the one posted for the position for which they had applied and/or performed once at the Company). *See id.* at ¶¶ 218-21. Ms. Newman learned that her duties typified those performed by white

7

managers working at the levels above her, including work "devising and implementing her coverage area's strategy plan, securing meetings with relevant senior officials, managing relationships with trade associations, formulating the Company's approach to handling newly implemented regulations, serving as the Public Policy lead for the most complex projects, collaborating with other Public Policy leaders to define a global public policy direction that fit well with overall Company objectives, overseeing the planning process and delegation across teams and/or departments, initiating projects and approving proposed projects, meeting and collaborating with senior business leaders/partners on development and implementation of company strategy, providing thought leadership on strategy, and drafting and negotiating public policy documents." *Id.* at ¶ 114.[3]

Therefore, her L6 title and compensation were always mismatched to her actual work. *Id.* at ¶ 241. Ultimately, Ms. Newman learned that four men performing these exact duties received better pay than her, either at the same level or because they were hired at a higher level. *Id.* at ¶ 116 (a man with less work experience, hired at L7, later promoted to L8), ¶ 117 (a man with less work experience and education, including weaker public policy experience, paid more than Ms. Newman to perform the same work), ¶ 118 (a man with less work experience and without a graduate degree, hired at L7), ¶ 119 (a man with less work experience and significantly narrower work remit, hired at L7). She also learned that two white females with less experience, without graduate degrees, and with narrower work remits, were awarded L7 positions. *Id.* at ¶ 121. As these pay and ranking inequities became clear to her, Ms. Newman began to request that

---

[3]     These allegations closely mirror Amazon's own description of the L7 Role. *See* Motion to Dismiss, Ex. A. For instance, that document says that the L7 position will "[f]acilitate high-level meetings between AWS executives and key stakeholders, including federal policy makers, regulators, industry associations, and international government decision makers to promote and advocate the company's public policy policies; will "[l]everage appropriate corporate membership opportunities in industry associations and policy organizations on behalf of AWS; and will "develop enhancement or mitigation strategies and policy positions," in pertinent part and amongst others. *See id.*

she receive pay commensurate with the work she was doing, including by being promoted to being an L7 employee.  *Id.* at ¶¶ 252.  Ms. Newman finally received a promotion to an L7 Senior Manager position in October 2019, well over two years after she started doing work at that Level.  *Id.* at ¶¶ 252–253.  Ms. Newman has suffered tremendous damages as a result of her down-leveling at hire and Amazon's failure to pay her at the same level as her white and male colleagues doing the same or similar work.  Ms. Newman's career at Amazon has not recovered from her initial de-leveling, she lost a tremendous amount of compensation in the meantime (particularly in valuable Amazon stock units), and her compensation trajectory at the Company is permanently stunted by her belated promotion to an L7 job in late 2019.  *Id.* at ¶¶ 236, 252–54.

Because of the racial and gender animus of and stereotyping by her supervisors (as detailed above), Ms. Newman was passed over for several promotions while witnessing Amazon place less or similarly qualified white and/or male employees on a faster track for promotion, a practice that affected numerous Black and/or female employees.  *Id.* at ¶¶ 4, 7-8, 40, 50, 52, 108, 156, 221, 235, 248, 255-56.  In 2019, Ms. Newman was passed over in favor of a less-experienced white male for a Public Policy role managing regulated industries.  *Id.* at ¶¶ 246-48. Two white female employees who were hired after Ms. Newman at the L6 level rapidly moved up to L7, despite their lesser qualifications and roles.  *Id.* at ¶ 108.  One of these white female employees was promoted to L8 within the last year.  *Id.* at ¶ 108.

Andres Maz, another one of Ms. Newman's supervisors (*id.* at ¶¶ 155, 250), began to sexually harass Ms. Newman in 2017, soon after her hiring.  *Id.* at ¶ 126.  In October 2017, while the two were having dinner during a business trip, Mr. Maz looked Ms. Newman in the eyes and called her "beautiful."  *Id.*  A few months later, January 17, 2018, Mr. Maz sexually assaulted Ms. Newman, moving next to her during a dinner and groping her lap and thighs under the table without warning or consent, causing her to flee to the bathroom in tears.  *Id.* at ¶¶ 136–37.

9

Horrifyingly, while she waited for a car after dinner, Mr. Maz badgered her to have sex with him. *Id.* at ¶¶ 141–45.  In September 2019, as Ms. Newman tried to leave a work event, Mr. Maz yanked hard on her hair and told her "You can leave this behind," unmistakably mocking her hair as a Black woman. *Id.* at ¶ 168.  Later that night, Mr. Maz locked arms with Ms. Newman (again without warning or consent) and suggestively said to her, "Let's pretend we're boyfriend and girlfriend. *Id.* at ¶¶ 172–73.  Later, he repeatedly put his arm around her as she tried to avoid him. *Id.* at ¶ 174.  The inaction of Ms. Newman's coworkers, who witnessed the September 2019 harassment, underlined that Ms. Newman, as a Black woman, was particularly vulnerable to Mr. Maz in the Public Policy group, as she clearly was less influential and subject to heightened skepticism by its top managers, Block and Kellogg. *Id.* at ¶¶ 182–84.

On June 19, 2020, Ms. Newman filed a written complaint with Human Resources ("HR") Director Jim Sterner regarding Mr. Maz's harassment and other discriminatory treatment, including by Mr. Block with regard to his racially charged stereotyping and perception of Ms. Newman. *Id.* at ¶ 296.  Though an investigation found that Mr. Block had made racially stereotypical comments, Amazon took no action against him. *Id.* at ¶ 300.  In spite of her specific request to HR that she be shielded from contact with Mr. Maz, Amazon did not take steps to ensure that she would not have to see or communicate with Mr. Maz during the summer of 2020. *Id.* at ¶¶ 302–03.  Ms. Newman was continually unable to avoid Mr. Maz at work, and Mr. Maz was assigning her work through at least April 2020, which forced her to continue interacting with him into the fall of 2020. *Id*. ¶¶ 252, 303.  Ms. Newman filed a complaint with the Washington, DC Office of Human Rights on September 17, 2020. *Id.* at ¶ 305.  Several weeks later, Amazon terminated Mr. Maz. *Id.* at ¶¶ 307–08.  However, Amazon soon gave Mr. Block a more lucrative role, despite promises to investigate his conduct. *Id.* at ¶¶ 55, 310.  In late 2020, Ms. Newman found a role in another group outside of Public Policy as Head of

Underrepresented Founder Startup Business Development that would get her away from Mr.

