## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLOTTE NEWMAN,

     *Plaintiff,*

    v.

AMAZON.COM, INC. *et al.*,

    *Defendants.*

No. 21-cv-531 (DLF)

## <u>MEMORANDUM OPINION</u>

Charlotte Newman brings this action against her employer, Amazon.com, Inc. and Amazon Web Services, Inc., two of its employees, Steven Block and Shannon Kellogg, and its former employee, Andres Maz. She claims that the defendants discriminated against and harassed her due to her race and sex. Before the Court are the Amazon Defendants' (Amazon.com, Amazon Web Services, Block and Kellogg) Motion to Partially Dismiss Plaintiff's Second Amended Complaint, Dkt. 34, and Defendant Maz's Motion to Dismiss Second Amended Complaint, Dkt. 38. For the reasons that follow, the Court will grant in part and deny in part both the Amazon Defendants' and Maz's motions.

## I.    BACKGROUND[1]

Charlotte Newman, a black woman, has been employed at Amazon Web Services, Inc. (Amazon) for five years. Second Am. Compl. ¶¶ 72, 87, Dkt. 30. She has an M.B.A. and has worked on Capitol Hill in various economic and financial services policy roles. *Id.* ¶¶ 78, 83. In October 2016, she began interviewing for the role of Senior Manager, Financial Services on the

---

[1] On a Rule 12(b)(6) motion, the Court assumes the truth of material factual allegations in the complaint. *See Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Public Policy team at Amazon, a Level 7 position.  *Id.* ¶¶ 88, 91.  According to the job description, the employee in that role would represent Amazon "before the financial sector . . . in the U.S. and countries such as Canada and Mexico."  *Id.* ¶ 92.  In November, Newman was instead offered the role of Public Policy Manager, a Level 6 position.  *Id.* ¶ 91.  Defendant Steve Block, then a Senior Manager, told her that the role she was being hired for would cover only the United States, not other countries, and that there was no room for negotiation on compensation. *Id.* ¶ 93.  The L6 manager position "came with substantially lower compensation" than would have been offered for the L7 position.  *Id.* ¶ 33.  She accepted the Level 6 offer "after a call with the recruiter voicing her objections and hesitation."  *Id.* ¶ 91.  Newman started work as a Public Policy Manager in January 2017.  *Id.* ¶ 87.

Newman claims that she was qualified for an L7 position at the outset, and that her white male colleagues who were hired at the L7 level had "less job experience than she did."  *Id.* ¶ 102. And two white women hired for L6 public policy roles had "significantly less relevant experience" than Newman did, and "generally did not have graduate degrees."  *Id.* ¶ 103.  Plus, she alleges that within a few months of starting the job, she was performing work that was at least at the L7 level, including public policy work related to Latin America.  *Id.* ¶ 96.  Indeed, she claims that her "international role and regular responsibilities meeting with senior government and AWS officials . . . were in line with L7 and even L8 job duties."  *Id.* ¶ 106.  She highlights her other responsibilities that resembled those of managers working at levels above her, including devising strategy plans, formulating the company's approach to new regulations, serving as a project lead, meeting with senior business leaders, and securing meetings with senior officials, among others.  *Id.* ¶ 114.  And she points to four unnamed male employees who performed the same duties, two of whom had coverage areas that were "arguably narrower" than

Newman's, yet were awarded higher compensation and hired at, or promoted to, a higher level. *Id.* ¶¶ 116–19.  These men either had comparable qualifications or fewer years of relevant experience than did Newman.  *Id.*  Further, two white female employees, with fewer years of experience and inferior qualifications, "received higher compensation for performing work in Senior Manager (Level 7) roles that were substantially equal in skill, effort, and responsibility and occurring under similar working conditions as what [Newman] was doing during the relevant period."  *Id.* ¶ 121.  And they performed similar duties, though their roles were "arguably narrower in scope and impact than [Newman's] role was at the time."  *Id.*

Ultimately, Newman was promoted to an L7 role as Head of Financial Services in October 2019, nearly three years after she started at Amazon.  *Id.* ¶ 101.  But she claims that white employees were "promoted at a faster pace than Black employees," pointing to two white men who were hired for L7 roles and were elevated to L8 positions.  *Id.* ¶¶ 104, 107.  She also notes that a "significantly less-experienced and less-qualified" white woman who started in an L6 Public Policy job four months after Newman was promoted was elevated "two Levels (from 6 to 8) in the time that [Newman] has worked at Amazon."  *Id.* ¶ 108.  Another less-qualified white woman on the Public Policy team was promoted from L6 to L7 within a year and a half.  *Id.* Newman alleges that her experience is representative of Amazon's frequent "'de-leveling' of Black employees when they are hired (i.e., dropping them a level below the job they applied and were qualified for or will be performing)."  *Id.* ¶ 4.  Plus, she claims that there is often a "longer wait for promotions for Black employees and women."  *Id.*

Newman's complaint further alleges that a culture of discrimination pervades Amazon. She points to the "dearth of Black representation, particularly in its top corporate ranks," *id.* ¶ 268, including in the highest levels of the Public Policy team, *id.* ¶ 10.  With other members of

the Public Policy team, she discussed the concern that "women and underrepresented minorities were not being promoted in the same way or getting the same opportunities as white men"; they drafted a report regarding the issue in 2019.  *Id.* ¶ 230.  Newman also claims that she was subjected to discriminatory treatment and remarks by other Public Policy employees, including her manager, defendant Block, and his boss, defendant Kellogg.  *See, e.g.*, *id.* ¶¶ 189–229.  For example, Block allegedly told her that she was "too direct," "aggressive," and "just scary."  *Id.* ¶ 200.  He said that Kellogg shared these views.  *Id.* ¶ 203.  She also claims that Kellogg treated black employees worse than he did white employees, including by disparaging their work or discouraging them from joining the Public Policy team.  *Id.* ¶¶ 214–15.  And they both allegedly "complained about the personalities of other female employees," which they did not do for male employees.  *Id.* ¶ 225.  Plus, a white colleague told Newman it would be "funny if [she] took a picture with the 'Jambalaya' wine bottle," *id.* ¶ 259, and another coworker told her she looked like a gorilla when trying on a black jacket, *id.* ¶ 262.