Block, Mr. Maz, and Mr. Kellogg, without any assistance from Amazon HR. *Id.* at ¶¶ 316–17.

On March 1, 2021, Ms. Newman filed her original Complaint before this Court. Dkt. No.

1. On March 8, 2021, she filed a complaint with the Washington D.C. Field Office of the Equal

Employment Opportunity Commission ("EEOC"), and, on April 12, 2021, the EEOC, issued a

Right to Sue letter. On April 29, 2021, the Court granted Mr. Maz until June 10, 2021 to respond

to the Complaint. On May 3, 2021, Amazon filed its first Motion to Partially Dismiss the

Complaint. In order to obviate the need to file multiple Amendments to her Complaint, Ms.

Newman moved the Court for "an extension of time to file an amended complaint or otherwise

respond to the Amazon Defendants' motion to partially dismiss," pursuant to Fed. R. Civ. P.

15(a)(2), until June 24, 2021. Via Minute Order dated May 12, 2021, the Court granted the

Motion in part by giving Ms. Newman until May 26, 2021 "to respond to the defendants' Motion

to Partially Dismiss the Complaint." In response to Amazon's Motion and in compliance with

the Court's order, Ms. Newman filed her Amended Complaint pursuant to Fed. R. Civ. P.

15(a)(2) on May 26, 2021. Amazon thereafter moved to dismiss the Amended Complaint on

June 9, 2021, and Andres Maz filed his first Motion to Dismiss on June 10, 2021. In response,

Ms. Newman filed a Second Amended Complaint on June 24, 2021 pursuant to Fed. R. Civ. P.

15(a)(1). On July 8, 2021, Amazon filed the instant Motion to Partially Dismiss the Second

Amended Complaint. ("SAC").

## **LEGAL STANDARD**

Fed. R. Civ. P. 12(b)(6) permits a Court to dismiss any count of a complaint that fails "to

state a claim upon which relief can be granted." In evaluating a motion to dismiss, the Court

"must treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all

inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216

F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir.

1979)) (citation omitted).  Rule 12(b)(6)'s pleading standard is "not meant to impose a great

burden upon a plaintiff," *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005), as a count will

survive so long as there is a "'reasonably founded hope that the [discovery] process will reveal

relevant evidence' to support the claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8

(2007) (quoting *Dura Pharm.*, 544 U.S. at 347).  A complaint may survive even if "'recovery is

very remote and unlikely'" or the veracity of the claims are "doubtful in fact," so long as the

factual matter alleged in the complaint is "enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555-56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ARGUMENT

## I.   PLAINTIFF'S CLAIMS UNDER TITLE VII, SECTION 1981, AND THE DCHRA ARE TIMELY

### A.   The Lilly Ledbetter Act of 2009 Applies to Plaintiff's Title VII Claims and Provides a Remedy for Every Discriminatory Paycheck

As a threshold matter, Amazon's argument that the discriminatory decision to underpay

Ms. Newman occurred in 2016 need not be given any deference by the Court, as Ms. Newman

did not begin working at Amazon and, therefore, was not "hired" for these purposes until

January 2017.  In addition, Amazon's arguments glaringly ignore the Lily Ledbetter Act of 2009

("LLA") and its application in this situation.  Under the LLA:

> an unlawful employment practice occurs, with respect to discrimination in compensation . . . when a discriminatory compensation decision or other practice is adopted . . .  or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A).  "In other words, each paycheck resulting from the original

'discriminatory compensation decision or other practice' triggers a new filing period, in effect

reviving a claim that otherwise would have been time-barred." *Johnson v. D.C.*, 632 F. Supp. 2d

20, 22 (D.D.C. 2009); *accord Hammel v. Marsh USA Inc.*, 206 F. Supp. 3d 219, 231 (D.D.C. 2016) (applying the LLA to a Title VII disparate pay claim).

Because the Second Amended Complaint alleges pay discrimination based upon Ms. Newman's de-leveling and because Ms. Newman felt the effects of the de-leveling decision during the limitations period for Title VII, the LLA applies and Ms. Newman's compensation-related claims in connection with her down-leveling are actionable during the full period covered by the Second Amended Complaint. The Second Amended Complaint's allegations regarding pay discrimination cover Ms. Newman's down-leveling at hire because that practice, which was used disproportionately and discriminatorily toward non-white employees (as observed by other employees in addition to Ms. Newman, *see* SAC at ¶¶ 50, 218-22, 230-35), impacted Ms. Newman's compensation on a continuing basis, each time she was paid. *Hammel*, 206 F. Supp. 3d at 231. The SAC further alleges pay discrimination because it details that, Ms. Newman performed tasks requiring the same skill, effort, and responsibility and entailing the same working conditions as white male and white female employees who received greater compensation. SAC at ¶¶ 109-22.[4]

Amazon's argument, however, focuses on a primary proposition: Ms. Newman's hiring was a discrete act that fell outside of the statute of limitations. *See* Third Motion to Dismiss Memorandum of Law ("MTD") at ¶ 12. Amazon cites *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), which held that hiring discrimination occurring before the limitations period could not be connected to acts within the period. However, Amazon's argument fails to acknowledge *Morgan's* abrogation, in part, by the LLA. *See Pouncil v. Tilton*, 704 F.3d 568, 579–80 (9th Cir. 2012) (explaining that the LLA abrogated the "discrete acts" doctrine as applied to compensation discrimination). Therefore, at a minimum, the discriminatory effects of Ms.

---

[4]     Plaintiff's unequal pay discrimination claims are discussed in greater detail below.

Newman's down-leveling on her compensation and career were constantly renewed and fall

within any applicable statute of limitations period under Title VII.

Therefore, the additional cases cited by the Amazon Defendants are inapposite, as none

of them concern allegations of *unequal pay* discrimination.  *See Chisolm v. 7-Eleven, Inc.*, 383 F.