The complaint also describes Newman's experience with another member of the Public Policy team, defendant Maz, who was an L7 Senior Manager of Public Policy in 2017 when she began working with him.  *Id.* ¶¶ 124–25.  Early on, he gave her a gift of a notebook decorated by his daughter.  *Id.* ¶ 125.  When they had dinner on a business trip in October 2017, he called her "beautiful." *Id.* ¶ 126.  On January 18, 2018, he allegedly "sexually assaulted and forcefully propositioned" her during a business dinner.  *Id.* ¶ 132–33.  She claims that he praised her in an "over-the-top" way during dinner, repeatedly calling her "great."  *Id.* ¶ 134.  He got up to sit next to her and put his left hand on her lap, "in proximity to her genitalia and on her inner thigh," after which he "grabbed and groped the upper thigh of her right leg."  *Id.* ¶¶ 136–37.  After dinner, when she was waiting for an Uber, Maz "badger[ed] and implore[d] her to go home with him to

have sex." *Id.* ¶ 141.  She refused and told him the next day that his conduct crossed the line.  *Id.* ¶¶ 143, 147.  Throughout the year and into 2019, she altered her behavior to avoid coming into contact with him.  *Id.* ¶ 150.  But she claims he sexually harassed her again on September 19, 2019 in Seattle, when they were at a hotel bar with colleagues.  *Id.* ¶¶ 163, 166.  When Newman said she was leaving, Maz "insisted that she stay, laughed, and yanked hard on her hair," which was in long braids.  *Id.* ¶ 167.  He said, "You can leave this behind," while pulling her hair.  *Id.* ¶ 168.  Newman interprets this as "an unmistakable mockery of [her] hair as a Black woman." *Id.*  Later that night, Maz locked arms with her and said, "Let's pretend we're boyfriend and girlfriend."  *Id.* ¶ 172–73.

Newman claims that Maz acted harshly toward another black female colleague "due to her refusal to engage in a course of action that she felt was a violation of Amazon's policies." *Id.* ¶ 156.  And that employee "observed that [Maz] did not treat white or Latina female employees in a similar manner when they recommended an approach that differed from his recommendations."  *Id.*  He allegedly provided negative feedback about this employee, contributing to the denial of her promotion and causing her to be pushed out of her team.  *Id.*

Newman further alleges that Maz assigned work to her and supervised teams of employees that she was on, continuing until mid-2020.  *Id.* ¶ 154.  She claims that Kellogg relied on Maz for his impressions of Newman, and that Maz's feedback on her work was used by other managers to "mak[e] decisions regarding her compensation, eligibility for promotion, and other terms and conditions of employment."  *Id.* ¶¶ 153–55.  According to Newman, her "progress at Amazon was held up for years by Mr. Kellogg and Mr. Maz by proxy."  *Id.* ¶ 155.

On June 19, 2020, Newman filed a written complaint with Human Resources about Maz's sexual harassment and the discriminatory treatment she faced from others, including

Block.  *Id.* ¶ 296.  The investigation found that Block had made stereotypical comments, but he kept his position.  *Id.* ¶ 300.  And the company did not help her avoid contact with Maz.  *Id.* ¶¶ 301–03.  On September 17, 2020, she filed a complaint with the Washington, D.C. Office of Human Rights against Amazon "regarding sex- and/or gender-based discrimination and harassment by Defendant Maz, which also noted racially discriminatory conduct by [her] supervisors."  *Id.* ¶ 67.  Newman learned on October 2, 2020, that Maz had been fired.  *Id.* ¶ 306.  She thus believes that his termination was connected to her filing of the OHR complaint, and that Amazon would have told him about its allegations.  *Id.* ¶ 308.  In late 2020, she sought a new role at Amazon "outside the coverage of Mr. Block, Mr. Kellogg, and others in that Public Policy area."  *Id.* ¶ 316.  As of November 2, 2020, she is Head of Underrepresented Founder Startup Business Development at AWS Startups, an L7 position.  *Id.* ¶ 317.

On March 1, 2021, Newman filed her initial complaint in this Court.  Compl., Dkt. 1.  A week later, she filed a charge of discrimination with the Equal Employment Opportunity Commission, and on April 12, 2021, the EEOC issued a Right to Sue letter.  Second Am. Compl. ¶¶ 65–66.  She filed her First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) on May 26, 2021, *see* Dkt. 23, and her Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1) on June 24, 2021, *see* Dkt. 30.[2]  She brings claims against Amazon.com and Amazon Web

---

[2] The Amazon Defendants ask the Court to reject Newman's Second Amended Complaint as procedurally improper, arguing that she filed it without their consent or leave from this Court, and after her time to amend as of right had expired.  *See* Amazon Defs.' Mot. to Dismiss at 8–10.  Newman filed her first amended complaint, with the Amazon Defendants' consent and the Court's leave, under Fed. R. Civ. P. 15(a)(2) on May 26, 2021.  *See* Dkt. 21; May 12, 2021 Minute Order.  Maz filed a motion to dismiss on June 10, 2021, *see* Dkt. 26, giving Newman 21 days to amend as a matter of right under Fed. R. Civ. P. 15(a)(1).  But in her Second Amended Complaint, filed as a matter of right, she included new allegations against the Amazon Defendants, not just against Maz.  While this may have been technically improper, the Court will not strike the pleading.  The Court must "freely" grant leave to amend, *see* Fed. R. Civ. P.