Supp. 3d 1032, 1060–61 (S.D. Cal. 2019), *aff'd*, 814 F. App'x 194 (9th Cir. 2020) (analyzing a

failure to hire under California law); *McCarron v. Brit. Telecom*, No. Civ.A. 00 Civ. 6123, 2002

WL 1832843, at *10 (E.D. Pa. Aug. 7, 2002) (analyzing a transfer that reduced plaintiff's work

opportunities); *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 93 (D.D.C. 2005) (claims were simply

never filed with the EEOC); *Patterson v. Johnson*, 391 F. Supp. 2d 140, 146 (D.D.C. 2005),

*aff'd*, 505 F.3d 1296 (D.C. Cir. 2007) (analyzing the rescheduling of a meeting and denying

plaintiff several promotions); *Powell v. Am. Red Cross*, 518 F. Supp. 2d 24, 32 (D.D.C. 2007)

(analyzing the discrete act of refusing to increase pay).[5]

## B.   Ms. Newman Entered into Her Employment Contract Within the Statute of Limitations under Section 1981

Amazon also argues that the decision to down-level, and thus underpay, Ms. Newman

falls outside of the statute of limitations under 42 U.S.C. § 1981.  Under Section 1981, a four-

year statute of limitations applies to claims regarding the "making and enforcing of contracts."

*Daniels v. Chugach Gov't Servs., Inc.*, 149 F. Supp. 3d 183, 188 (D.D.C. 2016).  Under District

of Columbia law, the formation of an at-will employment relationship is an actionable "making"

of a contract under 42 U.S.C. § 1981.  *See Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*,

59 F. Supp. 2d 27, 32 (D.D.C. 1999).[6]  42 U.S.C. § 1981's more expansive definition of "making

and enforcing contracts" that includes the making, performance, modification, and termination of

---

[5]    With the exception of *Chisolm*, which did not concern a Title VII claim, all of these cases predate the LLA.

[6]    The contract here is presumed "at will."  *See Bible Way Church of Our Lord Jesus Christ of Apostolic Faith of Washington, D.C. v. Beards*, 680 A.2d 419, 433 (D.C. 1996).

contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship results from Congress's enactment of the Civil Rights Act of 1991.  *Id.* at 31; *cf Kargbo v. Nat'l R.R. Passenger Corp.*, 243 F. Supp. 3d 6, 11 (D.D.C. 2017) (involving a failure to hire, rather than the terms and conditions of at will employment or pay discrimination). Where a cause of action arises under the amendment to § 1981 contained in the Civil Rights Act of 1991, it is governed by the federal catch-all four-year statute of limitations period for claims arising under an Act of Congress enacted after December 1, 1990.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 374 (2004); *Daniels v. Chugach Gov't Servs., Inc.,* 149 F. Supp. 3d 183, 188 (D.D.C. 2016); *Hamilton v. D.C.*, 852 F. Supp. 2d 139, 144 (D.D.C. 2012).

Further, an *at-will* employment contract begins when an employee "accepts" an offer of employment by beginning to perform the work for which the employer offered to pay the employee.  *Skinner v. Maritz*, Inc., 253 F.3d 337, 340 (8th Cir. 2001) ("[Employer] offered, either implicitly or explicitly, to pay [plaintiff] for performance of services. [Plaintiff] accepted that offer by performance."); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999) ("[Plaintiff's] performance of the assigned job duties was consideration exchanged for [employer's] promise to pay. The parties' actions thus created a contractual relationship.").  One can easily imagine that no employer in the country would consider itself to have an employment "contract" with an at-will employee unless or until that person started working for the company.

Ms. Newman began her at-will employment with Amazon in early January 2017.  SAC at ¶ 87.  Amazon's arguments notwithstanding, *see* MTD at p.13 n. 8, there is no legal basis for measuring the existence of the employment relationship from the time she was *offered* employment, rather than when she actually entered into the employment relationship in January 2017, and thus *entered* into a contract under Section 1981.  Ms. Newman's early January 2017 claims thus would have been limited to the period ending in early January 2021, by which time a

tolling agreement between the parties was in place, with enough time remaining in the original limitations period to carry the statute of limitations for filing her Complaint well past the March 1, 2021 date of the Complaint's filing.  Specifically, the Amazon Defendants point out that the tolling agreement was in effect for no fewer than 66 days, which puts the filing date well within the extended SOL period.  Motion to Dismiss at p. 13 n. 8.  Therefore, Ms. Newman's hiring is covered by the applicable statute of limitations under section 1981.

In addition, discriminatory conduct occurring after the formation of an employment relationship can still serve as a basis for Section 1981 claims even when the employment contract was formed prior to the statute of limitations period.  *See Jones* 541 U.S. at 383; *Johnson v. Fed. Exp. Corp.*, 996 F. Supp. 2d 302, 326 (M.D. Pa. 2014), *aff'd*, 604 F. App'x 183 (3d Cir. 2015).  Ms. Newman certainly felt the effects of Amazon's discriminatory pay decisions within the Section 1981 statute of limitations, even if that period began in late 2016 when she was only offered but had not begun employment.  Therefore, even if the Court considers Amazon's offer (and/or Plaintiff telling them she would come to work for Amazon) to constitute the parties entering into a contractual employment relationship, this Court should not dismiss Plaintiff's Section 1981 claims pertaining to the Amazon Defendants' discriminatory hiring decision or compensation.

### C.    Under the DCHRA, any Paycheck Paid One Year Prior to the Date of the Filing of the DCHRA Charge Is Preserved

In any case, all discriminatorily smaller paychecks within one-year of the filing of Ms. Newman's DCHRA complaint are actionable.  *Mosleh v. Howard Univ.*, No. 1:19 Civ. 00339 (CJN), 2020 WL 956527, at *3 (D.D.C. Feb. 27, 2020) ("More importantly, the D.C. Court of Appeals has held that in a disparate-pay case, each allegedly smaller paycheck is its own actionable event under the DCHRA, triggering the running of its own statute of limitations.") (citing *Zuurbier v. Medstar Health, Inc.,* 895 A.2d 905, 910–14 (D.C. 2006)).  Therefore, the law

preserves a cause of action for every paycheck within one year of the DCHRA claim filing date in September 2020.  SAC at ¶ 305.

### D.   Plaintiff's Section 1981, Title VII, and DCHRA Claims Also Include Other Timely Discriminatory Acts, in Addition to Plaintiff's Down-Leveling

The Amazon Defendants' Motion is limited to "(1) Plaintiff's de-leveling claims under Section 1981, Title VII, and DCHRA (2) Plaintiff's equal pay claims [under the same statutes] and (3) the entirety of Plaintiff's Section 1981 claims."  MTD p. 20.  The statute of limitations arguments made by Amazon, however, only pertain to the first category of claims that they seek to dismiss.  Therefore, a host of other allegations and claims under Section 1981, Title VII, and the DCHRA will proceed to discovery, including those for sexual and racial harassment, hostile work environment, disparate pay, and failure to promote.[7]

Even if a three-year statute of limitations applied to the instant claims under 42 U.S.C. § 1981, all discrimination going back to the end of December 2017 would be actionable, as three years from filing would go back to March 1, 2018, plus approximately two months due to the tolling agreement.  This period includes the significant race-based harassment Ms. Newman experienced and witnessed during this period (SAC at ¶¶ 136–37, 141–45, 172–74, 182–84, 195, 200–01, 203, 209, 219–21, 259, 262-64), as well as the promotions for which she was passed over for on the basis of her race.  *Id*. at ¶¶ 108, 246-48.