Services under Title VII, 42 U.S.C. § 2000e, *et seq.* for race and/or sex discrimination and hostile

work environment, and for violations of the Equal Pay Act (EPA), 29 U.S.C. § 206(d).  Second

Am. Compl. ¶¶ 323–28, 335–39.  She sues all the defendants under 42 U.S.C. § 1981 for race

discrimination and harassment, and under the D.C. Human Rights Act (DCHRA), D.C. Code §§

2–1401.01 *et seq.* for race and/or sex discrimination. *Id.* ¶¶ 329–34, 340–45.  She sues Maz,

Block, and Kellogg for aiding and abetting in violation of the DCHRA.  *Id.* ¶¶ 346–50.  Finally,

she sues Maz for committing bias-related crimes in violation of D.C. Code § 22-3701, for assault

and battery/sexual abuse in violation of D.C. Code § 22-3006, and for battery under Washington

State law.[3]  *Id.* ¶¶ 351–68.  The Amazon Defendants moved to partially dismiss the complaint,

Dkt. 34, while Maz moved to dismiss in full, Dkt. 38.  Both motions are ripe for review.

## II.    LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to

dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R.

Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter

sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement,

---

15(a)(2), and can only deny in cases involving undue delay, bad faith, failure to cure
deficiencies, undue prejudice, and futility.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  None of
those circumstances are present here, so the Court would have granted leave to file had Newman
requested it.  To the extent that Newman simply misinterpreted the Court's various orders, *see*
Pl.'s Opp'n to Amazon Defs.' Mot. to Dismiss at 28–32, Dkt. 39, that is not a basis to strike a
pleading.  *See Greggs v. Autism Speaks, Inc.*, 987 F. Supp. 2d 51, 54 (D.D.C. 2014).

[3] Newman has since dismissed her assault and battery claim under Washington State law without
prejudice.  Pl.'s Opp'n to Maz's Mot. to Dismiss at 26 n.7, Dkt. 41.

but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  An "unadorned, the-defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III.    ANALYSIS

### A.    Amazon Defendants' Motion to Dismiss

The Amazon Defendants move to dismiss as time-barred Newman's "de-leveling" claims—that she was not hired at an appropriate job level—under Title VII, Section 1981, and the DCHRA.  *See* Amazon Defs.' Mot. to Dismiss at 11–14.  They also move to dismiss her unequal pay claims under the EPA, Title VII, Section 1981, and the DCHRA, and all of her

claims under Section 1981, for failure to state a claim.  *See id.* at 14–20.  The Court will address

each argument in turn.

### 1.   De-Leveling Claims

Newman was hired for a Level 6 position, as opposed to the Level 7 role for which she

believes she was qualified, in November 2016.  Second Am. Compl. ¶ 91.  The Court agrees

with the Amazon Defendants that her de-leveling claim accrued then, rather than, as Newman

urges, in January 2017 when she started her job.  *See* Pl.'s Opp'n to Amazon Defs.' Mot. to

Dismiss at 12, 15.[4]  A discriminatory act occurs, and "the filing limitations period[] therefore

commence[s]" when "the [adverse employment] decision [is] made and communicated to" the

plaintiff.  *Del. State Coll. v. Ricks*,  449 U.S. 250, 258 (1980) (Title VII and Section 1981); *see*

*also Murphy v. PricewaterhouseCoopers, LLP*, 580 F. Supp. 2d 16, 25 (D.D.C. 2008) ("[T]he

statute of limitations begins to run under the DCHRA when the plaintiff is given unequivocal

notice of the adverse decision, not on the effective date of the decision.") (internal quotation and

alteration omitted).  In November 2016, Newman was offered the L6 position and was informed

of the lesser scope of the role.  Second Am. Compl. ¶¶ 91, 93.  She accepted the offer at that

point.  *Id.* ¶ 91.  Accordingly, the clock started to run on her de-leveling claim in November

2016.

### i.   Title VII

In the District of Columbia, the filing period for an EEO charge, required under Title VII,

is 300 days from the date of the alleged discrimination.  *Slate v. Pub. Def. Serv. for the Dist. of*

---

[4] Newman's out-of-circuit citations provide no assistance.  Both cases concern when an
employment contract is formed, not when the limitations clock to challenge a discriminatory
decision begins to run.  *See Skinner v. Maritz, Inc.*, 253 F.3d 337, 340 (8th Cir. 2001); *Spriggs v.
Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999).

*Columbia*, 31 F. Supp. 3d 277, 294 (D.D.C. 2014).  Thus, Newman had to file an EEO charge with her de-leveling claim by approximately September 2017, but she did not file until March 8, 2021.  Second Am. Compl. ¶ 65.

Newman points to the Lilly Ledbetter Act of 2009 as saving her claim, arguing that the de-leveling was a "discriminatory compensation decision," such that each paycheck that resulted from that decision "trigger[ed] a new filing period, in effect reviving [the] claim that otherwise would have been time-barred."  *Johnson v. District of Columbia*, 632 F. Supp. 2d 20, 22 (D.D.C. 2009); 42 U.S.C. § 2000e-5(e)(3)(A).  But Newman's "de-leveling"—that is, her hiring at an inappropriately low level—is not a "discriminatory compensation decision" pursuant to the Act. The D.C. Circuit has explained that "the phrase 'discrimination in compensation' means paying different wages or providing different benefits to similarly situated employees, not promoting one employee but not another to a more remunerative position."  *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 374 (D.C. Cir. 2010).  Newman's initial hiring for a less remunerative position—and thus her non-selection for the more lucrative job—is more akin to the failure to promote in *Schuler* than it is to the provision of different wages to similarly situated employees.  Indeed, "termination, failure to promote, denial of transfer, or *refusal to hire*" are "[d]iscrete" adverse employment actions.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (emphasis added).  And "'the plain language of the [Ledbetter Act] covers compensation decisions and not other discrete employment decisions,' such as *hirings*, firings, promotions, and demotions."  *Davis v. Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d 266, 270 (2d Cir. 2015) (quoting *Noel v. Boeing Co.*, 622 F.3d 266, 274 (3d Cir. 2010)) (emphasis added).  Therefore, the Court dismisses Newman's de-leveling claim under Title VII.

ii.     Section 1981

The parties dispute whether a three- or four- year statute of limitations applies to Newman's de-leveling claim under Section 1981.  Because Section 1981 does not contain a statute of limitations, federal courts apply "the most appropriate or analogous state statute of limitations to claims based on asserted violations of § 1981."  *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 371 (2004) (internal quotation omitted).  In the District of Columbia, the application statute of limitations is three years.  *Kargbo v. Nat'l R.R. Passenger Corp.*, 243 F. Supp. 3d 6, 10 (D.D.C. 2017); D.C. Code § 12-301(8).  But in 1991, Congress amended the statute to "include protection from racial discrimination in post-contract formation conduct," and these claims are governed by 28 U.S.C. § 1658, which prescribes a four-year statute of limitations.  *Kargbo*, 243 F. Supp. 3d at 10.