---

[7] Plaintiff opposes the Amazon Defendants' request for a stay of discovery while this Motion is pending.  The Amazon Defendants' Motion is limited in scope, and many claims will be proceeding to discovery.  Whether or not the period immediately surrounding the beginning of Plaintiff's employment is found to give rise to actionable claims (and it should, even if she is found to have somehow "formed a contract" with Amazon in late 2016), the events of her hiring and the beginning of her employment as well as the Defendants' practices at the time, will still be squarely relevant in the case and subject to discovery.

II.   **PLAINTIFF ADEQUATELY PLEADS EQUAL PAY CLAIMS UNDER THE EQUAL PAY ACT, SECTION 1981, TITLE VII, AND THE DCHRA, PRESENTING MANY COMPARATORS AND REASON TO BELIEVE EMPLOYEES ASSIGNED TO HIGHER "LEVELS" WERE PAID MORE FOR <u>THE SAME OR SIMILAR WORK</u>**

A.   **Plaintiff's Gender-Based Equal Pay Claims Are Amply Supported**

As an initial matter, Amazon demonstrates great cynicism in arguing that "allegations that both male *and* female employees were paid more than [Ms. Newman] necessarily defeat her unequal pay claims on the basis of gender." MTD at p. 15. Amazon's position would enable any organization that elevates a woman to a supervisory rank to wholly insulate itself from gender discrimination equal pay claims. This plainly know is not the case under the law or based upon common sense. Whether female coworkers were paid more than Ms. Newman has nothing to do with the fact that her male comparators consistently were placed in positions at levels where they were paid more for doing equivalent or substantially similar work to that of Ms. Newman, despite her being equally or more qualified.

The few cases relied upon by Amazon do not support their sweeping assertion. *See Battle v. Master Sec. Co.*, LLC, 298 F. Supp. 3d 250, 254 (D.D.C. 2018) (dismissing the allegations of a man who did not even attempt to state a gender-discrimination claim); *McNair v. D.C.*, 213 F. Supp. 3d 81, 88 (D.D.C. 2016) (dismissing claim of a plaintiff that failed to allege any comparator of the opposite sex); *see also Perez v. D.C. Dep't of Emp. Servs.*, 305 F. Supp. 3d 51, 56–57 (D.D.C. 2018) (dismissing an EPA claim where plaintiff failed to mention any gender discrimination in her complaint). Ms. Newman marshals ample factual allegations to state a claim for discriminatory pay on the basis of gender under the EPA, Title VII, and the DCHRA, as well as race and color under Section 1981, Title VII, and the DCHRA.

First, the Equal Pay Act bars employers from discriminating "on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees

of the opposite sex… for equal work." 29 U.S.C. § 206(d)(1).  To state a claim under the EPA,

Ms. Newman "must allege that (1) she was doing substantially equal work on the job, the

performance of which required substantially equal skill, effort, and responsibility as the jobs held

by members of the opposite sex; (2) the job was performed under similar working conditions;

and (3) she was paid at a lower wage than those members of the opposite sex." *Cornish v. D.C.*,

67 F. Supp. 3d 345, 360 (D.D.C. 2014).  The same analysis applies to unequal pay claims the

DCHRA.  *See George Washington Univ. v. Violand*, 940 A.2d 965, 979–80 (D.C. 2008).  For a

*prima facie* case of wage discrimination under Title VII, a plaintiff must show membership in a

protected class and that she was performing work substantially equal to employees outside of her

protected class who were compensated at higher rates than she was.  *Perry v. Clinton*, 831 F.

Supp. 2d 1, 13 (D.D.C. 2011).

A complaint of discriminatory pay cannot be lightly dismissed on the pleadings.

Identifying even one comparator who worked a job requiring substantially equal skill, effort, and

responsibility suffices to state a claim.  *See, e.g., Clay v. Howard Univ.*, 128 F. Supp. 3d 22, 31

(D.D.C. 2015) (denying dismissal of a complaint that presented one relevant comparator and

stated that "other similarly situated males at Howard University also received more pay for the

substantially similar work as [plaintiff].");  *Lenzi v. Systemax, Inc.*, No. 14 Civ. 7509 (SJF), 2015

WL 6507842, at *4 (E.D.N.Y. Oct. 26, 2015) (denying motion to dismiss EPA claims where

plaintiff provided five comparators and described their duties, even though the comparators all

had different titles than plaintiff).[8]

To the extent that Amazon Defendants argue that Ms. Newman fails to identify

comparators because she does not include the specific names of comparators, their argument

---

[8]     "Substantially equal" should be distinguished from the "nearly identical" standard for a disparate treatment claim.  Amazon's citation to *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) is thus inapposite (not to mention a far cry procedurally from the instant motion, as *Neuren* involved Circuit review of evidence admitted at trial, rather than a motion to dismiss or even a motion for summary judgment).

lacks support and is contradicted by complaints that do not "name" comparators routinely being held as sufficiently stating EPA claims as well as caselaw directly addressing this issue. *Savignac v. Jones Day*, 486 F. Supp. 3d 14, 31 (D.D.C. 2020), on reconsideration in part *sub nom. Savignac v. Day*, No. Civ. 19-2443 (RDM), 2021 WL 1700193 (D.D.C. Apr. 28, 2021) (complaint that did not provide the specific names of comparators sufficiently identified comparators through alleging a discrete and focused group of comparators by including allegations that female plaintiff was paid less than male associates of the same level who worked in her practice group during a time frame); *Wade v. Morton Bldgs*., Inc., No. 09-1225, 2010 WL 378508, at *6 (C.D. Ill. Jan. 27, 2010) (holding that plaintiff failed to state an EPA claim where the plaintiff gave "no hint of the identity of the comparable male employee or his position" and noting that allegations providing "what position that employee held, during what period of time, and, generally (to Plaintiff's knowledge), what that employee's responsibilities were as compared to hers" is sufficient to properly identify a comparator).