The Court need not decide which limitations period applies, because Newman's de-leveling claim is barred under both.  As explained above, the claim accrued in November 2016, so she either had to file by November 2019 or November 2020.  She did not bring suit until March 1, 2021.  Nor does the parties' tolling agreement, executed on December 21, 2020, rescue the claim: it does not constitute a waiver of any statute of limitations defense established as of the agreement's effective date, December 21.  *See* Amazon Defs.' Mot. to Dismiss, Speights Decl. ¶¶ 2–3, Dkt. 34-2.  Accordingly, Newman's de-leveling claim under Section 1981 is time-barred and is dismissed.

iii.     DCHRA

A plaintiff must file a claim of discrimination under the DCHRA "within one year of the unlawful discriminatory act, or the discovery thereof."  D.C. Code § 2-1403.16; *Murphy*, 580 F. Supp. 2d at 23.  Newman did not file her D.C. OHR complaint until September 17, 2020.

Second Am. Compl. ¶ 67.  She implicitly concedes that her de-leveling claim under the DCHRA is time-barred.  *See* Pl.'s Opp'n to Amazon Defs.' Mot. to Dismiss at 16.  Accordingly, the Court dismisses this claim.

        2.      *Unequal Pay Claims*

Newman alleges wage discrimination on the basis of sex under the EPA, Title VII, and the DCHRA, and on the basis of race under Section 1981, Title VII, and the DCHRA.  *See generally* Second Am. Compl. ¶¶ 323–45.  To support this allegation, she points to six comparators, four of whom are male and at least three of whom are white, claiming that they "received higher compensation for performing work that was substantially equal in skill, effort, and responsibility and occurred under similar working conditions as [Newman]."  Second Am. Compl. ¶¶ 116–21.  And she alleges that their roles "entailed nearly identical essential functions" and that they "performed similar duties" as Newman, and some had roles even narrower in scope.  *Id.*  She describes her responsibilities as including:

> [D]evising and implementing her coverage area's strategy plan, securing meetings with relevant senior officials, managing relationships with trade associations, formulating the Company's approach to handling newly implemented regulations, serving as the Public Policy lead for the most complex projects, collaborating with other Public Policy leaders to define a global public policy direction that fit well with overall Company objectives, overseeing the planning process and delegation across teams and/or departments, initiating projects and approving proposed projects, meeting and collaborating with senior business leaders/partners on development and implementation of company strategy, providing thought leadership on strategy, and drafting and negotiating public policy documents.

Second Am. Compl. ¶ 114.  The Amazon Defendants argue that she fails to adequately plead a wage discrimination claim under any of these statutes.  The Court disagrees.

        i.      Sex discrimination

To establish an EPA violation, Newman must allege that "(1) she was doing substantially equal work on the job, the performance of which required substantially equal skill, effort, and

responsibility as the jobs held by members of the opposite sex; (2) the job was performed under similar working conditions; and (3) she was paid at a lower wage than those members of the opposite sex." *Cornish v. District of Columbia*, 67 F. Supp. 3d 345, 360 (D.D.C. 2014). "Claims of unequal pay under the DCHRA are governed by the standards of the Equal Pay Act." *Hawley v. Blackboard, Inc.*, No. 03-cv-656, 2005 WL 513496, at *8 n.1 (D.D.C. Mar. 3, 2005). And to state a prima facie case of wage discrimination under Title VII, Newman must allege that she is a member of a protected class, and that she performed work "substantially equal" to that of employees who were not members of that class and were "compensated at higher rates." *See Anderson v. Zubieta*, 180 F.3d 329, 338 (D.C. Cir. 1999). The complaint must "include factual allegations that could support the plausible inference that the work performed by the alleged comparators was substantially similar to that performed by the plaintiff." *Tolton v. Jones Day*, No. 19-cv-945, 2020 WL 2542129, at *29 (D.D.C. May 19, 2020) (EPA claim).

First, the Court is unpersuaded by the Amazon Defendants' argument that Newman defeats her EPA claim by also pointing to female comparators. *See* Amazon Defs.' Mot. to Dismiss at 15. An EPA plaintiff need not allege that other female coworkers were paid less than male coworkers. *Cornish*, 67 F. Supp. 3d at 361 n.6. She need only allege that *she* was paid less than male employees who performed similar work. *See id.* And the Amazon Defendants rely only on cases that did not face the scenario of the plaintiff providing both male and female comparators. *See, e.g.*, *Battle v. Master Sec. Co.*, 298 F. Supp. 3d 250, 254 (D.D.C. 2018) (plaintiff's complaint did not "mention[] a discrepancy in pay because of his sex"); *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 88 (D.D.C. 2016) (plaintiff did not allege that any similarly situated employee was a member of the opposite sex).