In pay discrimination cases, whether two employees were "similarly situated" requires a factfinder to determine "whether [two] jobs generally involve similar tasks, require similar skill, effort, and responsibility, working conditions, and are similarly complex or difficult."  U.S. Equal Employment Opportunity Commission, Section 10 Compensation Discrimination n. 18 and accompanying text (2000) (citing federal cases); *accord Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 989 (8th Cir. 2003) ("Determining whether two jobs require equal skill, effort, or responsibility requires a practical judgment of all relevant facts and circumstances.").  Because the inquiry requires an analysis of all of the relevant facts and circumstances, the titles assigned by an employer are not dispositive.  *See Coward v. ADT Sec. Sys., Inc.*, 140 F.3d 271, 275 (D.C. Cir. 1998).  Therefore, Amazon's assignment of employees to various "Levels" has no bearing on whether, ultimately, employees may be found to have substantially equal jobs.

Ms. Newman states a claim that she received less pay than male colleagues for work of substantially equal skill, effort, and responsibility, performed under similar working conditions. Contrary to Amazon Defendants' representation that Plaintiff "continues to fail to identify even a single alleged 'comparator'" (MTD at p. 15), Ms. Newman alleges that *four* specific male colleagues received higher compensation for performing work that required substantially equal skill, effort, and responsibility to Ms. Newman under the same working conditions.  SAC at ¶¶ 113-19.  Ms. Newman's allegations easily amount to identifying a discreet group of comparators through, among other things, providing thorough descriptions of the comparators' roles and duties; noting that they were all on her same Public Policy team; indicating the periods for which they were compensated at a higher rate while performing substantially similar work; describing, with specific examples, exactly how the comparators' educational and professional backgrounds resulted in the comparators being less or equally qualified than Ms. Newman is; and, for some, providing their employment "level," specific supervisor, topic area of coverage, and exact year of hire.  *Id.* ¶¶ 113-19.

- A male comparator who was on the same team as Ms. Newman with comparable or less work experience and educational qualifications who performed substantially equal work as Ms. Newman while being compensated at a higher level throughout Ms. Newman's time on the Public Policy team. [9]  SAC at ¶ 116. Ms. Newman specifically noted this comparators job level (L7) and provided her basis for alleging why he received higher compensation (his compensation increased at a faster rate, and he received a greater amount of equity).[10]  *Id.* at ¶ 116.

- A second male comparator who reported to the same supervisor as Ms. Newman who had less work experience and lower educational qualifications yet was awarded greater compensation throughout Ms. Newman's time on the Public Policy team for performing a role that entailed "nearly identical" essential functions as Ms. Newman's role.  *Id.* at ¶ 117.

---

[9]    Ms. Newman joined Amazon's Public Policy team at the start of her employment in January 2017 and left the team in November 2020.  SAC at ¶¶ 87, 317.

[10]    Along with including allegations that specific comparators received higher compensation, Ms. Newman's Second Amended Complaint contains several allegations that all Level 7 comparators, by virtue of officially being deemed a L7 employee, received greater compensation.  *Id.* at ¶¶ 34, 106, 113, 254. Ms. Newman supports her position by alleging specific differentials in the amount of compensation between L6 and L7 roles.  *Id.* at ¶ 254

- A third male comparator who was on the same team and that was hired in 2017 (the same year as Ms. Newman) who had less work experience and educational qualifications but was awarded higher compensation for performing the same policy functions as Ms. Newman throughout Ms. Newman's time on the Public Policy team.  In fact, Plaintiff alleges that this employee's role is arguably narrower and entails less responsibility.  *Id*. at ¶ 118.

- A fourth male comparator who joined the Public Policy team after Ms. Newman and had less work experience also was awarded higher compensation for performing the same policy functions as Ms. Newman throughout Ms. Newman's time on the Public Policy team.  Once again, Ms. Newman alleges that this comparator's responsibilities were arguably narrower and had less broad of an impact, with a specific cite to his coverage area (U.S. postal policy).  *Id*. at ¶ 119.  Ms. Newman, by contrast, covered the much broader field of financial services covered the United States, Canada, and Latin America.  *Id*. at ¶¶ 72, 100, 119.

With respect to all four comparators above, Ms. Newman's SAC provided an extensive list of functions that she had in common with the comparators that demonstrate that Ms. Newman was performing a work substantially equal in skill, effort, and responsibility.  *Id.* at ¶ 114.  These exhaustive allegations more than suffice to state factual gender-discriminatory pay claims and track with the type of language contained in Amazon's own job descriptions (such as the one attached as Exhibit A to the Amazon Defendants' Declaration; *Id*. at ¶ 114).

Plaintiff's equal pay claims are supported by a detailed and extensive group of white and/or male comparators drawn from the same Public Policy group Plaintiff worked in and are further supported by many examples of animus toward, marginalization and lack of advancement for Black employees and women.  These are not "generalized, conclusory allegations," as Amazon contends.  Instead, the Amazon Defendants appear to believe that it is sufficient to speculate regarding the nature or purpose of the comparators included in the SAC, even speculating, inaccurately and without any factual basis, that two of the individual Defendants, Mr. Block and Mr. Maz, are among the comparators.  MTD at p. 24.  Some of the individuals were included in the SAC to illustrate that persons working as L6 employees were far less-qualified and has

narrower roles and responsibilities than Ms. Newman, whereas Ms. Newman's role and qualifications while working and being paid as an L6 were far more in line with (and even beyond) those of colleagues designated and being paid as L7 employees.

The EPA does not require an academic biography of every comparator at the pleadings stage, as acknowledged by Amazon's own authority. *See Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 310–11 (D.D.C. 2015) (dismissing complaint because plaintiff failed to describe any basic details about the relevant roles, but with the caveat that "the court does not hold here that substantial factual details are necessary for an employment discrimination complaint to survive a motion to dismiss."); *see also E.E.O.C. v. Port Auth. of New York & New Jersey,* 768 F.3d 247, 258–59 (2d Cir. 2014) *(*granting motion to dismiss an EPA claim, in large part because the Equal Employment Opportunity Commission had not been able to provide non-conclusory allegations after three years of investigation, making it unlikely that discovery would yield any additional evidence).