13

Nor is Newman required to identify the comparators by name.  *Cf.* Amazon Defs.' Mot. to Dismiss at 15.  At this stage, "identifying a [specific] comparator is not required."  *Daughtry v. kmG Hauling, Inc.*, No. 20-cv-3361, 2021 WL 4078686, at *7 (D.D.C. Sept. 8, 2021). Identifying "a discrete and focused group of comparators" provides sufficient notice.  *Savignac v. Jones Day (I)*, 486 F. Supp. 3d 14, 31 (D.D.C. 2020) (holding it sufficient to identify comparators as male associates at the same level of seniority as the plaintiff in the Issues and Appeals group in the D.C. office of Jones Day); *see also Douglas v. Alfasigma USA, Inc.*, No. 19-cv-2272, 2021 WL 2473790, at *10 (N.D. Ill. June 17, 2021) ("[A] complaint does not have to introduce the full cast of characters and divulge their names.").  Here, Newman alleges that the four male comparators overlapped with her on the Public Policy team, sometime between January 2017 and November 2020.  *See* Second Am. Compl. ¶¶ 87, 116–19, 317.  Three of them were hired as L7 employees; one was promoted to a Level 8 Director position.  *Id.* ¶¶ 116, 118–19.  Two of them started around the same time as she did.  *Id.* ¶¶ 116, 118.  Two of them do not have graduate degrees, and one of them had less senior roles on Capitol Hill than did Newman. *Id.* ¶¶ 117–18.  And one comparator worked on U.S. Postal Policy, an area "arguably narrower in scope" than that covered by Newman.  *Id.* ¶ 119.  With this level of detail, the Court concludes that she has "alleged facts sufficient to plausibly identify male comparators" and put the Amazon Defendants on "clear notice of the substance of [her] EPA [and DCHRA and Title VII] claim[s]."  *Savignac I*, 486 F. Supp. 3d at 31.

Finally, Newman has "describe[d] the common duties and qualifications of the relevant comparator group with sufficient detail to give fair notice of what her claim is and the grounds upon which it rests."  *Savignac v. Jones Day (II)*, 539 F. Supp. 3d 107, 120 (D.D.C. 2021) (internal quotation marks and alteration omitted).  *Cf.* Amazon Defs.' Mot. to Dismiss at 16–17.

In *Savignac II*, the court dismissed the plaintiff's EPA claims because her complaint "sa[id] little about what associates who work in Jones Day's Issues and Appeals practice actually do," "sa[id] nothing about [the plaintiff's] predominant responsibilities during the relevant period of time," and "d[id] not identify the predominant or essential responsibilities of Issues & Appeals associates in general." *Id.* at 117–18.  In contrast, Newman provides a lengthy list of her predominant responsibilities, and alleges that her male comparators performed the same duties. Second Am. Compl. ¶¶ 114, 116–19.  Plus, she gives some specific detail about the comparators' qualifications, highlighting the lack of graduate degrees and less senior roles on Capitol Hill.  *Id.* ¶¶ 117–18.  To be sure, "[i]t will take much more detail to prove that all [comparators] did in fact have 'substantially similar' jobs," *Baker-Notter v. Freedom Forum, Inc.*, No. 18-cv-2499, 2019 WL 4601726, at *9 (D.D.C. Sept. 23, 2019), but "[a]ccepting [her] allegations as true and granting all reasonable inferences in her favor," *Cornish*, 67 F. Supp. 3d at 361, the Court finds that Newman has adequately stated a wage discrimination claim based on sex under the EPA, Title VII, and the DCHRA.

ii.      Race discrimination

Under Title VII, the standard to state a wage discrimination based on race is the same as that explained above for sex.  *See Anderson*, 180 F.3d at 338.  DCHRA claims are analyzed under the same standards applicable to Title VII claims.  *Ali v. D.C. Gov't*, 697 F. Supp. 2d 88, 92 n.6 (D.D.C. 2010).  And to state a prima facie case under § 1981, Newman must allege that white employees were compensated at higher rates yet performed substantially equal work.  *See Coward v. ADT Sec. Sys., Inc.*, 140 F.3d 271, 273 (D.C. Cir. 1998).

Newman points to three white comparators, all members of the Public Policy team in L7 positions, who were paid more.  Second Am. Compl. ¶¶ 116, 121.  Two of them have less

experience, having graduated from college five years after Newman and lacking graduate degrees.  *Id.* ¶ 121.  One was promoted to a Level 8 Director job.  *Id.* ¶ 116.  And the compensation decisions for the two white female employees were made by Kellogg and/or Block, as was the case for Newman.  *Id.* ¶ 121.  Newman alleges that the roles of these three employees "entail nearly identical essential functions as" her own role, and these comparators "performed similar duties."  *Id.* ¶¶ 116, 121.  As explained above, these allegations, taken as true, are enough to raise the inference that Newman performed substantially equal work as did white employees on her team, yet received lower compensation.

Accordingly, the Court denies the Amazon Defendants' motion to dismiss Newman's wage discrimination claims under the EPA, Title VII, the DCHRA, and Section 1981.

### 3.     *Section 1981 Claims*

To state a § 1981 claim, Newman "must allege that (1) [she] is a member of a racial minority; (2) the defendant intended to discriminate against [her] on the basis of race; and (3) the discrimination concerned an activity enumerated in § 1981."  *Mazloum v. Dist. of Columbia Metro. Police Dep't*, 522 F. Supp. 2d 24, 37 (D.D.C. 2007) (internal quotation omitted).  And she must plead that "but for race, [she] would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).  Newman alleges that, because of her race, she faced unequal pay and promotion opportunities and a hostile work environment, and she would not have experienced this "but for" her race.  Second Am. Compl. ¶¶ 330–31.

Contrary to the Amazon Defendants' argument, *see* Amazon Defs.' Mot. to Dismiss at 18, Newman has not failed to plead but-for causation because, elsewhere in her complaint, she alleges that she was discriminated against based on race *and sex.*  First, "events [often] have

multiple but-for causes." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020).  The fact that Newman alleges that the defendants took discriminatory actions against her because of her sex does not preclude her allegation that they also took those actions because of her race.  After all, "it is not disqualifying—or even uncommon—for plaintiffs to allege, based on the same adverse employment action, that they were discriminated against based both on their sex and their race." *Tolton*, 2020 WL 2542129, at *21 (disagreeing with the defendant's argument that the plaintiff did not state a § 1981 claim because her allegations for race and sex discrimination were the same); *see also Douglas*, 2021 WL 2473790, at *14 (same).