Amazon's characterization of the responsibilities described by Ms. Newman as "broad descriptors" (MTD at p. 17) falls far short of a basis for dismissal. The descriptions of the comparators' roles and duties reflect that the exact differences between white-collar consulting/analysis roles can be difficult to distinguish (again, Amazon's own job posting document illustrates this). The individuals singled out as comparators are not Ms. Newman's supervisors and were located in her function and equivalent roles. Amazon quotes only half sentences to downplay the allegations' specificity and meaning. For example, they quote the phrase "securing meetings" when in fact the item is "securing meetings with relevant senior officials," and similarly they quote the responsibility of "managing relationships," when in fact the SAC specifies that a shared responsibility between Ms. Newman and her higher paid comparators was "managing relationships with trade associations." MTD at p. 23; SAC at ¶ 114. The SAC's

allegations are solidly descriptive and fully merit credence at the pleadings stage.  For the reasons

above, Ms. Newman has alleged cognizable gender-based equal pay claims under the EPA, Title

VII, and the DCHRA.

### B.    Plaintiff's Race Discrimination Pay Claims Also Are Amply Supported

The Title VII standard for wage discrimination claims based on race is the same as the

standard set forth above for gender.  *Perry*, 831 F. Supp. 2d at n.7.  The DCHRA, like Title VII,

prohibits certain discriminatory practices "[b]y an employer," making it unlawful for an

employer to "discriminate against any individual, with respect to his compensation, terms,

conditions, or privileges of employment" based upon several protected categories including,

*inter alia*, an individual's race or color.  D.C. Code § 2–1402.11(a)(1).  Federal case law

addressing questions arising in Title VII cases is applicable to the resolution of analogous issues

raised regarding DCHRA claims.  *Ali v. D.C. Gov't*, 697 F.Supp.2d 88, 92 n. 6 (D.D.C.2010).

For wage discrimination cases under Section 1981, a plaintiff must allege membership in a

protected class and that they were performing work substantially equal to employees who were

not members of the plaintiff's protected class who were compensated at higher rates than they

were.  *Coward,* 140 F.3d 271, 273 (D.C. Cir. 1998).[11]

Regarding race discrimination pay claims, Amazon restricts itself to the arguments that

Ms. Newman supposedly does not allege any comparators (which is patently and transparently

false) and that her description of the comparable job duties at issue are too vague to support

claims.  Ms. Newman alleges race discrimination pay claims with similar if not even greater

specificity as her gender-based equal pay claims, given the inclusion of white female

comparators as well.  Plaintiff alleges that two specific white female comparators were provided

greater compensation for performing work that requires the same skill, effort, and responsibility

---

[11]    But-for causation with respect to Section 1981 is addressed in the section below.

and was performed under similar working conditions.  *Id*. at ¶ 121.  Ms. Newman identifies the two white female comparators with similar specificity as the four male comparators identified in support of her gender-based equal pay claims.  Here, Ms. Newman provides the year their employment began, what team they were on (same Public Policy team), their educational experience and professional background (in comparison to hers), descriptions of their roles, level of employment, and their specific supervisors.  *Id*. at ¶ 121.  In supporting her claim, Ms. Newman describes their similar duties in detail.  *Id.* at ¶ 114.  These allegations are amply factual to support Ms. Newman's claims, and Amazon's contentions and speculative jabs are not factual or entitled to deference and only accentuate the need for discovery.

Amazon's argument regarding the second, "but-for" causation prong of the Section 1981 race discrimination cause of action is discussed below.  Since Ms. Newman alleges facts that adequately plead but-for causation, Ms. Newman's allegations also would meet the less stringent causation standards of Title VII and the DCHRA.

## III. PLAINTIFF'S MANY SPECIFIC FACTUAL ALLEGATIONS REGARDING RACIAL ANIMUS AND DISPARATE TREATMENT, AS WELL AS OTHER EMPLOYEES' COMPLAINTS REGARDING SAME, AMPLY ALLEGE "BUT-FOR" CAUSATION IN SUPPORT OF HER SECTION 1981 CLAIMS, <u>PARTICULARLY FOR PURPOSES OF A MOTION ON THE PLEADINGS</u>

Amazon Defendants appear to confuse "but-for" causation with "sole sufficient cause." Amazon somehow expects to advocate for dismissal of Plaintiff's Section 1981 claims by flatly asserting that no evidence or support for racial discrimination has been alleged, without confronting any of Plaintiff's substantive factual allegations or racial animus and imbalances.  In addition, the Amazon Defendants offensively and fancifully argue that an individual who alleges discrimination based upon more than one characteristic somehow cannot plead claims under Section 1981.  MTD at p. 18-19.  Without citing any case law that provides support for such a sweeping and pernicious argument, the Amazon Defendants contend that Section 1981 claims

should be dismissed even when a plaintiff's dual characteristics are connected (such as being a Black woman like Ms. Newman and, therefore, facing the compound effects of discrimination). Such conclusory and threadbare arguments cannot support dismissal of claims at any stage.

The Amazon Defendants make no attempt to illustrate why an individual could not be subject to both racial and gender discrimination (much less discrimination of quality and type that is unique to what is experienced by a Black woman). They fail to do this because they cannot— their argument rests on a transparently false and repulsive premise. The argument amounts to saying that race discrimination cannot exist alongside gender discrimination.

Amazon's argument appears to intentionally try to conflate "but-for" causation with "sole sufficient cause." None of Amazon's cases support the proposition it argues. Their cited cases all involve clearly insufficient pleadings or evidentiary records (and therefore are not pertinent to a Rule 12 motion at all). None of the cases stand for the proposition that a plaintiff must choose between pleading either gender or race discrimination (or any other two characteristics, should the facts support it), as Amazon argues. *See Adetoro v. King Abdullah Acad.*, No. 1:19 Civ. 01918 (TNM), 2020 WL 7122858, at *4 (D.D.C. Dec. 4, 2020) (no factual allegations whatsoever suggesting racial animus); *Nahum v. Spear*, No. 2:20 Civ. 1151 (DWC), 2021 WL 1158854, at *3–5 (W.D. Wash. Mar. 26, 2021) (same); *Ikedilo v. Statter*, No. 19 Civ. 9967 (RA), 2020 WL 5849049, at *8–9 (S.D.N.Y. Sept. 30, 2020) (same); *see also Whitaker v. City of Hopewell, Virginia*, No. 3:19 Civ. 923, 2020 WL 7246593, at *7 (E.D. Va. Dec. 9, 2020) (granting defendant summary judgment because plaintiff failed to "provide any evidence that would allow a jury to find that the City fired him because of his race.").