True, in *Adetoro v. King Abdullah Academy*, No. 19-cv-1918, 2020 WL 7122858 (D.D.C. Dec. 4, 2020), the court found that the plaintiffs did not meet the causation standard because they alleged "a buffet of reasons *other than race* that plausibly caused, or contributed to" their firing—most prominently, national origin and religion.  *Id.* at *4.  But there, the plaintiffs only "sprinkled in a few allegations of race discrimination." *Id.* at *5.  And they alleged other, nondiscriminatory explanations for their termination.  *Id.*  In contrast, Newman's complaint includes many allegations of race discrimination, and she does not provide any nondiscriminatory explanations.  *See generally* Second Am. Compl.  She points to the lack of black representation in Amazon leadership, including on the Public Policy team.  *Id.* ¶¶ 10, 268. She points to two white *female* comparators who received higher compensation for similar work. *Id.* ¶ 121.  She points to allegedly racially charged statements made by her supervisors and other coworkers.  *See, e.g.*, *id.* ¶¶ 200, 214–15, 259, 262.  *See Moini v. LeBlanc*, 456 F. Supp. 3d 34, 49 (D.D.C. 2020) (allowing a § 1981 claim to proceed where the plaintiff pointed to a comparator, an atmosphere of racism, and a lack of racial diversity in the department).

Accordingly, the Court finds that Newman has met *Comcast*'s but-for causation standard.  140 S. Ct. at 1019.  The Amazon Defendants' motion to dismiss her § 1981 claims (Count 2) is denied.

### B.    Maz's Motion to Dismiss

Maz moves to dismiss Newman's complaint against him in full.[5]  He argues that she has failed to allege his personal participation in the Amazon defendants' discrimination, nor has she alleged any discriminatory animus on his part.  He further submits that many of her claims are time-barred.  The Court takes each argument in turn.

#### 1.    Section 1981 Claims

"[A]n at-will employee alleging discrimination based on race may bring a Section 1981 claim not only against her employer but also against those supervisors who take actions in violation of Section 1981."  *Brown v. Child.'s Nat'l Med. Ctr.*, 773 F. Supp. 2d 125, 136 (D.D.C. 2011).  A plaintiff must make "an affirmative showing linking the individual defendant with the discriminatory action."  *Jackson v. Starbucks Corp.*, No. 19-cv-1487, 2021 WL 1317883, at *8 (D.D.C. Apr. 8, 2021) (quoting *Brown*, 773 F. Supp. 2d at 136).  Plus, a § 1981 plaintiff "cannot merely invoke [her] race in the course of a claim's narrative and automatically be entitled to pursue relief.  Rather, [she] must allege some facts that demonstrate that [her] race was the reason for a defendant's actions."  *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 88 (D.D.C. 2010) (quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990)).  And per *Comcast*, she must plausibly plead that race was the but-for cause of the discrimination.  140 S. Ct. at 1019.

---

[5] Newman agrees that she does not bring her "de-leveling" claims under § 1981 or the DCHRA against Maz, who was not employed by Amazon when she was hired.  *See* Pl.'s Opp'n to Maz's Mot. to Dismiss at 15 n.4, Dkt. 41.

In addition to her sexual harassment and assault allegations, Newman claims that Maz had "substantial influence over [her] possible promotions, compensation, and other terms and conditions of employment" because "Kellogg relied upon [him] almost entirely for his impressions and feedback on [her]." Second Am. Compl. ¶ 153.  He regularly assigned work to her, and directly supervised many of her Latin America assignments; his feedback on her work was used by Newman's other managers to make decisions about her pay and promotion prospects. *Id.* ¶¶ 154–55.  And he participated in the "formal process for providing feedback," including "through the Company's Forte performance evaluation process." *Id.* ¶ 155.  Newman also points to Maz's experience with another black employee, alleging that he bullied her because of her refusal to take a course of action; that employee claimed he treated white or Latina female employees differently. *Id.* ¶ 156.  Maz gave negative feedback about that employee that contributed to her promotion denial and ultimate ouster from her team. *Id.*

Though it is a close call, Newman has alleged just enough for the Court to plausibly infer that Maz was personally involved in the Amazon Defendants' alleged discriminatory promotion and compensation decisions.[6]  Although Newman does not explicitly allege that Maz criticized her or gave her supervisors negative feedback about her performance on the Latin American projects on which they worked together, *see id.* ¶ 155, she does allege that her "progress at Amazon was held up for years by Mr. Kellogg and Mr. Maz by proxy." *Id.*  This statement verges on conclusory, but combined with the allegation that Maz gave weekly feedback about Newman to Kellogg, who almost exclusively relied on that feedback, *see id.*, the Court finds that Newman has just barely alleged sufficient personal involvement by Maz.  Indeed, Maz's

---

[6] Newman also brings a hostile work environment claim under § 1981, and here Maz's personal involvement—with two alleged sexual harassment/assault episodes—is clear.

negative feedback allegedly contributed to another black female employee's promotion denial, *see id.* ¶ 156, and given that Kellogg relied almost entirely on Maz for feedback, it is plausible that he had the same effect on Newman's alleged lack of progress on the Public Policy team.  To survive at the summary judgment stage, however, Newman will have to provide concrete facts that clearly demonstrate Maz's personal involvement in Newman's career trajectory at Amazon. *See Telesford v. Maryland Provo I-Med. Servs., P.C.*, 204 F. Supp. 3d 120, 132 (D.D.C. 2016) (providing resumes, performance data, and recommendations in a discriminatory promotion decision did not constitute personal involvement).  At this early stage, Newman's allegations about Maz's role barely suffice to state a claim.  *See Brown*, 773 F. Supp. 2d at 128–29, 136 (D.D.C. 2011) (allowing an individual § 1981 claim to go forward against a coworker whose conversations with the plaintiff were referenced in the plaintiff's suspension decision); *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 30 (D.D.C. 1999) (allowing individual § 1981 claims to go forward against supervisors that were all present at the plaintiff's termination meeting).