Amazon also conclusory argues (again, without accounting for any of the race-related allegations) that Plaintiff somehow has not pled "but-for" causation under Section 1981. The plethora of stereotyping by managers, consistent disadvantage for Black employees in the Public

Policy group, offensive comments, and complaints by other employees all amply support Plaintiff's Section 1981 claims.  SAC at ¶¶ 107-108, 156, 160, 168-69, 185-90, 199-203, 212-16, 218-21, 270–72.  It already appears highly likely based upon the SAC's allegations that the "but-for" nature of race as a factor in the animus and marginalization in the Public Policy group with regard to Ms. Newman's employment is a factual issue to be resolved at trial.

Under 42 U.S.C. § 1981, "a plaintiff must initially plead . . .  that, but for race, it would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).  *See, e.g., Moini v. LeBlanc*, 456 F. Supp. 3d 34, 49 (D.D.C. 2020) (finding that an untenured professor's complaint stated but-for causation where it alleged (1) all tenured professors in the department were white; (2) a relevant white comparator; (3) "a toxic atmosphere of racism and bias."); *Kilgore v. FedEx Freight*, 458 F. Supp. 3d 973, 979 (N.D. Ill. 2020) (denying defendant-employer summary judgment where plaintiff simply adduced evidence that a similarly situated employee was treated more favorably).

Ms. Newman extensively alleges a racial imbalance in Amazon's management (including a petition signed by various employees citing the group's poor record on advancement of under-represented persons of color), SAC at ¶¶ 230-232, 270-72, as well as presenting various white comparators who were promoted over her or hired and/or paid under more favorable terms, *Id.* at ¶¶ 119–21.  Crucially, she also demonstrates that the men overseeing her career repeatedly demonstrated race bias.  Mr. Block constantly used racially charged and stereotypical words to describe her, including calling her "too direct," "aggressive," "scary," and intimidating, *Id.* at ¶¶ 200–01, and he told Ms. Newman that Mr. Kellogg felt the same way, *Id.* at ¶ 203.  Ms. Newman repeatedly observed, or heard from others, about Mr. Kellogg's poor treatment of Black employees.  *Id.* at ¶¶ 212–216.  Additionally, as noted above, another of her supervisors, Mr. Maz, mocked her hair as a Black woman, *see* SAC at ¶ 168.  These are strong indicia of race-

based animus on the part of supervisors responsible for Ms. Newman's career progress, and they more than suffice to allege but-for causation.  Discovery is necessary on Ms. Newman's Section 1981 claims regarding racial discrimination in the AWS Public Policy Group.

## IV.   PLAINTIFF'S AMENDED COMPLAINT AND SECOND AMENDED COMPLAINT ARE NOT PROCEDURALLY DEFICIENT, AND SHOULD REMAIN OPERABLE PLEADINGS

Under Fed. R. Civ P. 15(a)(1), a party may amend its pleading "once as a matter of course within 21 days after serving it or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  In addition, under Fed. R. Civ P. 15(a)(2), a party may amend its pleading with the opposing party's written consent or the court's leave.

Fed. R. Civ. P. 15 is organized substantively, not chronologically, and does not prescribe any particular sequence for the exercise of its provisions.  *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1007 (9th Cir. 2015) (holding that Fed. R. Civ. P. 15 "does not mandate that the matter of course amendment under 15(a)(1) be exhausted before an amendment may be made under 15(a)(2), nor does it state that the ability to amend under 15(a)(1) is exhausted or waived once a 15(a)(2) amendment is made"); *Gilman & Bedigian, LLC v. Sackett*, 337 F.R.D. 113, 115 (D. Md. 2020) ("a plaintiff need not first amend as a matter of course and then amend only by agreement or with leave of the court"); *Parks v. Liberty Ins. Corp.*, No. Civ. 8:17-0503 (HMH), 2017 WL 11457907, at *4 (D.S.C. May 18, 2017) ("Where a party has previously amended her complaint pursuant to Rule 15(a)(2), but has not done so as a matter of course pursuant to Rule 15(a)(1), the plaintiff may still amend the complaint as a matter of course.").

In arguing that Plaintiff's First and Second Amended Complaints are procedurally deficient, the Amazon Defendants misconstrue the events related to Plaintiff's First and Second Amended Complaints, as well as the relevant orders of this Court. On May 3, 2021, the Amazon

Defendants filed a Motion to Partially Dismiss Plaintiff's Complaint ("First Motion to Dismiss"), and Plaintiff wanted to amend in response.  On May 4, 2021, Plaintiff's counsel emailed counsel for the Amazon Defendants to request consent for Plaintiff to "amend and/or oppose" by the last week of June 2021, in response to Amazon Defendants' First Motion to Dismiss. Pearson Decl. Ex. A.  Counsel for the Amazon Defendants rejected extending Plaintiff's deadline to amend her Complaint and/or oppose Amazon Defendants' First Motion to Dismiss to the June 24, 2021 but indicated that they were "happy to agree" to a shorter extension.  Pearson Decl. Ex. A.  In turn, Plaintiff filed a Motion for Extension of Time to Amend the Complaint, whereby she requested "to file an amended complaint or otherwise respond to the Amazon Defendants' motion to partially dismiss her Complaint to June 24, 2021."  Dkt. No. 21.  Plaintiff moved for the ability to amend her Complaint pursuant to Fed. R. Civ. P. 15(a)(2). *Id*. at p. 1.  Plaintiff indicated that Defendants consented to a shorter extension for Plaintiff to amend her Complaint and/or oppose Amazon Defendants' First Motion to Dismiss, but not to June 24, 2021. *Id*. at p. 2.

On May 12, 2021, the Court granted Plaintiff's Motion for Extension of Time to Amend the Complaint, in part, directing Plaintiff to respond to the Amazon Defendants' Motion to Partially Dismiss the Complaint by May 26, 2021.  As Plaintiff filed her motion as a Motion for Extension of Time to File an Amended Complaint, pursuant to FRCP 15(a)(2), Plaintiff reasonably interpreted the Court's use of the word "respond" to encompass both Plaintiff's ability to amend her Complaint and/or her ability to oppose Amazon Defendants' First Motion to Dismiss.  Additionally, Plaintiff reasonably believed that she was filing her Amended Complaint pursuant to Fed. R. Civ. P 15(a)(2), with both consent of Amazon Defendants and leave of the Court.  Of course, Plaintiff's ability to amend as of right pursuant to Fed. R. Civ. P. 15(a)(1) was set to expire on May 24, 2021, before the requested date of June 24, 2021 or the May 26, 2021

date granted by the Court.  In accordance with her understanding of this Court's May 12, 2021,

order, Plaintiff filed her Amended Complaint on May 26, 2021.  (Dkt. No. 23).