To prevail on her § 1981 claim Newman must also plead that Maz acted on account of her race.  On this point, too, Newman has alleged just enough to survive a motion to dismiss. She points to the fact that Maz pulled her hair while it was in braids, saying she could "leave it behind."  Second Am. Compl. ¶ 167–68.  She concludes that this action indicates racial animus, as it references stereotypes about black women's hair.  While the cases Newman cites in support feature far more explicitly racial language, *see, e.g.*, *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 415 (5th Cir. 2015) (defendant said that he "know[s] how much you people spend on your ethnic hair styles"); *Woods v. FacilitySource LLC*, No. 2:13-cv-621, 2015 WL 247980, at *17 (S.D. Ohio Jan. 20, 2015) (a defendant said that the plaintiff had "nappy" hair), the Court

can nevertheless plausibly infer that by commenting about "leav[ing] [her hair] behind," Maz was referring to a weave and thus it is plausible that his comment related to race.  Plus, Newman recounts the negative experience that another black female employee had with Maz when she refused to follow his recommendations.  *See* Second Am. Compl. ¶ 156.  And her complaint includes a smattering of racially charged comments by other employees on the Public Policy team.  *See, e.g.*, *id.* ¶¶ 200, 214–15, 259, 262.  *See Jackson*, 2021 WL 1317883, at *9 (inferring an employee's discriminatory intent in a denial-of-service case where Starbucks employees throughout the country were engaging in discriminatory treatment).  Together, these allegations *just barely* support her claim that, but for her race, Maz would not have harassed and assaulted her or participated in Amazon's adverse employment actions.  *See Comcast*, 140 S. Ct. at 1019; Second Am. Compl. ¶¶ 330–31.  Again, to prevail at the summary judgment stage, Newman will have to produce record evidence that demonstrates that race was the reason for Maz's actions.  For now, however, the Court will deny Maz's motion to dismiss her § 1981 claims against him (Count 2).

### 2.    *DCHRA Claims*

"A DCHRA claim must be filed with the D.C. Office of Human Rights or any court of competent jurisdiction within one year of the alleged conduct."  *Clay v. Howard Univ.*, 82 F. Supp. 3d 426, 433 (D.D.C. 2015) (citing D.C. Code §§ 2-1403.04, 2-1403.16).  The "[t]imely filing of a complaint with the [OHR] will toll the statute of limitations while the complaint is pending."  *Id.*  Newman filed her complaint with the OHR on September 17, 2020.  Second Am. Compl. ¶ 67.  But Maz argues that this filing did not toll the statute of limitations as to him because he was not named as a respondent in the OHR charge.  *See* Maz's Mot. to Dismiss at 12–13.  The Court agrees.

A DCHRA complaint filed with the OHR "shall state the name and address of the person alleged to have committed the violation, hereinafter called the respondent."  D.C. Code § 2-1403.04.  Newman concedes that she did not name Maz as a respondent in her OHR complaint.  Pl.'s Opp'n to Maz's Mot. to Dismiss at 29 n.11.  But she alleges that she named him and described his conduct in the body of the complaint.  Second Am. Compl. ¶ 67.  That is not enough.  *See Frett v. Howard Univ.*, 24 F. Supp. 3d 76, 84 (D.D.C. 2014) ("[The plaintiff] cites no authority for the notion that such indirect identification of a respondent puts him on notice of the charge or tolls the statute of limitations for claims against him."); *see also Clay*, 82 F. Supp. 3d at 434.

Instead, Newman must allege that Maz had "actual notice" of the charge, or that he had an "identity of interest with the party or parties sued."  *Clay*, 82 F. Supp. 3d at 433–34 (quoting *E.E.O.C. v. Metzger*, 824 F. Supp. 1, 3–4 (D.D.C. 1993)).  She states that because Maz was fired a couple weeks after her OHR complaint, "Amazon *would* have informed [him]" of her allegations.  Second Am. Compl. ¶ 308 (emphasis added).  But this conclusory assertion is "devoid of any facts."  *Frett*, 24 F. Supp. 3d at 85.  *Cf. Anyaibe v. Gilbert Sec. Serv., Inc.*, No. 94-cv-2377, 1995 WL 322452, at *4 (D.D.C. 1995) (finding actual notice because the defendant's name was listed in the address portion of the charge and he participated in the EEOC proceeding, while not finding notice for defendants where no facts suggested that they were aware of the charge).  Nor can Amazon's knowledge of the charge be "imputed" to Maz.  *Frett*, 24 F. Supp. 3d at 85.  As simply an employee of Amazon at the time, he did not have an "identity of interest" with the company.  *See Anyaibe*, 1995 WL 322452, at *4 (the Vice President and General Manager of a company who represented it in front of the EEOC had an

"identity of interests"); *Metzger*, 824 F. Supp. at 4 (a partner in a law firm did not have a sufficient "identity of interest" with the partnership).

Newman did sue Maz under the DCHRA in this Court on March 1, 2021, so she could proceed with any claims against him that accrued after March 1, 2020.  But the alleged sexual assault and harassment episodes took place in January 2018 and September 2019.  Second Am. Compl. ¶¶ 132, 163.  After that, she alleges only that he continued assigning her work until April 2020.  *Id.* ¶ 292.  And she was indeed promoted in the fall of 2019, so the Court cannot infer that he was involved in any discriminatory promotion denials after March 2020.  *Id.* ¶ 101.  Plus, the Court cannot find that he aided and abetted any alleged discriminatory conduct on the part of the Amazon Defendants in this time period.  A defendant aids and abets a DCHRA violation if he "participated in the discrimination and sought to make it succeed."  *Richardson v. Petasis*, 160 F. Supp. 3d 88, 138 (D.D.C. 2015) (quoting *Wallace v. Skadden, Arps, Slate, Meagher, & Flom*, 715 A.2d 873, 888 (D.C. 1998)).  Newman has provided no concrete facts about any discriminatory conduct occurring after March 2020, and Maz only assigned work to her until April.  Thus, to the extent he was ever personally involved in Amazon's promotion and compensation decisions, the Court cannot plausibly infer that he participated in them after he stopped supervising her work.

Therefore, the Court grants Maz's motion to dismiss her DCHRA claims against him (Counts 4 and 5).

### 3.    *Bias-Related Crimes Claim*

A "bias-related" crime under D.C. law is defined as:

> A designated act that demonstrates an accused's prejudice based on the actual or perceived race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibility,

homelessness, disability, matriculation, or political affiliation of a victim of the subject designated act.