On June 9, 2021, the Amazon Defendants filed their Motion to Partially Dismiss

Plaintiff's Amended Complaint ("Second Motion to Dismiss") (Dkt. No. 25).  On June 10, 2021,

Defendant Andres Maz filed his Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No.

26).  On June 14, 2021, Plaintiff's counsel informed counsel for the Amazon Defendants of her

intent to file a Second Amended Complaint.  As Plaintiff was filing her Second Amended

Complaint as of right, pursuant to Fed. R. Civ. P. 15(a)(1), consent from the Amazon Defendants

was not required.  However, because Plaintiff sought to file her Amended Compliant after the

deadline for responding to Amazon Defendants' Second Motion to Dismiss, she sought consent

from the Amazon Defendants for a one-week extension (to June 30, 2021) to file her opposition

to Amazon Defendants' Second Motion to Dismiss.  Plaintiff expressly indicated to the Amazon

Defendants that she intended to file a Second Amended Complaint on or by June 24, 2021.

Pearson Decl. ¶ 5.  Counsel for the Amazon Defendants consented to Plaintiff's request.  Pearson

Decl. ¶ 6.  On June 17, 2021, with consent of the Amazon Defendants, Plaintiff filed a Motion

for an Extension of Time to file her Opposition to the Amazon's Defendants Motion to Dismiss.

Dkt. No. 29.  Memorializing what was agreed to by the Parties, Plaintiff noted, "The extensions

are intended to allow Plaintiff to Amend her Complaint on June 24, 2021 in response to

Defendant Andres Maz's Motion to Dismiss dated June 10, 2021 before filing an Opposition to

the Amazon Defendants' Motion (otherwise due June 23, 2021)."  *Id.*

On June 18, 2021, this Court granted Plaintiff the requested and consented-to extension.

In compliance with this Court's June 18, 2021 Order and pursuant to Fed. R. Civ. P 15(a)(1),

Plaintiff filed her Second Amended Complaint on June 24, 2021.  As a result of additional

allegations in Plaintiff's Second Amended Complaint, counsel for the Amazon Defendants

informed Plaintiff's counsel that they intended to file a revised, renewed motion to dismiss the Second Amended Complaint.  Pearson Decl. ¶ 8.  Plaintiff memorialized these developments in a status report on June 29, 2021 (Dkt. No. 33) (refiled in proper format at Dkt. No. 36).[12] Defendants' representations are inconsistent both with what is memorialized in the record of this Court as well as the Court's Orders.  Plaintiff properly filed her Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) and her Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1).  For the foregoing reasons, both Plaintiff's First and Second Amended Complaints are procedurally proper, and Defendants cannot and have not indicated any improper prejudice whatsoever.

Nevertheless, should this Court reject Plaintiff's position regarding the procedural posture of her Amended Complaints, Plaintiff hereby requests that this Court grant leave for the filing of her Second Amended Complaint.  A redline comparison showing all changes between the First and Second Amended Complaints is included as an exhibit to the Declaration of Lawrence M. Pearson.  Pearson Decl. Ex. D.  Under Fed. R. Civ. P. 15(a)(2), leave should be "freely" granted "when justice so requires."  Under this standard, leave should only be denied in cases involving "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Beach TV Properties, Inc. v. Solomon*, 254 F.Supp.3d 118, 124 (D.D.C. 2017) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

---

[12] Notably, prior to filing, counsel for the Amazon Defendants reviewed and approved of Plaintiff's June 29, 2021 status report memorializing the parties' understanding, including Plaintiff's representation that the requested extension was intended to enable Plaintiff to file her Second Amended Complaint and that Plaintiff would not be filing an opposition to Amazon Defendants' Second Motion to Dismiss because the Amazon Defendants were filing a renewed, revised motion based upon Plaintiff's Second Amended Complaint.

Additionally, in circumstances where a party in good faith misinterprets an order of the court as granting leave to amend a pleading, this Court has declined to strike the pleading and instead has given the party misinterpreting the order "the benefit of the doubt." *Greggs v. Autism Speaks, Inc.*, 987 F. Supp. 2d 51, 54 (D.D.C. 2014) (declining to strike Second Amended Complaint where plaintiff interpreted scheduling order as granting plaintiff leave to amend); *see also Brooks v. Clinton*, 841 F.Supp.2d 287, 297 (D.D.C.2012) (denying a plaintiff's motion to strike an amended answer when the defendant simply misconstrued its obligations under the scheduling order).  Plaintiff's Second Amended Complaint contains subsequently obtained and important additional factual allegations, Plaintiff's Second Amended Complaint was set forth in good faith, was not dilatory, did not result from a failure to cure deficiencies by previously allowed amendments, and is not futile.  Finally, as noted above, Amazon Defendants were made aware of Plaintiff's intent to file both her First and Second Amended complaints throughout the process and appeared to consent to Plaintiff's First Amended Complaint (if not to the timing of it).  Therefore, Amazon Defendants would not be prejudiced by this Court granting leave for the Plaintiff to file her Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny in its

entirety the Amazon Defendants' Motion to Partially Dismiss the Second Amended Complaint.[13]

Plaintiff also requests oral argument on the Motion.

Dated: July 22, 2021
      New York, New York                           Respectfully submitted,

                                                **WIGDOR LLP**

                                                By: _____

                                                    Douglas H. Wigdor
                                                    (D.C. Bar No. 447370)
                                                    Lawrence M. Pearson
                                                    (admitted *pro hac vice*)
                                                    John S. Crain
                                                    (admitted *pro hac vice*)
                                                    Alfredo J. Pelicci
                                                    (admitted *pro hac vice*)

                                                    85 Fifth Avenue
                                                    New York, NY 10003
                                                    Telephone: (212) 257-6800
                                                    Facsimile: (212) 257-6845
                                                    dwigdor@wigdorlaw.com
                                                    lpearson@wigdorlaw.com
                                                    jcrain@wigdorlaw.com
                                                    apelicci@wigdorlaw.com

                                                    *Counsel for Plaintiff*

---

[13]    As noted in a footnote above, Plaintiff opposes the Amazon Defendants' request for a stay of discovery.