D.C. Code § 22-3701(1)(A).  A "designated act" includes any criminal act under D.C. law. *Aboye v. United States*, 121 A.3d 1245, 1250 (D.C. 2015).  "[A] defendant's bias against a victim due to the victim's protected characteristic must be a but-for cause of the defendant's underlying criminal act," though it "need not be the sole cause, or even the primary cause." *Lucas v. United States*, 240 A.3d 328, 342 (D.C. 2020).

Maz does not dispute that the January 2018 incident, when he allegedly groped her thigh, constitutes a "designated act."[7]  But he argues that she has not sufficiently alleged that he committed the act because of his prejudice based on her race and/or sex.  Maz's Mot. to Dismiss at 19–20.  For the reasons stated above regarding her § 1981 claim, Newman has just barely alleged that Maz acted due to racial bias.[8]  Plus, a defendant is also liable under the Bias-Related Crime Act if he committed the act due to his bias based on the victim's *sex*.  *See* D.C. Code § 22-3701(1)(A).  Newman alleges that throughout her time working with him, Maz made inappropriate, sexually charged remarks.  *See, e.g.*, *id.* ¶ 141.  In the Title VII context, "[t]he premise of a sexual touching hostile work environment claim is that the conditions of the work environment have been made hostile 'because of . . . sex.'"  *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1066 (9th Cir. 2002).  That is, a plaintiff can show discrimination based on sex by alleging sexual harassment and/or assault.  Accordingly, given that "a heightened pleading

---

[7] Battery is a criminal act under D.C. law, so it constitutes a designated act.  *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 57 (D.D.C. 2019).  And battery is "an intentional act that causes a harmful or offensive bodily contact."  *Smith v. District of Columbia*, 882 A.2d 778, 787 (D.C. 2005).  Thus, groping someone's upper and inner thigh without consent constitutes battery.

[8] The Court notes, however, that Newman does not allege that Maz made any racial remarks during the January 2018 incident at issue.

standard [regarding intent] is not required" under the Act, *see Kurd*, 374 F. Supp. 3d at 58, the Court will allow Newman's bias-related crime claim to proceed.  Maz's motion to dismiss Count 6 is denied.

> ### 4.    *Assault and Battery/Sexual Abuse Claim*

The statute of limitations for assault and battery in D.C. is one year.  D.C. Code § 12-301(a)(4).  Newman agrees that any claim based on the September 2019 hair-pulling incident is time-barred.  *See* Pl.'s Opp'n to Maz's Mot. to Dismiss at 24.  But she argues that the January 2018 groping incident constitutes sexual abuse, and a five-year limitations period applies "for the recovery of damages arising out of sexual abuse that occurred while the victim was 35 years of age or older."  D.C. Code § 12-301(a)(12).  Under D.C. law, a defendant commits fourth-degree sexual abuse if he "engages in or causes sexual contact with . . . another person . . . [b]y threatening or placing that other person in reasonable fear."  *Id.* § 22-3005(1).  And "sexual contact" is defined as "the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  *Id.* § 22-3001(9).  Newman alleges that he pressed his hand on her *inner thigh*, in proximity to her genitalia, and groped her upper thigh.  Second Am. Compl. ¶ 137 (emphasis added).  She claims that she was "terrified."  *Id.* ¶ 138.  And later that night, Maz made inappropriate, sexual comments to her, so his intent to arouse or gratify his sexual desire can be inferred.  *See id.* ¶ 141.

However, the five-year statute of limitations only applies for acts that were not time-barred as of May 3, 2019.  *See* D.C. Law 22-311 § 5(a)(1).  An act that was time-barred as of that date, but would not be time-barred under the new five-year statute of limitations, must have been

brought within two years of May 3, 2019.  *See id.* § 5(a)(2).  Newman's claim was time-barred

by May 3, 2019, under the one-year statute of limitations for assault and battery claims.  But

under the five-year limitations period, she would have had until January 18, 2023 to sue.

Therefore, she had to bring this claim by May 3, 2021.  She did file her initial complaint on

March 1, 2021.  *See* Compl.  But that complaint alleged only that Maz pressed his left hand on

her "lap, in proximity to her genitalia, then grabbed and groped the upper thigh of her right leg."

*Id.* ¶ 117.  Absent is the allegation that he touched her *inner thigh*, which brings the act under the

scope of D.C.'s sexual abuse statute.  Newman did not add that claim until the Second Amended

Complaint, filed on June 24, 2021.

      The Court nevertheless disagrees with Maz that her claim is untimely.  Under Fed. R.

Civ. P. 15(c)(1)(B), an amendment "relates back to the date of the original pleading" if it "asserts

a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be

set out—in the original pleading."  An amended claim does not relate back if it "asserts a new

ground for relief supported by facts that differ in both time and type from those the original

pleading set forth."  *Mayle v. Felix*, 545 U.S. 644, 650 (2005).  And an amendment that

"attempts to introduce a new legal theory based on facts different from those underlying the

timely claims" does not relate back.  *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002).

But "an amendment offered for the purpose of adding to or amplifying the facts already alleged

in support of a particular claim may relate back."  *Id.*

      Newman's amendment falls into the latter camp.  In her Second Amended Complaint, she

does not advance a new legal theory or bring a new claim.  Rather, she simply alleges slightly

new facts in support of that claim.  *See Kubicki ex rel. Kubicki v. Medtronic, Inc.*, 293 F. Supp.

3d 129, 166–67 (D.D.C. 2018).  The original complaint thus "adequately notified [Maz] of the

basis for liability [that Newman] would later advance in the amended complaint."  *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008).  Accordingly, Newman's sexual abuse claim is timely, and Maz's motion to dismiss Count 7 is denied.

## CONCLUSION

For the foregoing reasons, the Amazon Defendants' partial motion to dismiss is granted in part and denied in part, and Maz's motion to dismiss is granted in part and denied in part. Newman's de-leveling claims against the Amazon Defendants under Counts 1, 2, and 4 are dismissed, and her DCHRA claims against Maz under Counts 4 and 5 are dismissed.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 31, 2022